```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
RAFAEL MARTINEZ,                                      :

                        Petitioner,        :         REPORT AND RECOMMENDATION

        -against-                           :         02 Civ. 0009 (LTS)(KNF)

DANIEL SENKOWSKI, Superintendent            :
of Clinton Correctional Facility,
                                            :
                        Respondent.
------------------------------------------------------X
```

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE LAURA TAYLOR SWAIN, UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

Before the Court is the petition of Rafael Martinez ("Martinez") for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. Martinez alleges that his confinement by the state of New York is unlawful because: (1) the prosecutor at Martinez's trial, through the use of peremptory strikes, prevented black veniremembers from being sworn as members of his trial jury, thereby violating Martinez's right to equal protection; (2) the assistance rendered to Martinez by his trial counsel was ineffective, since counsel did not prepare adequately for trial, behaved in an unprofessional and disorderly manner during court proceedings, did not call a witness who would have exculpated the petitioner, and did not consult a handwriting expert to analyze an incriminating document allegedly signed by the petitioner; (3) the trial court exhibited hostility to the petitioner's trial counsel in the presence of the jury, thereby violating his due process right to a fair trial; (4) the trial court closed the courtroom to the public during the testimony of certain witnesses, violating Martinez's right to a public trial; (5) the court-appointed attorneys

1

who represented the petitioner's co-defendants at trial applied to, and received from the trial court enhanced monetary compensation, which rendered them beholden to the trial court, violating Martinez's right to a fair trial; and (6) the trial court's imposition of a sentence of 213 years to life imprisonment was occasioned by its reliance on impermissible factors, thereby violating his right to due process.

The respondent opposes the petitioner's application for habeas corpus relief on the grounds that the petitioner's ineffective assistance of counsel claim is partially unexhausted and procedurally barred, his other claims are completely unexhausted and procedurally barred, and all of his claims lack merit.

## II. BACKGROUND

In October 1991, a New York County grand jury returned an indictment accusing Martinez of being the leader of a narcotics trafficking organization that sold substantial quantities of cocaine and engaged in other unlawful conduct in parts of northern Manhattan and the Bronx, including the vicinity of West 157th Street, in Manhattan.[1]

Martinez and four co-defendants, each represented by different counsel, proceeded to trial before a jury in New York State Supreme Court, New York County. The co-defendants' trial counsel, who had been appointed by the court, requested that each be compensated at rates greater than the $40 per hour and $25 per hour typically awarded to appointed counsel at that time, under New York law for in-court and out-of-court work, respectively. Noting that the anticipated length and complexity of the trial had required the co-defendants' counsel to forgo

---

[1] A superceding indictment, whose principal accusations against Martinez apparently were similar to those of the original indictment, was returned on November 4, 1991, but was not made part of the record before the Court.

other work opportunities, the court determined that counsel to each of the co-defendants would be compensated at a rate of $65 per hour for all work performed in connection with the trial.

In October 1992, jury selection commenced. During the first round of voir dire examination, the parties considered 43 veniremembers. At least five of those veniremembers were black, and the prosecution struck four of the five peremptorily. One of the petitioner's co-defendants alleged that this pattern of peremptory strikes was motivated by the veniremembers' race, and asked that the trial court seat the four veniremembers on the jury. The petitioner joined in that application. The trial court denied the application, noting that it perceived "obvious," non-racial reaons for striking two of the black veniremembers. The trial court opined that one of the black veniremembers who was struck peremptorily was "not totally rational" or "totally of this world," and that another was a "bizarre person who not only dressed in a strange manner, [but also] seemed to be a little strange herself." After referring to the standard set forth in Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712 (1986), the trial court concluded: "In view of the fact that two of the four black jurors challenged were clearly people who had obvious problems, in my view, I don't see any pattern at all, and at this point I will not find that there was a prima facie case of discrimination." Thereafter, voir dire was completed, and a jury was sworn.

The trial lasted approximately four months. During this time, Martinez's trial counsel, Richard L. Giampa ("Giampa"), engaged in a number of acrimonious and disrespectful colloquies with the trial court, repeatedly disputed and/or ignored the trial court's evidentiary rulings and other directives and — orally and through facial expressions — called into question the impartiality and reputation of the trial judge. Much of this conduct occurred in the presence of the jury. The trial court summarily convicted Giampa of criminal contempt of court for his

misconduct during the trial. According to the petitioner and the respondent, Giampa did not review timely certain witness statements, reports and photographs that were made available to him prior to trial, after assuring the court prior to trial that he would do so. This and Giampa's other conduct during the trial slowed the progress of the trial on numerous occasions. According to the petitioner, Giampa also failed to: (1) call a witness — identified only as "Louisa" in the record before the Court — who had told the police that a person other than the petitioner had committed one of the murders of which the petitioner had been accused; and (2) engage a handwriting expert to examine an incriminating piece of evidence that it was alleged the petitioner had signed.

Giampa's contempt conviction and the misconduct that gave rise to it were the bases for three of ten charges lodged against Giampa in a disciplinary proceeding instituted by the Grievance Committee for New York's Ninth Judicial District. The New York State Supreme Court, Appellate Division, Second Department, found that the disciplinary charges against Giampa had been established by a preponderance of the evidence, and suspended him from the practice of law for a period of one year. In the Matter of Giampa, 211 A.D.2d 212, 215-16, 628 N.Y.S.2d 323, 325 (App. Div. 2d Dep't 1995) (noting that Giampa "has evinced a flagrant disrespect for the judiciary and a fundamental disregard for the judicial process which he has been sworn to uphold").

During Martinez's trial, the prosecution requested that the courtroom be sealed during the testimony of three undercover police officers who had investigated Martinez and the narcotics trafficking organization of which he was alleged to be the leader. The court sealed the courtroom for the purpose of conducting a hearing on the prosecution's application. During that hearing, the undercover officers testified, among other things, that they were engaged in ongoing

undercover investigations of illegal narcotics activities in the vicinity of the West 157th Street neighborhood in which Martinez and his co-defendants were alleged to have committed the charged offenses, and in which members of the defendants' families resided. Based upon this and other evidence, the trial court granted the prosecution's application and excluded the public from observing the trial testimony of the undercover officers.

The jury found Martinez guilty for one count of conspiracy in the second degree (N.Y. Penal Law § 105.15), one count of murder in the second degree (N.Y. Penal Law § 125.25), one count of attempted murder in the second degree (N.Y. Penal Law §§ 110.00, 125.25), one count of criminal sale of a firearm in the third degree (N.Y. Penal Law § 265.11), three counts of criminal sale of a controlled substance in the first degree (N.Y. Penal Law § 220.43), three counts of criminal possession of a controlled substance in the first degree (N.Y. Penal Law § 220.21), one count of criminal possession of a controlled substance in the third degree (N.Y. Penal Law § 220.16), and five counts of criminal possession of a weapon in the third degree (N.Y. Penal Law § 265.02).

On April 8, 1993, the petitioner was sentenced to consecutive, indeterminate terms of incarceration: 8 1/3 to 25 years for the conspiracy conviction, 25 years to life for the murder conviction, 8 1/3 to 25 years for the attempted murder conviction, 1 1/3 to 4 years for the criminal sale of a firearm conviction, 25 years to life for each of the first degree criminal sale of a controlled substance convictions, 25 years to life for each of the first degree criminal possession of a controlled substance convictions, 8 1/3 to 25 years for the third degree criminal possession of a controlled substance conviction, and 2 1/3 to 7 years for each of the criminal possession of a weapon convictions — an aggregate term of 213 years to life. Each term of incarceration imposed was the maximum permitted by New York law.

Martinez appealed from the judgment of conviction to the New York State Supreme Court, Appellate Division, First Department ("Appellate Division"), on the grounds that: (1) his trial counsel's assistance was ineffective because he did not prepare adequately for trial and because his conduct at trial was unprofessional; (2) the trial court exhibited such hostility to Martinez's trial counsel, both in the presence of the jury and otherwise, that Martinez was deprived of a fair trial; (3) his constitutional and statutory rights to confront witnesses were violated when the trial court precluded his counsel from examining certain prosecution witnesses about their motives; (4) Martinez's right to a fair trial was violated by a prejudicial instruction that the trial court delivered to the jury; and (5) the sentence imposed upon Martinez by the trial court — which his appellate brief described, inaccurately, as 106 years to life — was an "abuse of discretion" and was "unconstitutionally excessive."

According to both parties, the petitioner also sought and received permission to file, <u>pro se</u>, a supplemental brief in support of his appeal. In that supplemental brief, Martinez states, as additional grounds for his appeal, that: (1) there was insufficient evidence to support his conviction for second degree murder; (2) in light of the lengthy duration of the prosecution's case, the trial court abused its discretion when it denied Martinez's application to make an opening statement at the conclusion of the prosecution's case; (3) the petitioner was prejudiced by accomplice testimony about uncharged crimes that outweighed the probative value of that testimony, violating the petitioner's right to a fair trial; and (4) comments made by the prosecution during its closing statement were improper and violated Martinez's right to a fair trial.

The Appellate Division affirmed the judgment of conviction. <u>See</u> <u>People v. Gonzalez</u>, 251 A.D.2d 51, 673 N.Y.S.2d 669 (App. Div. 1st Dep't 1998). The petitioner sought leave to

appeal from the Appellate Division's determination to the New York Court of Appeals. That request was denied on November 24, 1998. See People v. Martinez, 92 N.Y.2d 984, 683 N.Y.S.2d 765 (1998).

On November 4, 1999, the petitioner moved to vacate his conviction, pursuant to New York Criminal Procedure Law § 440.10 ("§ 440.10"). Martinez brought that motion on the ground that his Sixth Amendment rights were violated because, inter alia: (1) the court-appointed attorneys who represented the petitioner's co-defendants at trial were beholden to the trial court, due to its control over the amount of their monetary compensation; (2) Martinez's trial counsel was ineffective because he did not call a witness (identified in the record only as "Louisa") who would have exculpated the petitioner and did not consult a handwriting expert to analyze an incriminating document alleged to have been signed by the petitioner.

On September 15, 2000, the trial court denied the § 440.10 motion "for the reasons set forth by the People in their response." Among those reasons was that the above-noted grounds of the motion were procedurally barred, since in his direct appeal Martinez raised the issue of compensation for counsel to his co-defendants and could have raised the issues respecting his trial counsel's failure to use a handwriting expert and to call "Louisa" as a trial witness. On October 10, 2000, Martinez sought leave to appeal the denial of his § 440.10 motion to the Appellate Division. On February 27, 2001, the Appellate Division denied Martinez's application.

On March 5, 2001, Martinez petitioned the Appellate Division for a writ of error coram nobis. In that petition, he contended that his appellate counsel provided ineffective assistance to him by, inter alia, failing to challenge on direct appeal the trial court's Batson ruling and its decision to close the courtroom to the public during the testimony of the undercover officers. In

7

his coram nobis petition, Martinez also requested that "[i]n the interests of judicial economy, this Court should determine the issues on the merits, recall and vacate its prior affirmance, reverse the judgment of conviction and remand this case for a new trial." The Appellate Division, noting that Martinez had "moved, in the nature of a writ of error coram nobis, for a review of his claim of ineffective assistance of appellate counsel, and for related relief," denied Martinez's petition "in its entirety."

Thereafter, Martinez filed the instant petition for a writ of habeas corpus, seeking relief on the grounds noted above.

### III. DISCUSSION

Where a state court has adjudicated the merits of a claim raised in a federal habeas corpus petition, 28 U.S.C. § 2254 provides that a writ of habeas corpus may issue only if the state court's adjudication resulted in a decision that: (1) was contrary to, or involved an unreasonable application of federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. See 28 U.S.C. § 2254(d); see also Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000). In addition, when considering an application for a writ of habeas corpus by a state prisoner, a federal court must be mindful that any determination of a factual issue made by a state court is to be presumed correct and the habeas corpus applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1).

*Exhaustion and Procedural Bar*

A federal court entertaining a habeas corpus petition may not review a question of federal law decided by a state court if the state court's decision rested on a state law ground, be it

8

substantive or procedural, that is independent of the federal question and adequate to support the judgment. See Coleman v. Thompson, 501 U.S. 722, 729, 111 S. Ct. 2546, 2553-54 (1991). This proscription applies even in those circumstances where a state court expressly relies on a procedural default as an individual and adequate state law ground but, nevertheless, rules in the alternative on the merits of the federal claim, see Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990), or indicates the conclusion it would reach were it to review the claim, see Simmons v. Mazzuca, No. 00 Civ. 8174, 2001 WL 537086, at *10 (S.D.N.Y. May 21, 2001).

Additionally, in order to obtain habeas corpus review of a question of federal law, a state prisoner must first exhaust his or her available state remedies with respect to that question. See 28 U.S.C. § 2254(b) and (c). To satisfy the exhaustion doctrine, a habeas corpus petitioner must, inter alia, "fairly present" his or her federal claim to the highest state court from which a decision can be rendered. See Daye v. Attorney General of New York, 696 F.2d 186, 190-91 n.3 (2d Cir. 1982) (en banc). If a state prisoner has not exhausted his or her state remedies with respect to a claim and no longer has a state forum in which to raise the claim, the claim may be deemed exhausted but procedurally barred. See Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994). Moreover, an inability to return to state court constitutes an adequate and independent state law ground upon which the prisoner's claim is procedurally defaulted. See Acosta v. Giambruno, 326 F. Supp. 2d 513, 522 (2004) (citing Coleman, 501 U.S. at 731, 111 S. Ct. at 2554-55); Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991) (finding that for exhaustion purposes, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred). However, a petitioner may obtain federal habeas corpus review of a claim that is barred due to procedural default if the petitioner shows cause for the default and prejudice attributable thereto. See Coleman, 501 U.S.

at 750, 111 S. Ct. at 2564-65. Alternatively, a petitioner may overcome such a bar by showing that this court's failure to consider the petitioner's federal claims will result in a fundamental miscarriage of justice. Id. A fundamental miscarriage of justice exists when a habeas corpus petitioner is actually innocent of the charge(s) for which he or she has been convicted. See Bousley v. United States, 523 U.S. 614, 623, 118 S. Ct. 1604, 1611 (1998).

    1)  *Peremptory Strikes; Courtroom Closure*

  Martinez first raised his Batson claim and his claim concerning the closure of the trial courtroom during the undercover officers' testimony in his coram nobis petition, as grounds for his claim of ineffective assistance of appellate counsel. However, presentment of a federal question as a "predicate" for an ineffective assistance of counsel claim does not satisfy the exhaustion requirement. See Turner v. Artuz, 262 F.3d 118, 123 (2d Cir. 2001). The petitioner contends that because his coram nobis petition asked the Appellate Division to "determine the issues on the merits" and because the court denied the petition "in its entirety," that the Appellate Division's decision constitutes a decision on the merits of Martinez's Batson and courtroom closure claims. However, the fact that the petitioner asked the Appellate Division to determine these claims on the merits does not demonstrate that the Appellate Division had the ability to do so, let alone that it actually did so.

  Martinez cites People v. Bowen, 234 A.D.2d 161, 652 N.Y.S.2d 501 (App. Div. 1st Dep't 1996), for the proposition that the Appellate Division may consider the merits of — and grant relief upon — claims other than ineffective assistance of appellate counsel. In Bowen, which was also a petition for a writ of error coram nobis, the Appellate Division found that Bowen's appellate counsel had been ineffective, granted the writ, and recalled and vacated its previous affirmance of the underlying conviction. The Appellate Division's decision to vacate its

affirmance of Bowen's conviction was a necessary remedy for Bowen's successful ineffective assistance of counsel claim. As such, the Bowen decision does not support the proposition that, after rejecting an ineffective assistance of counsel claim, the Appellate Division might nevertheless have occasion to consider other potential bases for granting relief to a petitioner. Indeed, "'in a criminal action, the writ of error coram nobis lies in [the state appellate court] only to vacate an order determining an appeal on the ground that the defendant was deprived of the effective assistance of appellate counsel.'" Turner, 262 F.3d at 123 (quoting People v. Gordon, 183 A.D.2d 915, 584 N.Y.S.2d 318 [App. Div. 2d Dep't 1992]). Accordingly, the Appellate Division's denial of Martinez's coram nobis petition cannot be considered a decision on the merits of his Batson or courtroom closure claims.

As the petitioner no longer has a forum for these claims in state court, the claims should be deemed exhausted but procedurally barred, as noted above. The petitioner has not demonstrated cause and prejudice for his failure to present these claims to the state courts, and he has not shown that he is actually innocent of the offenses for which he was convicted. Accordingly, the petitioner's Batson and courtroom closure claims may not be the bases for habeas corpus relief.

*2)  Ineffective Assistance of Counsel; Compensation of Co-defendants' Counsel*

In his § 440.10 motion, Martinez raised for the first time: (a) two of the grounds for his claim that his trial counsel was ineffective — namely, that trial counsel failed to call "Louisa" as a witness and failed to engage a handwriting expert; and (b) his claim that the compensation arrangement for counsel to his co-defendants violated his right to effective assistance of counsel. The trial court determined that these issues were procedurally barred, as sufficient facts had appeared on the record that was before the Appellate Division to permit these questions to be

11

adjudicated as part of the petitioner's appeal. See N.Y. Criminal Procedure Law § 440.2(c). The trial court's determination that the appellate record was sufficient to permit adjudication of these questions is a factual determination. Therefore, as noted above, it is presumed to be correct. The petitioner has not rebutted this presumption by clear and convincing evidence. Accordingly, the petitioner is procedurally barred from raising these questions in his application for a writ of habeas corpus. As Martinez has not made any of the above-noted showings that might overcome such a bar, these grounds may not be the bases for habeas corpus relief.

       *3)     Hostility of Trial Court; Impermissible Sentencing Factors*

In his direct appeal, Martinez contended that the trial court's hostility to his counsel deprived him of a "fair trial," and that the Appellate Division should modify his sentence because it was influenced by that hostility. Martinez did not identify any provisions of federal law that might have been the bases for these claims. Rather, he simply contended that his right to a "fair trial" was violated as a result of the trial court's hostility and that his sentence was "unconstitutionally excessive." Martinez's appellate brief also did not reference any decisional law, factual pattern, or terminology that could reasonably have been expected to put the state court on notice that the claims he had raised were claims arising under federal law, rather than under state law alone. Cf. Daye, 696 F.2d at 194. In fact, the relevant parts of Martinez's appellate brief include terminology and citations to state decisional law that make it plain that Martinez's requests for relief were based solely upon state law.

Accordingly, Martinez has not exhausted his state court remedies with respect to these claims; therefore, they are procedurally barred. As the petitioner has not made any of the above-noted showings that might overcome such a bar, neither of these claims may be the basis for habeas corpus relief.

*Ineffective Assistance of Counsel (Exhausted Grounds)*

It is undisputed that Martinez's claim of ineffective assistance of trial counsel is exhausted, to the extent that it is based upon counsel's lack of preparation for trial and counsel's misbehavior during trial.

The Sixth Amendment guarantees a criminal defendant the "right to effective assistance of counsel." Strickland v. Washington, 466 U.S. 668, 686, 104 S. Ct. 2052, 2063 (1984). To determine whether counsel's assistance was effective, the Supreme Court devised a two-part test. See id. at 687-96, 2064-69. First, a criminal defendant must show that his counsel's performance was deficient, that is, that it fell below an "objective standard of reasonableness," measured according to "prevailing professional norms." Id., at 687-88, 2064-65. Second, the criminal defendant must affirmatively demonstrate prejudice. Id. at 694, 2068. Prejudice is rarely presumed, and so the defendant generally must prove that "there is a reasonable probability that but for counsel's [error], the result of the proceeding would have been different." Id.; see also United States v. Javino, 960 F.2d 1137, 1145 (2d Cir. 1992). A reasonable probability has been defined as "a probability sufficient to undermine confidence in the outcome." See Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. Considerable deference is accorded counsel's performance, as counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690, 2066.

In the case at bar, there can be no doubt that Giampa's preparation for the trial and his decorum during the trial were deficient and fell well below that called for by prevailing professional norms. Indeed, Giampa was suspended from the practice of law, in part, due to his performance at Martinez's trial. See In the Matter of Giampa, 211 A.D.2d at 215-16, 628

13

N.Y.S.2d at 325. The Appellate Division's determination of Martinez's claim of ineffective assistance of counsel is not inconsistent with this conclusion. Instead, the Appellate Division's decision rejected Martinez's ineffective assistance of counsel claim because it found that there was no reasonable probability that Giampa's behavior affected the outcome of Martinez's trial. Although the petitioner asserts that it "can[not] be doubted that Giampa's deficiencies undermine confidence in the outcome" of his trial, the petitioner does not make any attempt to prove this assertion. The record before the Court does not, without more, demonstrate a reasonable probability that, absent Giampa's deficient performance, the result of Martinez's trial would have been different.

Accordingly, Martinez is not entitled to habeas corpus relief on these two prongs of his ineffective assistance of counsel claim.

## IV. RECOMMENDATION

For the reasons set forth above, the petitioner's application for a writ of habeas corpus should be denied.

## V. FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Laura Taylor Swain, 40 Centre Street, Room 1205, New York, New York, 10007, and to the chambers of the undersigned, 40 Centre Street, Room 540, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Swain.
FAILURE TO FILE OBJECTIONS WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER

OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. See Thomas v. Arn, 474 U.S. 140 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York
May 4, 2005

Respectfully submitted,

_____
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

Mailed copies to:

Randall D. Unger, Esq.
Patrick J. Hynes, Esq.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/5/05