# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

## 02-CiV-0009(LTS)(KNF)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4-2-2013

## RAFAEL MARTINEZ,

Petitioner,

-against-

## DANIEL SENKOWSKI, Superintendent,

Respondent,

## AFFIDAVIT AND
## MEMORANDUM OF LAW
## IN SUPPORT OF PETITIONER'S
## RULE 60(b)(6) MOTION

Rafael Martinez, 93A2733
Green Haven Corr. Fac.
Box 4000
Stormville, NY 12582
March 15, 2013



RECEIVED
APR - 2 2013
PRO SE OFFICE

# ENCLOSED PLEASE FIND THE FOLLOWING:

EXHIBIT 1: District Court's decision

EXHIBIT 2: Magistrate Judge's R&R

EXHIBIT 3: Smith v. Fischer 07-cv-2966-RWS

EXHIBIT 4: Crim. Proc. Law § 440 motions

EXHIBIT 5: Affidavits

EXHIBIT 6: Reply to People's Opposition

EXHIBIT 7: State Court's Decision

EXHIBIT 8: Leave to Appeal Application

EXHIBIT 9: Appellate Division' s Decision

**RAFAEL MARTINEZ,**

PETITIONER,

**DECLARATION IN
SUPPORT OF MOTION
PURSUANT TO
Fed.Rules Civ.Proc.
Rule 60(b), 28 U.S.C.A.**

-against-

**02-Civ.-0009(LTS)(KNF)**

**DANIEL SENKOWSKI,** Superintendent,
Clinton Corr. Fac.;
**ANDREW M. CUOMO,** Attorney General,
State of New York; and **ROBERT MORGENTHAU,**
District Attorney of New York County,

Respondent,

------------------------------------------X

# RULE 60(b)(6)

I, **RAFAEL MARTINEZ,** declare under penalty of perjury, pursuant to 28 U.S.C.§ 1746, as follow:

I am the petitioner in the above captioned case, and I make this declaration in support of motion pursuant to Fed.Rules. Civ.Proc. Rules 60(b)(6) in relation to the Hon. Laura T. Swain, U.S.D.J., Southern District of New York, Order denying petitioner's (1) application to amend the petition, (2) request for Habeas Corpus relief and (3) denying a Certificate of Appealability under United States Southern District Court, Docket Number 02-Civ.-0009-(LTS)(KNF). Decision enclosed as **Exhibit "A"**

I submit this application, pursuant to **Rule 60 (b)(6), 28 U.S.C.A.** to challenge the petitioner's Habeas Corpus' Decision and Order by the U.S. District Justice Laura Taylor Swain; dated

1

September 29, 2008, predicated on intervening change in governing law, as described in **Martinez v. Rayn, 132 S.Ct. 1309 (2012)**, that calls into serious question the correctness of the District Court's judgment, and constitutes an extraordinary circumstance justifying relief in petitioner's case. Also see, **Smith v. Fischer, 1:07-Civ.-02966-RWS**, January 25, 2013.

This motion cannot be deemed or characterized as a second successive petition because it does not attack the petitioner's underlying conviction as beyond the scope of Rule 60(b). The United States Supreme Court and the Second Circuit Court of Appeals have concluded that a Rule 60(b) motion challenging the decision of the district court's habeas proceedings, predicated on intervening change in the law, should not be treated as a second or successive petition, even though the motion ultimately seeks to overturn the judgment. **Gonzalez v. Crosby, 125 S.Ct. 2641 (2005); Gitten v. United States, 311 F3d 529 (2nd Cir. 2002); Rodriguez v. Mitchell, 252 F3d 191 (2nd Cir. 2001); Phelps v. Alameida, 569 F3d 1120 (9th Cir. 2009).**

The United States Supreme Court in **Gonzalez v. Crosby, supra,** directly refuted the **Tomlin v. McDaniel, 865 F2d 209,** rule that a Rule 60(b) motion can never be granted if it is based on an intervening change in the law. Further, the Supreme Court's central holding in **Gonzalez** was that a Rule 60(b)(6) motion is the proper means of bringing such a challenge and that such a motion should not be construed as a second or successive habeas petition subject to the strict restrictions of **28 U.S.C. § 2244(b)(3)(A).** Id. at 533, 125 S.Ct. 2641.

2

# STANDARD OF REVIEW

When a dismissal of a habeas petition rests upon an answer to a open legal question that (as the interpretation of the Procedural Bar Doctrine) is later rejected and then replaced in a more authoritative opinion by the very answer proposed by the petitioner, the petitioner is entitled to seek reconsideration of the dismissal entered against him. In weighing such a request for reconsideration, the district court must evaluate the specific circumstances of the case at hand, and should not treat the Rule 60(b) motion for reconsideration as per se no-cognizable. Also, in evaluating the Rule 60(b) motion, the district court's overriding concern should be the incessant command of the court's conscience that justice be done in light of all facts.

Accordingly, the district court must consider the following facts:

**1** - Following the original dismissal, due to a procedural default, of petitioner's habeas corpus in relation to petitioner's claims of ineffective assistance of trial counsel raised for the first time in a post conviction motion pursuant to N.Y. Crim. Proc. Law § 440.10 motion (based on petitioner's trial counsel's failure to investigate and secure a witness; failure to consult a handwriting expert; and failure to advise the petitioner of a highly favorable plea offer of 15 years to life and a second offer of $12\frac{1}{2}$ to 25 year) has there in fact been an intervening change in the law with respect to the

procedural default claimed herein? See, **Martinez v. Rayn, infra.**

2- Can a motion for reconsideration under Fed.R.Civ.P. 60(b) ever be predicated on an intervening change in the law?

3 - If such a motion can be predicated on an intervening change in the law, how should such a request for reconsideration be analyzed?

In relation to the instant motion, the intervening change in the law regarding the core disputed issue became settled in March 20, 2012, 3 years after petitioner's appeal to the Second Circuit Court became final. See, **Martinez v. Ryan, 132 S.Ct. 1309 (2012).** Also see, **Smith v. Fischer, 1:07-Civ.-02966-RWS,** decided: January 25, 2013.

While some types of supervening change in procedural law may not alone warrant the reopening of a habeas judgment, there may be special factors that allow a prisoner to satisfy the high standard of Rule 60(b)(6). When a prisoner has shown reasonable diligence in seeking relief based on a change in procedural law, and when that prisoner can show that there is probable merit to his underlying claims, it would be well in keeping with a district court's discretion under Rule 60(b)(6) for the court to reopen the habeas judgment and give the prisoner the one fair shot at habeas review that congress intended that he has. See, **Phelps v. Alameida, 569 F3d 1120 (9th Cir. 2009).**

In some circumstances, a supervening change in procedural law can be the kind of extraordinary circumstance that constitutes a reason justifying relief from the operation of the judgment within the meaning of Rule 60(b)(6). See, **Dunlap v.**

Litscher, 301 F3d 873, 876 (C.A.7 2007); **Ackermann v. United States, 340 U.S. 193, 71 S.Ct. 209 (1950).** Further, Rule 60(b)(6) provides courts with authority adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice. See, **Gonzalez v. Crosby, 125 S.Ct. at 2653; Liljeber v. Health Services Acquisition Corp., 486 U.S. 847, 108 S.Ct. 2194 (1988).**

# PETITIONER'S APPEAL HISTORY

After extensive briefing, but without conducting an evidentiary hearing on the petitioner's **main claim of ineffective assistance of trial counsel**, on May 4, 2005, Magistrate Judge Kevin Nathaniel Fox issued a report and Recommendation to the United States District Court Judge Laura Taylor Swain, finding that **"petitioner's trial counsel preparation for the trial and his decorum during the trial were deficient and fell well below that called for by prevailing professional norms."** "The record before the court does not, without more, demonstrate a reasonable probability that, absent Giampa's (petitioner's trial counsel) deficient performance, the result of Martinez's trial would have been different." and therefore, recommending that the writ be denied in its entirety.

Subsequently, following the submission by parties on motions to object, and petitioner's pro-se application to Amend, Judge Laura Taylor Swain issued a Memorandum and Order denying application to amend petition and adopting, in part, Report and

Recommendation, dated September 29, 2008. On April 2, 2009, the Second Circuit Court of Appeals denied petitioner's application for Certificate of Appealability. Subsequently, on May 18, 2009, a motion for Rehearing and Rehearing En Banc was also denied by the Second Circuit Court of Appeals. Petitioner's petition for Writ of Certiorari was also denied **(Martinez v. Artuz, 130 S.Ct. 221 (2009))**.

On September 18, 2009, petitioner filed a **Fed.Rules Civ.Proc. Rule 60(b)** motion. On October 9, 2009, the District Court denied petitioner's motion concluding that petitioner's motion sought to relitigate issues previously adjudicated.

On January 25, 2011, the Second Circuit Court of Appeals denied petitioner's application for Certificate of Appealability. A motion for Rehearing and Rehearing En Banc was also denied on January 18, 2011.

# EXHAUSTION OF STATE REMEDIES

In a decision dated June 4, 1998, the Appellate Division affirmed the petitioner's judgment of conviction. **People v. Martinez, 251 AD2d 51 (1st Dept. 1998),** application for leave to appeal to the New York Court of Appeals was denied on November 24, 1998. **People v. Martinez, 92 NY2d 984.** In a pro-se motion dated November 4, 1999, the petitioner moved pursuant to N.Y. Crim. Proc. Law § 440.10 and 440.20 motion. In a order dated September 15, 2000, the trial court, without conducting an evidentiary hearing, denied petitioner motion to vacate; and in

6

a decision and order entered on February 27, 2001, the Appellate Division denied petitioner's application for leave to appeal.

In a pro-se motion dated March 5, 2001, petitioner applied to the Appellate Division, 1st Dept. for a writ of error coram nobis. In this motion, petitioner argued that he has been deprived of his constitutional right to effective assistance of appellate counsel. In support of his application, petitioner raised several issues which appellate counsel failed to argue: an equal protection claim pursuant to **Batson v. Kentucky,** **476 U.S. 79 (1986)** and deprivation of his right to a public trial by virtue of the trial judge's closing of the courtroom to member of petitioner's family; inter alia. In a decision and order dated December 20, 2001, the Appellate Division denied the petitioner's application for writ of coram nobis. In January 2, 2002, the present petition for habeas corpus relief was filed.

The Southern District Court of New York denied the petition, concluding that: "Magistrate Judge Fox found that the trial judge had correctly ruled that the appellate record was sufficient to permit adjudication of these questions such that they were procedurally barred...." "when petitioner presented claims in postjudgment court, petitioner did not rely on material facts outside the appellate record; therefore, the New York postjudgment court correctly ruled that those claims could have been raised on direct appeal. Decision at page # 8, 9.

# THE INTERVENING
# CHANGE IN THE LAW

Under **Coleman v. Thompson,** federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on state law that is independent of the federal question and adequate to support the judgment.' 501 U.S. 722, 729, 111 S.Ct. 2546 (1991). "to bar federal habeas review, however, the state court's decision must rest not only on an independent procedural bar under state law, but also on one that is 'adequate to support the judgment.'" **Murdern v. Artuz, 497 F3d 178, 191-92 (2d Cir. 2007)(quoting Jimenez v. Walker, 458 F3d 130, 138 (2d Cir. 2006).** The question of whether a default discerned by a state court is sufficiently adequate and independent to preclude federal review is governed by federal law. The adequacy of state procedural bars to the assertion of federal questions ... is not within the state's prerogative finally to decide; rather adequacy is itself a federal question." See, **Monroe v. Kuhlman, 433 F3d 236 (2006); Cotto v. Herbert, 331 F3d 217 (2003); Lee v. Kemna, 534 U.S. 362, 122 S.Ct. 877 (2002).**

As Coleman recognized, "[n]egligence on the part of a prisoner's postconviction attorney does not qualify as 'cause.'" **Maples v. Thomas, 132 S.Ct. 912 (2012).** The underlying reasoning is "because the attorney is the prisoner's agent ... [and] under 'well settled principled of agency law,' the principle bear the risk of negligent conduct on the part of his

agent." Id at 922.

Recently, in **Martinez v. Rayn,** the Supreme Court noted that **Coleman** did not present the occasion to apply this principle to determine whether attorney errors in initial-review collateral proceedings may qualify as cause for a procedural default." **132 S.Ct. 1309.** Thus, **Coleman** "left open ... a question of constitutional law: whether a prisoner has a right to effective counsel in collateral proceedings which provide the first occasion to raise a claim of ineffective assistance at trial." Id at 1315.

While the Supreme Court declined to resolve the constitutional question, it "qualifie[d] **Coleman** by recognizing a narrow exception: Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." Id. The Court made explicit that its holding represented a "limited qualification" to **Coleman**, and reasoned that "[w]here ... the initial-review collateral proceeding is the first designated proceeding for a prisoner to raise a claim of ineffective assistance at trial, the collateral proceeding is in many ways the equivalent of a prisoner's direct appeal as to the ineffective-assistance claim." Id at 1317. The Court held:

> "Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral

9

proceeding, there was no counsel or counsel in that proceeding was ineffective." Id. at 1320.

The exception, therefore, applies in states such as Arizona, which was at issue in **Martinez**, where an initial-review collateral proceeding is the defendant's "first occasion to raise a claim of ineffective assistance at trial." Id. at 1315, 1317. In such states, a prisoner may establish cause for a default of an ineffective assistance claim under two situations:

> "The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of **Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984)**."

Id. at 1318. In either scenario the prisoner must also "demonstrate that the underlying ineffective assistance of trial counsel is a substantial, which is to say that the prisoner must demonstrate that the claim has some merit." Id.

# THE DISTRICT COURT'S PREVIOUS CONCLUSION SHOULD BE VACATED.

In the matter at hand, in its habeas corpus petition, the petitioner contended that his trial counsel was ineffective for failing to investigate and secure a witness; failure to consult a handwriting expert; and failure to advise the petitioner of a highly favorable plea offer of 15 years to life and a second

offer of 12½ to 25 year sentence and other related issues...
Petitioner's C.P.L. § 440.10 motions were accompanied by
affidavits from the two main witnesses of the People, recanting
their testimony, and, also, explicitly stating the manner in
which they were coerced by the New York county District
attorney's Office to say what they said in the trial proceedings
of this matter.   Both of petitioner's codefendants (Edwin Matos
and Jordan Pratt) testified not only for a lenient sentence, but
also, under duress and the threats of the prosecution to send
them to jail for life.   Due to the circumstances of the present
case, both Matos and Pratt were susceptible to threats against
them, whether real or perceived, providing to them abundant
reasons to lie.

The content of both affidavits is inherently believable.
The fact that in a course of a colloquy it was revealed that a
witness named "LOUISA" had informed  the police that the
perpetrator of the shooting death of Jose Jimenez, a crime for
which the petitioner was tried and convicted, was a man known as
"FRANKLYN", no the petitioner, strongly supports the inherent
believability of both affidavits.

Furthermore, the affidavits accompanying the petitioner's
C.P.L. § 440.10 motions also corroborate the fact that trial
counsel was ineffective by failing to consult a handwriting
expert to examine an incriminating item of evidence which the
petitioner  and prosecution's witness Edwin Matos were alleged
to have signed.   Petitioner's trial counsel's  failure to
develop the evidences in question herein, and to secure the

11

appearance of the eyewitness of the crime cannot be equated with meaningful representation. **United States v. Tarricone, 996 F2d 1414 (2d Cir. 1993); DeLuca v. Lord, 77 F3d 578 (2d Cir. 1996);**

In point of facts, without the testimony of these two witnesses, the prosecution's case in chief would have failed to obtain a conviction against the petitioner in most of the charges. Thus, the recantations/affidavits were newly discovered evidence, credible and reliable, and able to create the probability of a more favorable verdict to the petitioner. See the Affidavits enclosed and the C.P.L. § 440.10 motion. Also please direct your attention to page # 15 and 16 of the Application for Leave to Appeal to the Appellate Division.

Petitioner's C.P.L. § 440 motions were accompanied by letter/affirmation from his trial counsel explaining some reasons of his under performance during the trial of the matter at hand. See, copy of the 440 motions and the exhibits enclosed.

An additional affidavit from petitioner's pre-trial hearing attorney (DANIEL N. ARSHACK) was filed with the C.P.L. § 440.10 motion. This particular affidavit provides information concerning trial counsel (RICHARD GIAMPA)'s failure to contact him in order to obtain, inspect, and review the pre-trial record and motions filed in this case. (Copy of the Affidavit is enclosed). This affidavit corroborates the fact that petitioner's trial counsel failed to conduct any meaningful preparation for trial. As a result, petitioner's trial counsel was completely unaware of the substance of certain witnesses'

prior testimony and could not possibly conduct effective cross-examination of those witnesses. This pre-trial counsel (Daniel N. Arshack)'s affidavit strongly supports the statement of the Prosecutor in this case, Mr. Fernando Camacho, in open court, stating that:

> "I have something to put on the record right now. Mr. Giampa, Mr. Giampa, I am sick and tired of this. You are one of the most unprepared attorneys I have seen in many, many years. The man has been on the case for five months. I have offered him an opportunity to look at the evidence, and everything that comes up, he makes it seen like he is being blind sided somehow, that it's unfair somehow because he hasn't had an opportunity. Mr. Giampa has not been blind sided. He is simply totally unprepared. He has not tried to look at these [records] before, not tried to look at any of the evidence before and then he looks at it in the courtroom and acts as if he is being blind sided somehow or being treated unfairly because he hasn't had an opportunity."

> "It's absolutely a crock. He is unprepared and using this as an excuse." TT 10,206-10,207.

> "He [Giampa] has not done a lick of work in this case. Rafael Martinez would have been better served by any other attorney I know of. He has not done one lick of work in this case. He comes to court, he takes his money and he argues based on total speculation, mischaracterizes, distorts." TT 11,241.

And in response to these remarks by the prosecutor, the trial judge simply stated that "[e]verything he is saying is appropriate, frankly." TT 11,242.

Finally, petitioner's C.P.L. § 440 motions argue that his

trial counsel failed to properly advise, discuss, and counsel the petitioner in regard to a favorable plea offer of 15 years to life and a second plea offer of 12½ to 25 years. This claim is accompanied by petitioner's affidavit, Mr. Arshack's affidavit, and Mr. Giampa's letter/affirmation. This claim is properly presented within the motion. Please direct your attention to the Supplemental Affidavit to the 440.10 motion at page # 8. Here, petitioner, as part of his ineffective assistance of counsel claim, explicitly raised the trial counsel's failure to advise the petitioner of the favorable plea offer. Further, the 440 motions cited **Boria v. Keane, 99 F3d 492 (2d Cir. 1996); United States v. Gordon, 156 F3d 376 (2d Cir. 1998); United States v. Day, 969 F2d 39 (3rd Cir. 1992)** as the legal authorities of the claim. In its reply to the People's Opposition to petitioner's C.P.L. § 440 motions, the petitioner made a strong emphasis on this claim. Please direct your attention to the enclosed Reply to the people's Opposition, at page 20. Lastly, after the denial of the 440 motions by the trial court, in its leave to appeal application, the petitioner explicitly states that:

> "It is respectfully requested that a certificate granting leave to appeal be issue, so in order to allow defendant to present to this (Appellate Division) Court the full denial of the issues that were denied, as **'all'** issues are herein related." Leave To Appeal at page # 5.

> "For **'all'** the above reasons and for **'all'** the arguments of fact and law set forth in **'defendant's motions'**, this court should grant defendant permission to appeal to this Court." Leave To Appeal at page # 22.

> "Defendant seeks to appeal the denial of
> his **'motion'**" Leave To Appeal at page
> 26.

> "In light of all the above, this
> Honorable Court should grant the
> Defendant Leave to Appeal **'all the
> issues'** that have been left undecided by
> Hon. Snyder." This Court should address
> **'all of these issues'**, by granting
> Defendant Leave to Appeal." Leave To
> Appeal at page # 27 and 28.

Accordingly, every issue presented in petitioner's Crim. Proc. Law § 440 motions were properly exhausted in state courts. By the way, in light of the numerous recent cases being overturned based upon recantation due to District Attorneys misconduct and use of inappropriate methods to obtain convictions, this Federal District Court should pay close attention to the affidavits/evidence which accompanied the petitioner's C.P.L. 440 motions and grant reopening of the present case.

In light of the above argument, it is abundantly clear, the fact that petitioner's C.P.L. § 440 motions present a mixed claim of ineffective assistance of counsel, based in part, on matter appearing on the record and, in part, on matter outside the record. Thus, according to the New York Crim. Proc. Law § 440.10, these claims were not procedurally barred.

# APPLICATION OF MARTINEZ V. RAYN, 132 S.Ct. 1309 TO THE INSTANT MATTER

As an initial matter, to prevail on this instant motion, the petitioner must show that the New York Law is sufficiently like Arizona's in its treatment of ineffective assistance of trial counsel claims. While, some claims of ineffective assistance of counsel are not demonstrable on the direct appeal record and are more appropriately brought under Section 440.10, New York has no rule comparable to that of Arizona. See, **Jackson v. Ercole, No. 09-Civ.-1054(MAT), 2012 WL 5949359, at \*3 (W.D.N.Y. Nov. 28, 2012).**

Unlike the Arizona rule feature in **Martinez,** New York does not explicitly restrict claims of ineffective assistance of trial counsel to post-judgment collateral motions, and thus a defendant may raise such a claim on direct appeal. See, **People v. Swain, 270 AD2d 861 (4th Dept. 2000).** However, New York appellate courts have long suggested that "in typical case it would be better and in some cases essential, that an appellate attack on the ineffectiveness of counsel be bottomed on an evidentiary exploration by collateral or postconviction proceeding brought under C.P.L. § 440.10." **People v. Brown, 45 NY2d 852, 853–854 (Ct.App. 1978); Lopez v. Grenier, 323 F.Supp.2d 456, 466 (S.D.N.Y. 2004)**("In general, post-judgment

attacks on trial counsel's assistance should therefore be made by a motion pursuant to N.Y. Crim. Proc. Law § 440.10."). In particular, "if a defendant's ineffective assistance of counsel claim turns on matters outside the record, ... it is not reviewable on direct appeal and would require a further record to be developed by way of a C.P.L. § 440.10 motion." **People v. Santer, 30 AD3d 1129 (1st Dept. 2006); People v. Potts, 49 AD3d 782, 783 (2d Dept. 2008)**("Portion of the defendant's claim of ineffective assistance of counsel, raised in his supplemental pro-se brief are based on matter dehors the record, which cannot be reviewed on direct appeal.").

In New York, "[i]n order to properly review a defendant's claim of ineffective assistance a court must consider all of his or her allegations - as well as the evidence , the law, and the circumstances of the case - 'in totality' ... and the C.P.L. § 440.10 proceeding is the appropriate forum for reviewing the claim of ineffectiveness in its entirety." Id. If some of the defendant's allegations of ineffectiveness involve matters appearing on the record, while others involve matters that are outside the record, the defendant has presented a mixed claim[]' of ineffective assistance." **People v. Maxwell, 89 AD3d 1108, 1109 (2d Dept. 2011); People v. Lou, 943 NYS2d 621 (2d Dept. 2012); People v. Evans, 16 NY3d 571, 575, 925 NYS2d 366 (Ct.App. 2011).**

Taken together, in New York, whether a defendant's claim stems entirely from the record or incorporates any facts outside the record determines whether the Supreme Court's holding in

**Martinez** is applicable. Specifically, if a defendant' claim is entirely record-based, then **Martinez** is inapplicable as he may adequately review the factual record supporting his claim prior to a direct appeal. See, **Green v. Legoney, No. 09-CV-0747(SAS), 2012 WL 5278465, at *7 n.101 (S.D.N.Y. Oct. 25, 2012)**. However, if a defendant's claim is "mixed," in order to properly review the allegations in their totality, a C.P.L. § 440.10 collateral proceeding "is the **FIRST** designated proceeding for a prisoner to raise a claim of ineffective assistance of counsel" and therefore compatible with the reasoning in **Martinez, 132 S.Ct. at 1316.**

**Martinez,** fashioned an equitable rule whereby indigent prisoners would not be prevented from having their constitutional claims heard because a state rule required that they could only be heard on a collateral motion. In such circumstances, the Supreme Court was concerned with the lack of fairness and equity to "forever deny a defendant review of his ineffective assistance of trial counsel claim when he lacked the benefit of legal development that effective appellate counsel could have provided." **Legoney, 2012 WL 5278465, at *7 n.101.** The same spirit of the **Martinez** holding is equally applicable in "mixed" cases brought under New York law. See, **Smith v. Fischer, 1:07-CV-02966-RWS (Decided January 25, 2013).**

For the foregoing reasons, the instant Rule 60(b)(6) motion presents facts and laws that suggest a colorable ineffective assistance of trial counsel claim. The issues of ineffective assistance of counsel raised by the petitioner, in the matter at

bar, were correctly presented in the collateral proceeding in state court which was the first state-authorized proceeding in which the claim must be raised. Thus, a procedural default must not bar this federal habeas court from hearing the substance of the ineffective assistance of trial counsel claim in the case at bar. See, **Smith v. Fischer, supra.**

The procedural hurdle that once restricted petitioner from federal review has been lifted under the new intervening change on the procedural law in **Martinez v. Rayn, 132 S.Ct. 1309 (2012).** Had **Martinez** resolved years earlier the unsettled legal question, posed to the District Court, upon which I file the present motion, petitioner's habeas corpus would have been reviewed on the merits.

Thus, the new intervening change in the procedural law allows this District Court to reverse its previous conclusion which prevented federal habeas review of the merits of the ineffective assistance of trial counsel claims raised in petitioner's habeas corpus petition, and to consider them for the first time.

Finally, it is well settled that "in a habeas corpus proceeding, if there is close connection between the original and intervening decisions at issue in a particular motion for reconsideration predicated on an intervening change in the law, a court will be more likely to find the circumstances sufficiently extraordinary to justify disturbing the finally of the original judgment. **Fed.Rules Civ.Proc.Rule 60(b)(6), 28 U.S.C.A.** The **Martinez's** court set forth a clear and

19

authoritative change in the governing procedural law. Thus, had petitioner's habeas corpus petition been considered under the precedents as they exist now, after **Martinez v. Rayn**'s decision, there is no question that petitioner's claims would have prevailed. On this view, the present petition deserves to be reopened and reviewed on the merits.

# CONCLUSION

For all the forgoing reasons, petitioner has made a showing of extraordinary circumstances which require reinstatement of the original petition. Thus, the District Court is urged to reopen this habeas corpus proceeding. **Gonzalez v. Crosby**, 125 S.Ct. 2641 (2005); **Devino v. Duncan**, 215 F.Supp.2d 414 (S.D.N.Y. 2002). See, **Smith v. Fischer, supra.**

I declare under the penalty of perjury, pursuant to **28 U.S.C.§ 1746,** that the forgoing is true and correct.

EXECUTED: March 15, 2013

        Stormville, NY

 

                       Respectfully submitted,

                       Rafael Martinez, 93A2733
                       Petitioner Pro-Se
                       Green Haven Corr. Fac.
                       P.O. Box 4000
                       Stormville, NY 12582

cc.: New York County District Attorney's Office

EXHIBIT 1: District Court's decision

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RAFAEL MARTINEZ,

Petitioner,

-v-

No. 02 Civ. 0009 (LTS)(KNF)

DANIEL SENKOWSKI, Superintendent,
Clinton Correctional Facility,

Respondent.

LAURA TAYLOR SWAIN, UNITED STATES DISTRICT JUDGE

## ORDER DENYING APPLICATION TO AMEND PETITION AND ADOPTING, IN PART, REPORT AND RECOMMENDATION

On May 4, 2005, Magistrate Judge Kevin Nathaniel Fox issued a Report and

Recommendation (the "Report") recommending that the petition of Rafael Martinez

("Petitioner") for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, filed on January 2, 2002,

be denied. Both Petitioner and Respondent submitted timely objections to the Report.

### Petitioner's Application to Amend

Following the briefing of the objections to the Report, Petitioner (whose petition

and memorandum of law were filed by counsel and whose counsel recently confirmed that he

still represents Petitioner[1]) made a number of pro se submissions to the Court,[2] all of which the

---

[1]   See docket entry no. 28.

[2]   Petitioner submitted a letter dated March 9, 2006, a letter dated June 13, 2007, a motion
for leave to amend petitioner's habeas petition, which was dated February 21, 2008 and
file-stamped February 26, 2008, and a letter dated July 17, 2008.

Court reviewed before rendering this decision.

In his March 9, 2006, letter, which does not appear to have been served on opposing counsel, Petitioner purports to summarize and reiterate the arguments he made to Magistrate Judge Fox as well as arguments made to the state courts in connection with his prior proceedings. Insofar as the letter attempts to address arguments, such as insufficiency of evidence based on alleged falsification of trial evidence, that were raised in the state courts but not in the instant habeas petition, the Court construes the letter as an application to amend the Petition. In a June 13, 2007, letter, to which Respondent submitted opposition, Petitioner again appeared to attempt to expand the scope of his petition, this time to argue the point, raised in the state court proceedings in connection with an argument that his sentence was imposed vindictively (but not in his Petition here), that trial counsel was ineffective for failure to counsel him regarding the merits of various plea offers that were made to him prior to trial.

His February 21, 2008, submission was expressly labeled as a motion to amend the petition and seeks to add a claim that his trial counsel was ineffective because he failed to communicate to Petitioner one of the plea offers that had expressly been referred to in Petitioner's state court papers regarding his failure to counsel claim (See Exhibit H to Respondent's Answer Opposing Petition for a Write of <u>Habeas</u> <u>Corpus</u>, Doc. 3, para. 21 and Doc. 5, paras. 45, 49(b)) and that he was prejudiced by this alleged failure because he would have accepted that plea offer had it been communicated to him. Respondent also opposed this application.

Petitioner argues that at least one of the late applications, which all post-dated not only Magistrate Judge Fox's Report concerning the original Petition but also the briefing of the

objections to the petition, concerns an amendment that he had asked his counsel to make at the beginning of the case. Whether or not that representation is true, Petitioner waited from four to six years to attempt to raise any of these issues with the Court and one of them (failure to convey a plea that he would allegedly have taken) does not appear properly to have been presented, much less exhausted, in the state courts. Although generally "[t]he court should freely give leave when justice so requires," a court is not required to permit amendments that would prejudice the opposing party and run counter to the efficient allocation of judicial resources by raising entirely new issues years after a recommended ruling and briefing on the claims originally presented. Fed. R. Civ. P. 15(a)(2). For this reason, and for substantially the reasons set forth in Respondent's letters of July 9, 2007, and April 2, 2008, Petitioner's applications to amend his petition are denied.

### The Report and Recommendation

In reviewing the Report, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C.A. § 636(b)(1)(West 2006). The Court is required to make a de novo determination as to the aspects of the Report to which objections are made. United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997). If the party makes only conclusory or general objections, or simply reiterates the original arguments, however, the Court will review the Report strictly for clear error. See United States ex rel. Casa Redimix Concrete Corp. v. Luvin Construction Corp., 00 Civ. 7552 (HB), 2002 WL 31886040, at *1 (S.D.N.Y. Dec. 27, 2002); Camardo v. General Motors Hourly-Rate Employees Pension Plan, 806 F. Supp. 380, 382 (W.D.N.Y. 1992); Vargas v. Keane, No. 93 Civ. 7852 (MBM), 1994 WL 693885 at *1 (S.D.N.Y. Dec. 12, 1994). Objections to a Report and

Recommendation "are to be specific and are to address only those portions of the proposed findings to which the party objects." Camardo, 806 F. Supp. at 381-382. Although aspects of Petitioner's objections appear merely to reiterate previous arguments, the Court has reviewed de novo all of the aspects of the Report to which the parties have objected.

Judge Fox recommends that Petitioner's application for habeas corpus relief be denied, finding: (1) Petitioner's Batson claim and courtroom closure claim to be exhausted but procedurally barred; (2) two of Petitioner's grounds for his ineffective assistance of counsel claim -- specifically, that trial counsel failed to call "Louisa" as a witness and failed to engage a handwriting expert -- to be procedurally barred; (3) Petitioner's claim of ineffective assistance of counsel based on the compensation arrangement for counsel with his co-defendants to be procedurally barred; (4) Petitioner's claims concerning the alleged hostility of the trial court and impermissible sentencing factors were not properly presented to the state courts and, therefore, are procedurally barred; and (5) Petitioner's claim of ineffective assistance of counsel based on exhausted grounds -- namely, trial counsel's lack of preparation and unprofessional decorum during trial -- to be insufficient to warrant relief. (Report, at 11-14.)

Although the Report recommends that Petitioner's application for habeas corpus relief be denied, Respondent objects to a portion of Magistrate Judge Fox's analysis of the claim regarding ineffective assistance of counsel. Respondent disagrees with Judge Fox's finding that the performance of Petitioner's counsel fell outside the wide range of professionally competent assistance, and that counsel's performance was thus constitutionally deficient, thereby satisfying the first prong of the Supreme Court's two part-test in Strickland v. Washington. See Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984) (holding that, to prevail in an ineffective

assistance of counsel claim, a criminal defendant must make a two-part showing that (1) his counsel's performance was deficient; and (2) absent counsel's deficient performance, there is a reasonable probability that the outcome of defendant's trial would have been different); (Report, at 13-14; Resp. Obj. to Report, at 1.) Respondent argues that Petitioner's claim of ineffective assistance of counsel should have been rejected under both prongs of the <u>Strickland</u> analysis, and not merely the second prong. (Resp. Obj. to Report, at 3-4.)

Respondent further contends that the New York State Supreme Court, Appellate Division, First Department ("Appellate Division"), found that the misconduct of Petitioner's trial counsel was "strategic," and that such a factual finding should be accorded deference by the Magistrate Judge, unless Petitioner carries the burden of showing the contrary by clear and convincing evidence. (<u>Id.</u> at 2-3.) Respondent argues that Magistrate Judge Fox neither acknowledged the Appellate Division's factual finding nor ruled that Petitioner had carried his burden of rebutting the Appellate Division's factual finding by clear and convincing evidence. (<u>Id.</u> at 3.)

Because the Appellate Division and Magistrate Judge Fox both concluded that the outcome of Petitioner's case was not altered by his trial counsel's conduct in court, the Court finds it unnecessary to resolve Respondent's objection with respect to the first prong of the <u>Strickland</u> test and will not adopt Judge Fox's conclusion that counsel's performance was constitutionally deficient. <u>Strickland</u>, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if a defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as

a result of the alleged deficiencies"). Judge Fox recommended the denial of habeas corpus relief based on the second prong, based on Petitioner's failure to demonstrate that his trial counsel's alleged deficiencies prejudiced his case, i.e., that the outcome of the trial would have been different but for counsel's deficient performance. See Strickland, 466 U.S. at 697; (Report, at 14.)

Whereas Respondent objects to Judge Fox's analysis of the first prong of the Strickland test, Petitioner objects to Judge Fox's determination regarding Strickland's second prong, namely that Petitioner failed to prove that he was prejudiced as a result of trial counsel's deficient performance and therefore could not establish ineffective assistance of counsel. (See Pet. Obj. to Report, at 9-10.) The Court concurs in Judge Fox's recommended assessment of this claim. Petitioner offers only a conclusory assertion that the outcome of the trial would have been different, and provides no evidence or legal analysis to support his assertion. See Strickland, 466 U.S. at 694.

Petitioner also objects to Judge Fox's determination that Petitioner's Batson[3] and courtroom closure claims were not decided on the merits by the Appellate Division and, thus, were procedurally barred. (See Pct. Obj. to Report, at 1-5.) Petitioner contends that, by denying his petition for a writ of error coram nobis, the Appellate Division necessarily rejected the merits of his Batson and courtroom closure claims because Petitioner had premised his claim of ineffective assistance of counsel on his appellate counsel's failure to raise those particular claims. (See id. at 4.) As Judge Fox noted, however, the presentation of a federal question as a "predicate" for an ineffective assistance of counsel claim does not satisfy the exhaustion

---

[3]    Batson v. Kentucky, 476 U.S. 79 (1986).

requirement. See Turner v. Artuz, 262 F.3d 118, 123 (2d Cir. 2001), cert. denied, 534 U.S. 1031 (2001); Report, at 10-11. To be determined on the merits, the Batson and courtroom closure claims would have had to have been presented as independent grounds for relief, something that could not have been done in that proceeding because claims other than ineffective assistance of counsel may not be submitted in a coram nobis petition. See Aparicio v. Artuz, 269 F.3d 78, 87 (2d Cir. 2001) (citing People v. Bachert, 69 N.Y.2d 593, 599 (N.Y. 1987) (use of writ of coram nobis only sanctioned by New York Court of Appeals in the context of a claim of ineffective assistance of appellate counsel). Moreover, in a coram nobis proceeding, an appellate court may not reject a claim of ineffective assistance of appellate counsel yet grant relief on other grounds; it is only where appellate counsel has been found ineffective, which was not the case here, that the appellate court may review the substance of a particular claim appellate counsel had been found incompetent for failing to raise.

Although Petitioner contends that, even if his claim is procedurally barred, he can show cause and prejudice so as to overcome the procedural bar, Petitioner's submissions in this proceeding are insufficient to demonstrate cause for the default, and also fail to demonstrate either the requisite prejudice or that he is actually innocent of the crimes. Nor has Petitioner demonstrated that failure to consider the claim will result in a fundamental miscarriage of justice. See Coleman v. Thompson, 501 U.S. 722, 750 (holding that a petitioner may obtain federal habeas corpus review of a claim that is barred due to procedural default if the petitioner shows cause for the default and prejudice attributable thereto, or demonstrates that failure to consider the federal claim will result in a fundamental miscarriage of justice); Bousley v. United States, 523 U.S. 614, 622-24 (1998) (holding that petitioner may overcome procedural bar by showing

that he is actually innocent of the charge for which he has been convicted). Judge Fox's conclusion that Petitioner's <u>Batson</u> and courtroom closure claims cannot be considered on their merits because they are exhausted but procedurally barred is therefore appropriate.

Petitioner also objects to Judge Fox's rejection, as procedurally barred, of (1) Petitioner's claims of ineffective assistance of trial counsel based on his trial counsel's failure to call "Louisa" as a witness and his failure to engage a handwriting expert; and (2) Petitioner's claim that the trial court's compensation arrangement for Petitioner's co-defendants' counsel compromised their willingness to press points vigorously and this denied Petitioner a fair trial. (Pet. Obj. to Report, at 5-7.) Judge Fox found that the trial judge had correctly ruled that the appellate record was sufficient to permit adjudication of these questions such that they were procedurally barred. (<u>See</u> Report at 11-12 (citing N.Y. Crim. Proc. Law § 440.10(2)(c) (2005)).) The trial court's determination that the appellate record was sufficient to permit adjudication of these questions is a factual determination, which, under 28 U.S.C. § 2254(e)(1), is presumed to be correct unless Petitioner rebuts the presumption by clear and convincing evidence. <u>See</u> 28 U.S.C.A. § 2254(e)(1) (West 2006) (when considering a petition for a writ of habeas corpus by a state prisoner, a federal court must be mindful that any determination of a factual issue made by a state court is to be presumed correct and the petitioner has the burden of rebutting the presumption by clear and convincing evidence).

Here, Petitioner is not able to overcome the presumption that he could have raised these issues on direct appeal. <u>See</u> <u>id.</u> Although Petitioner argues that the record was deficient at the time of direct appeal, the issue is not whether the appellate record would have led to a successful claim, but rather whether he would have been permitted to raise on direct appeal the

same claim he has presented to the postjudgment court. Moreover, when Petitioner presented claims in postjudgment court, Petitioner did not rely on any material facts outside the appellate record; therefore, the New York postjudgment court correctly ruled that those claims could have been raised on direct appeal. See N.Y. Crim. Proc. Law § 440.10(2)(c) (McKinney 2005).

Accordingly, Petitioner's claim regarding trial counsel's failure to call a witness and to utilize a handwriting expert and his claim regarding trial counsel's compensation are procedurally barred. Moreover, because Petitioner has failed to demonstrate cause and prejudice with respect to the default, that he is actually innocent of the convicted offenses, or that a miscarriage of justice will result from failure to consider his claims, this Court concludes that habeas corpus relief based on these claims is properly denied. See Coleman, 501 U.S. at 750; Bousley, 523 U.S. at 622-24.

Finally, Petitioner objects to Judge Fox's determinations that: (1) the judicial bias and vindictive sentencing claims had not been properly presented in state court and were procedurally barred; and (2) there had been no showing of cause or prejudice that might overcome the procedural bar in this regard. (Pet. Obj. to Report, at 7-9.) The Court finds that Judge Fox's recommended conclusions are correct.

Although Petitioner argues that it is inconsequential whether appellate counsel cited "book and verse on the federal constitution" in presenting his claims on direct appeal because they were essentially the same legal doctrines as those cited in the federal petition for a writ of habeas corpus, he neglects to take into account the requirement that state court presentation must "include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief." Gray v. Netherland, 518 U.S. 152, 162-63 (1996) (emphasis added). Instead, Petitioner merely relies on his appellate brief's reference

to the right to a fair trial generally, and its citation of a state case, People v. DeJesus, 42 N.Y.2d 519 (N.Y. 1977), which cites federal case law, but only for the broad federal constitutional guarantee of the right to fair trial untainted by judicial partiality and the contention that juries are "extremely likely to be impregnated by the environing atmosphere." See Gray, 518 U.S. at 163 ("[I]t is not enough to make a general appeal as broad as due process to present the "substance" of such a claim to state court."); see also DeJesus, 42 N.Y.2d 519 (relying on state case law to support its holding that trial court's continual open hostility to defense counsel and allowance of prosecution's comment regarding defendant's failure to call defense witness deprived defendant of fair trial).

The Second Circuit has held that there are four ways in which a state defendant may fairly present to the state courts the constitutional nature of his claim, even without citing chapter and verse of the Constitution: (1) reliance on pertinent federal cases employing constitutional analysis; (2) reliance on state cases employing constitutional analysis in like fact situations; (3) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution; and (4) allegation of a pattern of facts that is well within the mainstream of constitutional litigation. Daye v. Attorney Gen. of New York, 696 F.2d 186, 192-94 (2d Cir. 1982). Indeed, not one of the eleven other cases cited in Petitioner's appellate brief refers to any federal case law, nor does Petitioner cite any specific federal constitutional guarantee in support of his claim of judicial hostility to defense counsel. (See Pet.'s App. Brief, at 51-53.) Instead, Petitioner cites state cases, which, to satisfy Daye, would have to present like fact situations. (See id.); Daye, 696 F.2d at 192-94.

The state cases cited in Petitioner's appellate brief all involve significantly

different fact patterns than those asserted in Petitioner's claim. See Gray, 518 U.S. at 163-64 (finding that the cases cited in support of petitioner's claim arose in widely differing contexts); (see also Pet.'s App. Brief, at 51-52 (citing DeJesus, 42 N.Y.S.2d at 524 (holding that in a setting where there are sharp issues of credibility between witnesses, that the demeaning of counsel, and the interjection of extraneous considerations by the trial court unfairly burdened the defendant); People v. Mendes, 3 N.Y.2d 120, 122 (N.Y. 1957) (holding that under different circumstances trial judge's remarks regarding witness testimonies might not be deemed so grave as to vitiate conviction but because case was so close, safer course is to grant a new trial); People v. Lincoln, 551 N.Y.S.2d 314 (N.Y. App. Div. 1990) (holding that trial court improperly denied defendant counsel and that certain comments considered in conjunction with such errors deprived defendant of fair trial); People v. Baker, 477 N.Y.S.2d 215 (N.Y. App. Div. 1984) (ordering new trial after trial court erred in admitting testimony of co-defendants which unduly prejudiced the defendant and noting that there was animosity between trial judge and counsel which may have influenced the jury); People v. Rodriquez, 299 N.Y.S.2d 632 (N.Y. App. Div. 1969) (granting new trial after trial court erred in refusing to permit evidence regarding credibility of witnesses and erred in charging jury with words which could have been understood as requiring incorrect standard for finding of guilt)).)

Moreover, Petitioner's appellate brief incorrectly asserts that, in the cases Petitioner cites, the Court of Appeals reversed convictions based on findings that trial court's demeaning of defense counsel unfairly burdened that defendant, when in fact, the trial court's comments toward counsel were not the reason for the Court of Appeals' reversal in most of the cases. (See Pet.'s App. Brief, at 51-52 (citing Mendes, 3 N.Y.2d at 122; Lincoln, 551 N.Y.S.2d

314; <u>Baker</u>, 477 N.Y.S.2d 215; <u>Rodriquez</u>, 299 N.Y.S.2d 632).)  In not one of the cases cited in Petitioner's appellate brief was the trial judge's hostility to defense counsel the "but for" cause for the court's decision to order a retrial.  Thus, Petitioner fails to show fair state court presentation under any of the <u>Daye</u> critera.  <u>Daye</u>, 696 F.2d at 192-94.

Petitioner's claim regarding vindictive sentencing also failed to reasonably put the state courts on notice as to the federal nature of the claim.  While Petitioner asserted in his appellate brief that his sentence was "unconstitutionally excessive," he made no reference to specific constitutional guarantees and, cited no federal case law, nor even any state cases based on a fact pattern similar to Petitioner's case.  <u>See</u> <u>Gray</u>, 518 U.S. at 162-63; <u>Daye</u>, 696 F.2d at 192-94.  The Court therefore concludes that the hostility of trial court and vindictive sentencing claims are procedurally barred because they were not fairly presented as federal constitutional claims in the New York courts.  Furthermore, the Court finds that Petitioner has made no showing of cause and prejudice, actual innocence or miscarriage of justice that would entitle him to overcome the procedural bar.  <u>See</u> <u>Coleman</u>, 501 U.S. at 750; <u>Bousley</u>, 523 U.S. at 623.  The petition for writ of habeas corpus based on these claims is therefore properly denied.

Having thoroughly considered the objections of both Petitioner and Respondent and having reviewed the Report <u>de novo</u>, the Court adopts the Report in its entirety, with the exception of Magistrate Judge Fox's determination that trial counsel's performance was deficient under the first prong of the <u>Strickland</u> test.  For the reasons set forth in this Order and in the Report, Petitioner's application to amend the petition is denied and his petition for writ of habeas corpus is denied in its entirety.

Petitioner may not appeal this order unless "a circuit justice or judge issues a

certificate of appealability." 28 U.S.C.A. § 2253(c)(1) (West 2002). A certificate will be granted "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C.A. § 2253(c)(2) (West 2006); see generally United States v. Perez, 129 F.3d 255, 259-60 (2d Cir. 1997) (discussing the standard for issuing a certificate of appealabilty). The Court finds that Petitioner will not be able to sustain this burden. Thus, the Court declines to issue a certificate of appealability. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith. See Coppedge v. United States, 369 U.S. 438, 444 (1962).

SO ORDERED.

Dated: New York, New York
       September 29, 2008

LAURA TAYLOR SWAIN
United States District Judge

EXHIBIT 2: Magistrate Judge's R&R

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
RAFAEL MARTINEZ,
:

                        Petitioner,        :        REPORT AND RECOMMENDATION

            -against-                      :        02 Civ. 0009 (LTS)(KNF)

DANIEL SENKOWSKI, Superintendent           :
of Clinton Correctional Facility,

                        Respondent.        :
------------------------------------------------------X

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE LAURA TAYLOR SWAIN, UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

Before the Court is the petition of Rafael Martinez ("Martinez") for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. Martinez alleges that his confinement by the state of New York is unlawful because: (1) the prosecutor at Martinez's trial, through the use of peremptory strikes, prevented black veniremembers from being sworn as members of his trial jury, thereby violating Martinez's right to equal protection; (2) the assistance rendered to Martinez by his trial counsel was ineffective, since counsel did not prepare adequately for trial, behaved in an unprofessional and disorderly manner during court proceedings, did not call a witness who would have exculpated the petitioner, and did not consult a handwriting expert to analyze an incriminating document allegedly signed by the petitioner; (3) the trial court exhibited hostility to the petitioner's trial counsel in the presence of the jury, thereby violating his due process right to a fair trial; (4) the trial court closed the courtroom to the public during the testimony of certain witnesses, violating Martinez's right to a public trial; (5) the court-appointed attorneys

who represented the petitioner's co-defendants at trial applied to, and received from the trial court enhanced monetary compensation, which rendered them beholden to the trial court, violating Martinez's right to a fair trial; and (6) the trial court's imposition of a sentence of 213 years to life imprisonment was occasioned by its reliance on impermissible factors, thereby violating his right to due process.

The respondent opposes the petitioner's application for habeas corpus relief on the grounds that the petitioner's ineffective assistance of counsel claim is partially unexhausted and procedurally barred, his other claims are completely unexhausted and procedurally barred, and all of his claims lack merit.

## II. BACKGROUND

In October 1991, a New York County grand jury returned an indictment accusing Martinez of being the leader of a narcotics trafficking organization that sold substantial quantities of cocaine and engaged in other unlawful conduct in parts of northern Manhattan and the Bronx, including the vicinity of West 157th Street, in Manhattan.[1]

Martinez and four co-defendants, each represented by different counsel, proceeded to trial before a jury in New York State Supreme Court, New York County. The co-defendants' trial counsel, who had been appointed by the court, requested that each be compensated at rates greater than the $40 per hour and $25 per hour typically awarded to appointed counsel at that time, under New York law for in-court and out-of-court work, respectively. Noting that the anticipated length and complexity of the trial had required the co-defendants' counsel to forgo

---

[1] A superceding indictment, whose principal accusations against Martinez apparently were similar to those of the original indictment, was returned on November 4, 1991, but was not made part of the record before the Court.

other work opportunities, the court determined that counsel to each of the co-defendants would be compensated at a rate of $65 per hour for all work performed in connection with the trial.

In October 1992, jury selection commenced. During the first round of voir dire examination, the parties considered 43 veniremembers. At least five of those veniremembers were black, and the prosecution struck four of the five peremptorily. One of the petitioner's co-defendants alleged that this pattern of peremptory strikes was motivated by the veniremembers' race, and asked that the trial court seat the four veniremembers on the jury. The petitioner joined in that application. The trial court denied the application, noting that it perceived "obvious," non-racial reaons for striking two of the black veniremembers. The trial court opined that one of the black veniremembers who was struck peremptorily was "not totally rational" or "totally of this world," and that another was a "bizarre person who not only dressed in a strange manner, [but also] seemed to be a little strange herself." After referring to the standard set forth in Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712 (1986), the trial court concluded: "In view of the fact that two of the four black jurors challenged were clearly people who had obvious problems, in my view, I don't see any pattern at all, and at this point I will not find that there was a prima facie case of discrimination." Thereafter, voir dire was completed, and a jury was sworn.

The trial lasted approximately four months. During this time, Martinez's trial counsel, Richard L. Giampa ("Giampa"), engaged in a number of acrimonious and disrespectful colloquies with the trial court, repeatedly disputed and/or ignored the trial court's evidentiary rulings and other directives and — orally and through facial expressions — called into question the impartiality and reputation of the trial judge. Much of this conduct occurred in the presence of the jury. The trial court summarily convicted Giampa of criminal contempt of court for his

3

misconduct during the trial. According to the petitioner and the respondent, Giampa did not review timely certain witness statements, reports and photographs that were made available to him prior to trial, after assuring the court prior to trial that he would do so. This and Giampa's other conduct during the trial slowed the progress of the trial on numerous occasions. According to the petitioner, Giampa also failed to: (1) call a witness — identified only as "Louisa" in the record before the Court — who had told the police that a person other than the petitioner had committed one of the murders of which the petitioner had been accused; and (2) engage a handwriting expert to examine an incriminating piece of evidence that it was alleged the petitioner had signed.

Giampa's contempt conviction and the misconduct that gave rise to it were the bases for three of ten charges lodged against Giampa in a disciplinary proceeding instituted by the Grievance Committee for New York's Ninth Judicial District. The New York State Supreme Court, Appellate Division, Second Department, found that the disciplinary charges against Giampa had been established by a preponderance of the evidence, and suspended him from the practice of law for a period of one year. In the Matter of Giampa, 211 A.D.2d 212, 215-16, 628 N.Y.S.2d 323, 325 (App. Div. 2d Dep't 1995) (noting that Giampa "has evinced a flagrant disrespect for the judiciary and a fundamental disregard for the judicial process which he has been sworn to uphold").

During Martinez's trial, the prosecution requested that the courtroom be sealed during the testimony of three undercover police officers who had investigated Martinez and the narcotics trafficking organization of which he was alleged to be the leader. The court sealed the courtroom for the purpose of conducting a hearing on the prosecution's application. During that hearing, the undercover officers testified, among other things, that they were engaged in ongoing

4

undercover investigations of illegal narcotics activities in the vicinity of the West 157th Street neighborhood in which Martinez and his co-defendants were alleged to have committed the charged offenses, and in which members of the defendants' families resided. Based upon this and other evidence, the trial court granted the prosecution's application and excluded the public from observing the trial testimony of the undercover officers.

The jury found Martinez guilty for one count of conspiracy in the second degree (N.Y. Penal Law § 105.15), one count of murder in the second degree (N.Y. Penal Law § 125.25), one count of attempted murder in the second degree (N.Y. Penal Law §§ 110.00, 125.25), one count of criminal sale of a firearm in the third degree (N.Y. Penal Law § 265.11), three counts of criminal sale of a controlled substance in the first degree (N.Y. Penal Law § 220.43), three counts of criminal possession of a controlled substance in the first degree (N.Y. Penal Law § 220.21), one count of criminal possession of a controlled substance in the third degree (N.Y. Penal Law § 220.16), and five counts of criminal possession of a weapon in the third degree (N.Y. Penal Law § 265.02).

On April 8, 1993, the petitioner was sentenced to consecutive, indeterminate terms of incarceration: 8 1/3 to 25 years for the conspiracy conviction, 25 years to life for the murder conviction, 8 1/3 to 25 years for the attempted murder conviction, 1 1/3 to 4 years for the criminal sale of a firearm conviction, 25 years to life for each of the first degree criminal sale of a controlled substance convictions, 25 years to life for each of the first degree criminal possession of a controlled substance convictions, 8 1/3 to 25 years for the third degree criminal possession of a controlled substance conviction, and 2 1/3 to 7 years for each of the criminal possession of a weapon convictions — an aggregate term of 213 years to life. Each term of incarceration imposed was the maximum permitted by New York law.

Martinez appealed from the judgment of conviction to the New York State Supreme Court, Appellate Division, First Department ("Appellate Division"), on the grounds that: (1) his trial counsel's assistance was ineffective because he did not prepare adequately for trial and because his conduct at trial was unprofessional; (2) the trial court exhibited such hostility to Martinez's trial counsel, both in the presence of the jury and otherwise, that Martinez was deprived of a fair trial; (3) his constitutional and statutory rights to confront witnesses were violated when the trial court precluded his counsel from examining certain prosecution witnesses about their motives; (4) Martinez's right to a fair trial was violated by a prejudicial instruction that the trial court delivered to the jury; and (5) the sentence imposed upon Martinez by the trial court — which his appellate brief described, inaccurately, as 106 years to life — was an "abuse of discretion" and was "unconstitutionally excessive."

According to both parties, the petitioner also sought and received permission to file, pro se, a supplemental brief in support of his appeal. In that supplemental brief, Martinez states, as additional grounds for his appeal, that: (1) there was insufficient evidence to support his conviction for second degree murder; (2) in light of the lengthy duration of the prosecution's case, the trial court abused its discretion when it denied Martinez's application to make an opening statement at the conclusion of the prosecution's case; (3) the petitioner was prejudiced by accomplice testimony about uncharged crimes that outweighed the probative value of that testimony, violating the petitioner's right to a fair trial; and (4) comments made by the prosecution during its closing statement were improper and violated Martinez's right to a fair trial.

The Appellate Division affirmed the judgment of conviction. See People v. Gonzalez, 251 A.D.2d 51, 673 N.Y.S.2d 669 (App. Div. 1st Dep't 1998). The petitioner sought leave to

6

appeal from the Appellate Division's determination to the New York Court of Appeals. That request was denied on November 24, 1998. See People v. Martinez, 92 N.Y.2d 984, 683 N.Y.S.2d 765 (1998).

On November 4, 1999, the petitioner moved to vacate his conviction, pursuant to New York Criminal Procedure Law § 440.10 ("§ 440.10"). Martinez brought that motion on the ground that his Sixth Amendment rights were violated because, inter alia: (1) the court-appointed attorneys who represented the petitioner's co-defendants at trial were beholden to the trial court, due to its control over the amount of their monetary compensation; (2) Martinez's trial counsel was ineffective because he did not call a witness (identified in the record only as "Louisa") who would have exculpated the petitioner and did not consult a handwriting expert to analyze an incriminating document alleged to have been signed by the petitioner.

On September 15, 2000, the trial court denied the § 440.10 motion "for the reasons set forth by the People in their response." Among those reasons was that the above-noted grounds of the motion were procedurally barred, since in his direct appeal Martinez raised the issue of compensation for counsel to his co-defendants and could have raised the issues respecting his trial counsel's failure to use a handwriting expert and to call "Louisa" as a trial witness. On October 10, 2000, Martinez sought leave to appeal the denial of his § 440.10 motion to the Appellate Division. On February 27, 2001, the Appellate Division denied Martinez's application.

On March 5, 2001, Martinez petitioned the Appellate Division for a writ of error coram nobis. In that petition, he contended that his appellate counsel provided ineffective assistance to him by, inter alia, failing to challenge on direct appeal the trial court's Batson ruling and its decision to close the courtroom to the public during the testimony of the undercover officers. In

7

his coram nobis petition, Martinez also requested that "[i]n the interests of judicial economy, this Court should determine the issues on the merits, recall and vacate its prior affirmance, reverse the judgment of conviction and remand this case for a new trial." The Appellate Division, noting that Martinez had "moved, in the nature of a writ of error coram nobis, for a review of his claim of ineffective assistance of appellate counsel, and for related relief," denied Martinez's petition "in its entirety."

Thereafter, Martinez filed the instant petition for a writ of habeas corpus, seeking relief on the grounds noted above.

## III. DISCUSSION

Where a state court has adjudicated the merits of a claim raised in a federal habeas corpus petition, 28 U.S.C. § 2254 provides that a writ of habeas corpus may issue only if the state court's adjudication resulted in a decision that: (1) was contrary to, or involved an unreasonable application of federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. See 28 U.S.C. § 2254(d); see also Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000). In addition, when considering an application for a writ of habeas corpus by a state prisoner, a federal court must be mindful that any determination of a factual issue made by a state court is to be presumed correct and the habeas corpus applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1).

*Exhaustion and Procedural Bar*

A federal court entertaining a habeas corpus petition may not review a question of federal law decided by a state court if the state court's decision rested on a state law ground, be it

8

substantive or procedural, that is independent of the federal question and adequate to support the judgment. See Coleman v. Thompson, 501 U.S. 722, 729, 111 S. Ct. 2546, 2553-54 (1991). This proscription applies even in those circumstances where a state court expressly relies on a procedural default as an individual and adequate state law ground but, nevertheless, rules in the alternative on the merits of the federal claim, see Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990), or indicates the conclusion it would reach were it to review the claim, see Simmons v. Mazzuca, No. 00 Civ. 8174, 2001 WL 537086, at *10 (S.D.N.Y. May 21, 2001).

Additionally, in order to obtain habeas corpus review of a question of federal law, a state prisoner must first exhaust his or her available state remedies with respect to that question. See 28 U.S.C. § 2254(b) and (c). To satisfy the exhaustion doctrine, a habeas corpus petitioner must, inter alia, "fairly present" his or her federal claim to the highest state court from which a decision can be rendered. See Daye v. Attorney General of New York, 696 F.2d 186, 190-91 n.3 (2d Cir. 1982) (en banc). If a state prisoner has not exhausted his or her state remedies with respect to a claim and no longer has a state forum in which to raise the claim, the claim may be deemed exhausted but procedurally barred. See Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994). Moreover, an inability to return to state court constitutes an adequate and independent state law ground upon which the prisoner's claim is procedurally defaulted. See Acosta v. Giambruno, 326 F. Supp. 2d 513, 522 (2004) (citing Coleman, 501 U.S. at 731, 111 S. Ct. at 2554-55); Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991) (finding that for exhaustion purposes, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred). However, a petitioner may obtain federal habeas corpus review of a claim that is barred due to procedural default if the petitioner shows cause for the default and prejudice attributable thereto. See Coleman, 501 U.S.

at 750, 111 S. Ct. at 2564-65. Alternatively, a petitioner may overcome such a bar by showing that this court's failure to consider the petitioner's federal claims will result in a fundamental miscarriage of justice. Id. A fundamental miscarriage of justice exists when a habeas corpus petitioner is actually innocent of the charge(s) for which he or she has been convicted. See Bousley v. United States, 523 U.S. 614, 623, 118 S. Ct. 1604, 1611 (1998).

## 1) Peremptory Strikes; Courtroom Closure

Martinez first raised his Batson claim and his claim concerning the closure of the trial courtroom during the undercover officers' testimony in his coram nobis petition, as grounds for his claim of ineffective assistance of appellate counsel. However, presentment of a federal question as a "predicate" for an ineffective assistance of counsel claim does not satisfy the exhaustion requirement. See Turner v. Artuz, 262 F.3d 118, 123 (2d Cir. 2001). The petitioner contends that because his coram nobis petition asked the Appellate Division to "determine the issues on the merits" and because the court denied the petition "in its entirety," that the Appellate Division's decision constitutes a decision on the merits of Martinez's Batson and courtroom closure claims. However, the fact that the petitioner asked the Appellate Division to determine these claims on the merits does not demonstrate that the Appellate Division had the ability to do so, let alone that it actually did so.

Martinez cites People v. Bowen, 234 A.D.2d 161, 652 N.Y.S.2d 501 (App. Div. 1st Dep't 1996), for the proposition that the Appellate Division may consider the merits of — and grant relief upon — claims other than ineffective assistance of appellate counsel. In Bowen, which was also a petition for a writ of error coram nobis, the Appellate Division found that Bowen's appellate counsel had been ineffective, granted the writ, and recalled and vacated its previous affirmance of the underlying conviction. The Appellate Division's decision to vacate its

10

affirmance of Bowen's conviction was a necessary remedy for Bowen's successful ineffective assistance of counsel claim. As such, the Bowen decision does not support the proposition that, after rejecting an ineffective assistance of counsel claim, the Appellate Division might nevertheless have occasion to consider other potential bases for granting relief to a petitioner. Indeed, "'in a criminal action, the writ of error coram nobis lies in [the state appellate court] only to vacate an order determining an appeal on the ground that the defendant was deprived of the effective assistance of appellate counsel.'" Turner, 262 F.3d at 123 (quoting People v. Gordon, 183 A.D.2d 915, 584 N.Y.S.2d 318 [App. Div. 2d Dep't 1992]). Accordingly, the Appellate Division's denial of Martinez's coram nobis petition cannot be considered a decision on the merits of his Batson or courtroom closure claims.

As the petitioner no longer has a forum for these claims in state court, the claims should be deemed exhausted but procedurally barred, as noted above. The petitioner has not demonstrated cause and prejudice for his failure to present these claims to the state courts, and he has not shown that he is actually innocent of the offenses for which he was convicted. Accordingly, the petitioner's Batson and courtroom closure claims may not be the bases for habeas corpus relief.

   2)    *Ineffective Assistance of Counsel; Compensation of Co-defendants' Counsel*

In his § 440.10 motion, Martinez raised for the first time: (a) two of the grounds for his claim that his trial counsel was ineffective — namely, that trial counsel failed to call "Louisa" as a witness and failed to engage a handwriting expert; and (b) his claim that the compensation arrangement for counsel to his co-defendants violated his right to effective assistance of counsel. The trial court determined that these issues were procedurally barred, as sufficient facts had appeared on the record that was before the Appellate Division to permit these questions to be

11

adjudicated as part of the petitioner's appeal.  See N.Y. Criminal Procedure Law § 440.2(c).  The trial court's determination that the appellate record was sufficient to permit adjudication of these questions is a factual determination.  Therefore, as noted above, it is presumed to be correct.  The petitioner has not rebutted this presumption by clear and convincing evidence.  Accordingly, the petitioner is procedurally barred from raising these questions in his application for a writ of habeas corpus.  As Martinez has not made any of the above-noted showings that might overcome such a bar, these grounds may not be the bases for habeas corpus relief.

3)    *Hostility of Trial Court;  Impermissible Sentencing Factors*

In his direct appeal, Martinez contended that the trial court's hostility to his counsel deprived him of a "fair trial," and that the Appellate Division should modify his sentence because it was influenced by that hostility.  Martinez did not identify any provisions of federal law that might have been the bases for these claims.  Rather, he simply contended that his right to a "fair trial" was violated as a result of the trial court's hostility and that his sentence was "unconstitutionally excessive."  Martinez's appellate brief also did not reference any decisional law, factual pattern, or terminology that could reasonably have been expected to put the state court on notice that the claims he had raised were claims arising under federal law, rather than under state law alone.  Cf. Dave, 696 F.2d at 194.  In fact, the relevant parts of Martinez's appellate brief include terminology and citations to state decisional law that make it plain that Martinez's requests for relief were based solely upon state law.

Accordingly, Martinez has not exhausted his state court remedies with respect to these claims; therefore, they are procedurally barred.  As the petitioner has not made any of the above-noted showings that might overcome such a bar, neither of these claims may be the basis for habeas corpus relief.

12

*Ineffective Assistance of Counsel (Exhausted Grounds)*

It is undisputed that Martinez's claim of ineffective assistance of trial counsel is exhausted, to the extent that it is based upon counsel's lack of preparation for trial and counsel's misbehavior during trial.

The Sixth Amendment guarantees a criminal defendant the "right to effective assistance of counsel." Strickland v. Washington, 466 U.S. 668, 686, 104 S. Ct. 2052, 2063 (1984). To determine whether counsel's assistance was effective, the Supreme Court devised a two-part test. See id. at 687-96, 2064-69. First, a criminal defendant must show that his counsel's performance was deficient, that is, that it fell below an "objective standard of reasonableness," measured according to "prevailing professional norms." Id., at 687-88, 2064-65. Second, the criminal defendant must affirmatively demonstrate prejudice. Id. at 694, 2068. Prejudice is rarely presumed, and so the defendant generally must prove that "there is a reasonable probability that but for counsel's [error], the result of the proceeding would have been different." Id.; see also United States v. Javino, 960 F.2d 1137, 1145 (2d Cir. 1992). A reasonable probability has been defined as "a probability sufficient to undermine confidence in the outcome." See Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. Considerable deference is accorded counsel's performance, as counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690, 2066.

In the case at bar, there can be no doubt that Giampa's preparation for the trial and his decorum during the trial were deficient and fell well below that called for by prevailing professional norms. Indeed, Giampa was suspended from the practice of law, in part, due to his performance at Martinez's trial. See In the Matter of Giampa, 211 A.D.2d at 215-16, 628

N.Y.S.2d at 325. The Appellate Division's determination of Martinez's claim of ineffective assistance of counsel is not inconsistent with this conclusion. Instead, the Appellate Division's decision rejected Martinez's ineffective assistance of counsel claim because it found that there was no reasonable probability that Giampa's behavior affected the outcome of Martinez's trial. Although the petitioner asserts that it "can[not] be doubted that Giampa's deficiencies undermine confidence in the outcome" of his trial, the petitioner does not make any attempt to prove this assertion. The record before the Court does not, without more, demonstrate a reasonable probability that, absent Giampa's deficient performance, the result of Martinez's trial would have been different.

Accordingly, Martinez is not entitled to habeas corpus relief on these two prongs of his ineffective assistance of counsel claim.

## IV. RECOMMENDATION

For the reasons set forth above, the petitioner's application for a writ of habeas corpus should be denied.

## V. FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Laura Taylor Swain, 40 Centre Street, Room 1205, New York, New York, 10007, and to the chambers of the undersigned, 40 Centre Street, Room 540, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Swain. FAILURE TO FILE OBJECTIONS WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER

OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. See Thomas v. Arn, 474 U.S. 140 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York
       May 4, 2005

Respectfully submitted,

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

Mailed copies to:

Randall D. Unger, Esq.
Patrick J. Hynes, Esq.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/5/05

15

EXHIBIT 3: Smith v. Fischer 07-cv-2966-RWS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------x

PATRICK SMITH,

                    Petitioner,                    07 Civ. 2966

          -against-                                 OPINION

BRIAN FISCHER,

                    Respondent.

------------------------------------------x

A P P E A R A N C E S :

          Attorney for Petitioner

          EPSTEIN & WEIL
          225 Broadway, Suite 1203
          New York, NY  10007
          By:  Lloyd Epstein, Esq.


          Attorneys for Respondent

          BRONX COUNTY DISTRICT ATTORNEY'S OFFICE
          198 East 161st Street
          Bronx, NY  10451
          By:  Robert Johnson, Esq.
               Jason Whitehead, Esq.
               Allen Saperstein, Esq.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/25/13

Petitioner was sentenced to two concurrent indeterminate sentences of imprisonment of from twenty years to life.

In September of 2005, Petitioner, through counsel, appealed his case, raising four claims before the New York State Supreme Court, Appellate Division.  On April 4, 2006, the Appellate Division modified the judgment of conviction, but affirmed the judgment.  See People v. Smith, 812 N.Y.S.2d 512 (N.Y. App. Div. 2006).  On June 23, 2006, the New York State Court of Appeals denied Petitioner's application for leave to appeal.  People v. Smith, 7 N.Y.3d 763 (2006).

On March 21, 2007, the Petitioner filed a pro se petition for a writ of habeas corpus with the United States District Court for the Southern District of New York.  (Dkt. No. 1).  On July 31, 2007, this Court granted the Petitioner's request to withdraw his habeas petition without prejudice in order to allow him to exhaust the unexhausted claims in the State courts. (Dkt. No. 6).

On May 17, 2007, while the federal habeas motion was pending, the Petitioner filed a pro se motion in the Bronx County Supreme Court to vacate the judgment of conviction, under

2

N.Y.C.P.L. § 440.10. Among other points, the Petitioner argued that his trial counsel was ineffective for failing to request a missing witness charge with respect to Detective Jimmy Irving ("Detective Irving"), the police officer for whom the Petitioner claimed William Ferguson ("Ferguson") had worked for as a past confidential informant. At trial, Ferguson testified about incriminating statements that the Petitioner had made to him while they were both in jail. Petitioner claimed that "[i]f as Mr. William Ferguson declared on the stand, he actually worked as a paid informant for detective Irving, then it was defense counsel's responsibility to properly investigate the facts surrounding Mr. Ferguson's declaration and thereafter, his responsibility to request his production in Court so that he could cross-examine him and verify the veracity of Mr. Ferguson's position, while at the same time serve as someone to either substantiate and/or disprove Mr. Ferguson's contentions." (Whitehead Decl. Ex. 8, at 20-21).

In pro se reply papers dated October 11, 2007, Petitioner argued, among other points, that he was denied the effective assistance of counsel by the failure to call or request a missing witness charge on Detective Irving, and that his due process rights under Brady v. Maryland, 373 U.S. 83, 83

3

S. Ct. 119, 10 L. Ed. 2d 215 (1963), were violated by the prosecution's failure to disclose Ferguson's entire criminal record, including the minutes of Ferguson's parole hearing. (Whitehead Decl. Ex. 10). Petitioner argued that the hearing minutes and the information therein "bears on [Ferguson's] credibility" and showed Ferguson's "lack of varacity (sic)" and "willingness and capacity to lie, fabricate and spin his own tales for whatever reason he sees fit." (Id.). However, Petitioner did not contend that Ferguson's parole hearing minutes supported his claim that he had a history of working as a government informant. As supporting documentation, Petitioner attached to his reply papers two pages of the parole hearing transcript, and three pages of notes of the parole hearing. (Id.).

Additionally, in pro se papers dated June 5, 2007, Petitioner sought a writ of error coram nobis granting him a new appeal in the Appellate Division including on the grounds that his appellate counsel was ineffective for failing to raise on appeal that his trial counsel was ineffective. (Whitehead Decl. Ex. 6). The coram nobis petition repeated the same grounds raised in the Section 440.10 motion. (Id.). On May 6, 2008,

the Appellate Division denied Petitioner's coram nobis application. (Whitehead Decl. Ex. 14).

On July 1, 2008, the Bronx County Supreme Court denied Petitioner's claims. With regard to the Petitioner's ineffective assistance claim for failure to call or request a missing witness charge on Detective Irving, the court held the following:

> At issue under this claim is the testimony of Mr. William Ferguson, a prosecution witness and paid informant for Detective Irving. The Defendant contends that it was defense counsel's responsibility to properly investigate the facts surrounding Mr. Ferguson's responsibilities to Detective Irving and either substantiate or disprove the witness' contentions by calling the detective to the stand or at the least requesting a missing witness charge. Being a Brooklyn Narcotics Detective unassigned to the Defendant's case, the Court strains to see how Detective Irving could provide any noncumulative information relevant to a material issue in the case. This claim does not allege a ground constituting a legal basis for the motion and hence fails.

(Id.). In determining whether the State had failed to turn over Ferguson's entire criminal record and, specifically withheld information about Ferguson's criminal case that was open during the pendency of the Petitioner's trial, the court stated that, "[a]s this Court ruled previously the function of reply papers are to address the opposition and not to raise new issues, hence

5

the parole hearing transcripts are not reviewable. . . It is
clear from the record that Ferguson was questioned in detail
about his criminal history up until that open case.  As such
Defendant's motion based on this ground is denied pursuant to
C.P.L. § 440.30(4)(c) which indicates that a court may deny a
C.P.L. § 440 motion if 'an allegation of fact essential to
support the motion is conclusively refuted by unquestionable
documentary proof.'"  (Id.).

On August 19, 2008, the New York Court of Appeals
denied Petitioner's application for leave to appeal the denial
of his coram nobis application.  (Whitehead Decl. Ex. 16).

The Petitioner then hired an attorney.  On January 6,
2009, through counsel, Petitioner filed a second N.Y.C.P.L. §
440.10 motion in the Bronx Supreme Court.  (Whitehead Decl. Ex.
17).  In it, Petitioner claimed that (1) he was deprived of
effective assistance when his trial counsel failed to move to
suppress or preclude his statements to Ferguson under Massiah v.
United States, 377 U.S. 201, 84 S. Ct. 1199, 12 L. Ed. 2d 246
(1964), and consented to commencing trial without receiving the
informant's criminal record and prior statements required to be
disclosed under Brady, and People v. Rosario, 213 N.Y.S.2d 448,

6

9 N.Y.2d 286, 289 (1961); and that (2) his <u>Brady</u> and <u>Rosario</u> rights were violated by the prosecutor's failure to disclose Ferguson's status as an "almost" registered confidential informant and Ferguson's parole minutes. (<u>Id.</u>).

The State opposed the motion on the grounds that the trial attorney's omissions were strategic, arguing that (1) the trial attorney failed to make a <u>Massiah</u> motion because he believed that the trial court's allowing him to examine the informant outside the jury's presence "obviated the need for a separate <u>Massiah</u> hearing," and (2) the trial attorney did not request the trial court to sanction the prosecutor for her failure to timely turn over <u>Rosario</u> material because the attorney felt that such a request would have been denied in light of the circumstances and would have been "unhelpful to him and might have only served to aggravate the jury." (Whitehead Decl. Ex. 18). According to the prosecutor, these assertions were based on conversations with the Defendant's trial attorney, though no affidavit from the trial attorney was submitted. (<u>Id.</u>).

On March 3, 2009, the Appellate Division denied as moot Petitioner's application for leave to appeal the November

19, 2007 denial of his Section 440.10 motion on the grounds that that decision had been vacated. (Whitehead Decl. Ex. 19).

On February 8, 2010, Judge Robert Torres denied Petitioner's second N.Y.C.P.L. § 440.10 motion, ruling that the Petitioner's claims were procedurally barred, under N.Y.C.P.L. § 440.10(3)(c), because the Petitioner "was in the position to adequately raise all issues he now makes in the previous motion but chose not to." (Whitehead Decl. Ex. 20). While the Court stated that it "declines to reach the merits of Defendant's counsel claims" it found that the motion was "meritless" and that Petitioner's "bare claims of ineffective assistance do not meet the Strickland" standard. (Id.). Thus, the state court found that the Petitioner's Massiah-based ineffectiveness of counsel and due process claims raised by counsel in the § 440.10 motion were procedurally barred because they were not raised in his first § 440.10 motion, which he filed pro se. (Id.).

On July 19, 2010, the Appellate Division, First Department, denied Petitioner's application for leave to appeal the denial of his second N.Y.C.P.L. § 440.10 motion. (Exhibit 21).

The Petitioner then filed an amended petition for a
writ of habeas corpus on December 3, 2010, raising the same two
claims of ineffective assistance of counsel that he raised in
the second N.Y.C.P.L § 440.10 motion. Petitioner did not assert
cause for his procedural default of his Massiah claim in state
court. (Dkt. No. 12).

In an opinion dated March 1, 2012, this Court denied
the Petitioner's habeas corpus petition. See Fischer, 2012 WL
695432. In the March 1 Opinion, the Petitioner's Massiah claim
was found to be procedurally barred because the state court had
denied that claim due to the Petitioner's failure to raise it in
his first collateral motion and because the Petitioner had not
asserted cause for his default in state court. Id. at *17-20.
The ruling determined that the state court's decision rested on
an independent and adequate state ground, which barred federal
review. Id. at *19. Further, in denying the Petitioner's due
process claim, the Court noted that the prosecutor did not
possess any "material that was non-cumulative or otherwise
likely to have altered the verdict" since "prosecutors are not
deemed to possess, and therefore do not suppress, parole minutes
that are not known to a state prosecutor." Id. at *20. The
March 1 Opinion also stated that "Ferguson's parole hearing

minutes do not establish that, he, or the prosecutor, was untruthful when they represented that Ferguson had not been acting as a government agent when he elicited incriminating statements from [the Petitioner.]" Id. at *21.

On March 22, 2012, the Petitioner moved this Court to reconsider, pursuant to Rule 59 of the Federal Rules of Civil Procedure, its denial of his habeas corpus petition based on the Supreme Court's decision in Martinez v. Ryan, --- U.S. ---, 132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012). The instant motion for reconsideration was marked fully submitted on May 9, 2012.

## II.  The Applicable Standard

Under Fed. R. Civ. P. 59(e), a court may grant reconsideration where the party moving for reconsideration demonstrates an "intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Henderson v. Metro. Bank & Trust Co., 502 F. Supp. 2d 372, 376 (S.D.N.Y. 2007) (quotation marks and citations omitted); Parrish v. Sollecito, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003) ("Reconsideration may be granted to correct clear error, prevent manifest injustice or review the

10

court's decision in light of the availability of new evidence."). The moving party must demonstrate controlling law or factual matters put before the court on the underlying motion that the movant believes the court overlooked and that might reasonably be expected to alter the court's decision. See Linden v. Dist. Council 1707-AFSCME, 415 Fed. App'x 337, 338-39 (2d Cir. 2011) (affirming dismissal of reconsideration motion as movant did not identify any relevant facts or controlling authority that the lower court overlooked); Lichtenberg v. Besicorp Grp. Inc., 28 Fed. App'x 72, 75 (2d Cir. 2002) (affirming dismissal of reconsideration motion where movant "failed to demonstrate that the [lower] court overlooked any fact of consequence or controlling legal authority at the time the court decided [the case.]").

The reason for the rule confining reconsideration to matters that were "overlooked" is to "ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." Polsby v. St. Martin's Press, Inc., No. 97-690(MBM), 2000 WL 98057, at *1 (S.D.N.Y. Jan.18, 2000), (citation and quotation marks omitted). A court must narrowly construe and strictly apply Local Rule 6.3, which governs

11

motions for reconsideration or reargument, so as to avoid
duplicative rulings on previously considered issues and to
prevent the rule from being used as a substitute for appealing a
final judgment.  See In re Bear Stearns Cos., Inc. Sec.
Derivative and ERISA Litig., No. 08 M.D.L. 1963, 2009 WL
2168767, at *1 (S.D.N.Y. Jul. 16, 2009) ("A motion for
reconsideration is not a motion to reargue those issues already
considered when a party does not like the way the original
motion was resolved.") (quoting Davey v. Polan, 496 F. Supp. 2d
387, 389 (S.D.N.Y. 2007)).


### III. The Law With Respect To Procedural Default


     Under Coleman v. Thompson, federal courts "will not
review a question of federal law decided by a state court if the
decision of that court rests on state law that is independent of
the federal question and adequate to support the judgment."  501
U.S. 722, 729, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991).  "To
bar federal habeas review, however, the state court's decision
must rest not only on an independent procedural bar under state
law, but also on one that is 'adequate to support the
judgment.'"  Murden v. Artuz, 497 F.3d 178, 191-92 (2d Cir.
2007) (quoting Jimenez v. Walker, 458 F.3d 130, 138 (2d Cir.

12

2006)). The question of whether a default discerned by a state court is sufficiently adequate and independent to preclude federal habeas review is governed by federal law. Monroe v. Kuhlman, 433 F.3d 236, 241 (2d Cir. 2006) (quoting Cotto v. Herbert, 331 F.3d 217, 239 (2d Cir. 2003) ("[T]he question of when and how defaults in compliance with state procedural rules can preclude . . . consideration of a federal question is itself a federal question.")); Lee v. Kemna, 534 U.S. 362, 375, 122 S. Ct. 877, 151 L. Ed. 2d 820 (2002) ("[T]he adequacy of state procedural bars to the assertion of federal questions . . . is not within the State's prerogative finally to decide; rather adequacy is itself a federal question.").

As Coleman recognized, "[n]egligence on the part of a prisoner's postconviction attorney does not qualify as 'cause.'" Maples v. Thomas, --- U.S. ---, 132 S. Ct. 912, 922, 181 L. Ed. 2d 807 (2012). The underlying reasoning is "because the attorney is the prisoner's agent . . . [and] under 'well-settled principles of agency law,' the principal bears the risk of negligent conduct on the part of his agent." Id. at 922.

Recently in Martinez v. Ryan, the Supreme Court noted that Coleman "did not present the occasion to apply this

13

principle to determine whether attorney errors in initial-review collateral proceedings may qualify as cause for a procedural default." --- U.S. ---, 132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012). Thus, <u>Coleman</u> "left open . . . a question of constitutional law: whether a prisoner has a right to effective counsel in collateral proceedings which provide the first occasion to raise a claims of ineffective assistance at trial." <u>Id.</u> at 1315.

While the Supreme Court declined to resolve the constitutional question, it "qualifie[d] <u>Coleman</u> by recognizing a narrow exception: Inadequate assistance of counsel at initial-review collateral proceedings[1] may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." <u>Id.</u> The Court made explicit that its holding represented a "limited qualification" to <u>Coleman</u>, and reasoned that "[w]here . . . the initial-review collateral proceeding is the first designated proceeding for a prisoner to raise a claim of ineffective assistance at trial, the collateral proceeding is in many ways the equivalent of a prisoner's direct

---

[1] The Court defined an "initial review collateral proceeding" as "the first designated proceeding for a prisoner to raise a claim of ineffective assistance at trial." <u>Martinez</u>, 132 S. Ct. at 1315, 1317.

14

appeal as to the ineffective-assistance claim." Id. at 1317.
The Court held:

> Where, under state law, claims of ineffective
> assistance of trial counsel must be raised in an
> initial review collateral proceeding, a procedural
> default will not bar a federal habeas court from
> hearing a substantial claim of ineffective assistance
> at trial if, in the initial-review collateral
> proceeding, there was no counsel or counsel in that
> proceeding was ineffective.

Id. at 1320.  The exception, therefore, applies in states such
as Arizona, which was at issue in Martinez, where an initial-
review collateral proceeding is the defendant's "first occasion
to raise a claim of ineffective assistance at trial." Id. at
1315, 1317.  In such states, a prisoner may establish cause for
a default of an ineffective assistance claims under two
situations:

> The first is where the state courts did not appoint
> counsel in the initial-review collateral proceeding
> for a claim of ineffective assistance at trial.  The
> second is where appointed counsel in the initial-
> review collateral proceeding, where the claim should
> have been raised, was ineffective under the standards
> of Strickland v. Washington, 466 U.S. 668, 104 S. Ct.
> 2052, 80 L. Ed. 2d 674 (1984).

Id. at 1318.  In either scenario the prisoner must also
"demonstrate that the underlying ineffective-assistance-of-

trial-counsel claim is a substantial, which is to say that the

prisoner must demonstrate that the claim has some merit." Id.

### IV.  The March 1 Opinion's Conclusion That the Procedural Default Barred Habeas Relief is Vacated

In his habeas petition, Petitioner contended that his

trial counsel was ineffective for failing to move, pursuant to

Massiah, to suppress the testimony of Ferguson, who was

allegedly acting as an agent of the police when he elicited

incriminating statements from the Petitioner.  Petitioner now

maintains that Martinez supports reconsideration of his habeas

petition because he has shown cause to excuse the default of his

ineffective assistance of trial counsel claim as he did not have

an attorney to help him file his first N.Y.C.P.L. § 440.10

motion.

As an initial matter, to prevail on his instant

motion, Petitioner must show that New York law is sufficiently

like Arizona's in its treatment of ineffective assistance of

trial counsel claims.  While, some claims of ineffective

assistance of counsel are not demonstrable on the direct appeal

record and are more appropriately brought under Section 440.10,

New York has no rule comparable to that of Arizona.  See Jackson

16

v. Ecrole, No. 09-CV-1054(MAT), 2012 WL 5949359, at *3 (W.D.N.Y. Nov. 28, 2012).

Unlike the Arizona rule featured in Martinez, New York does not explicitly restrict claims of ineffective assistance of trial counsel to post-judgment collateral motions, and thus a defendant may raise such a claim on direct appeal. See People v. Swain, 270 A.D.2d 861 (4th Dept. 2000). However, New York appellate courts have long suggested that "in the typical case it would be better, and in some cases essential, that an appellate attack on the effectiveness of counsel be bottomed on an evidentiary exploration by collateral or postconviction proceeding brought under C.P.L. § 440.10." People v. Brown, 45 N.Y.2d 852, 853-54 (N.Y. 1978); Lopez v. Grenier, 323 F. Supp. 2d 456, 466 (S.D.N.Y. 2004) ("In general, post-judgment attacks on trial counsel's assistance should therefore be made by a motion pursuant to N.Y. Crim. Proc. Law § 440.10."). In particular, if a "defendant's ineffective assistance of counsel claim turns on matters outside the record, . . . it is not reviewable on direct appeal and would require a further record to be developed by way of a C.P.L. § 440.10 motion." People v. Santer, 30 A.D.3d 1129, 1129 (1st Dept. 2006); People v. Potts, 49 A.D.3d 782, 783 (2d Dept 2008) ("Portions of the defendant's

17

claim of ineffective assistance of counsel, raised in his supplemental pro se brief, are based on matter dehors the record, which cannot be reviewed on direct appeal.").

In New York, "[i]n order to properly review a defendant's claim of ineffective assistance, a court must consider all of his or her allegations - as well as the evidence, the law, and the circumstances of the case - 'in totality' . . . and the C.P.L. § 440.10 proceeding is the appropriate forum for reviewing the claim of ineffectiveness in its entirety." Id. If "some of the defendant's allegations of ineffectiveness involve matters appearing on the record, while others involve matters that are outside the record, the defendant has presented a 'mixed claim[ ]' of ineffective assistance." People v. Maxwell, 89 A.D.3d 1108, 1109 (2d Dept 2011).

Taken together, in New York, whether a defendant's claim stems entirely from the record or incorporates any facts outside the record determines whether the Supreme Court's holding in Martinez is applicable. Specifically, if a defendant's claim is entirely record-based, then Martinez is inapposite as he may adequately review the factual record

supporting his claim prior to a direct appeal. See Green v. Legoney, No. 09-CV-0747(SAS), 2012 WL 5278465, at *7 n.101 (S.D.N.Y. Oct. 25, 2012). However, if a defendant's claim is "mixed," in order to properly review the allegations in their totality, a § 440.10 collateral proceeding "is the first designated proceeding for a prisoner to raise a claim of ineffective assistance of counsel" and therefore compatible with the reasoning in Martinez. Martinez, 132 S. Ct. at 1316.

Martinez fashioned an equitable rule whereby indigent prisoners would not be prevented from having their constitutional claims heard because a state rule required that they could only be heard on a collateral motion. In such circumstances, the Supreme Court was concerned with the lack of fairness and equity to "forever deny a defendant review of his ineffective assistance of trial counsel claim when he lacked the benefit of legal development that effective appellate counsel could have provided." Legoney, 2012 WL 5278465, at *7 n.101. The same spirit of the Martinez holding is equally applicable in "mixed" cases brought under New York law.

The Respondent has contended that Petitioner was not deprived of effective assistance within the meaning of Martinez

19

because New York law, unlike Arizona law, permitted Petitioner to raise the ineffectiveness of trial counsel on direct appeal, in which assigned counsel represented him.  (Resp. Memo. at 13-14).  However, Petitioner's original pro se ineffectiveness claim was "mixed" and referred, in part, to Ferguson's parole transcripts and psychiatric records, which were not discovered until after trial and therefore outside of the trial record. See Fischer, 2012 WL 695432, at *9 ("New defense counsel subsequently uncovered parole violation transcripts in which Ferguson discussed additional history regarding his relationship with the police.").  Thus, the proper and only mechanism under which the Petitioner could bring his mixed claim was a § 440.10 motion, and not on direct appeal.

The Respondent also urges that the Petitioner should not be permitted to benefit from Martinez because he chose to file his initial post-conviction pro se, knowing that he could afford an attorney and that he would hire one if his pro se motion failed.  (Resp. Memo. at 17).  Despite Respondent's protestations that "Petitioner was obviously able to afford an attorney," (Id.), the record indicates that Petitioner was indigent when he appealed his conviction. The Appellate Division, First Department, assigned Richard M. Greenberg

20

("Greenberg") from the Office of the Appellate Defender to represent Petitioner on direct appeal. Greenberg, in conjunction with a volunteer attorney from Wachtell, Lipton, Rosen and Katz, perfected the appeal, People v. Smith, 28 A.D.3d 204 (1st Dept. 2006), but was not assigned to nor filed a N.Y.C.P.L. § 440.10 motion. No attorney was assigned to represent Petitioner on his initial post-conviction motion, and he had no choice but to file the motion himself.

According to the Petitioner, his relatives subsequently provided him with funds with which to hire an attorney. Petitioner's new counsel filed his § 440.10 papers in January 2010, nearly two and a half years after Petitioner filed his initial papers. Accordingly, there is no basis to conclude that Petitioner had the funds to hire an attorney when he filed his initial § 440.10 motion.

## V. The Claim Of Ineffective Counsel Will Be Reconsidered

The claim of ineffective counsel is based upon the failure of defense counsel to suppress the informant's testimony under Massiah and to obtain the later discovered parole minutes and psychiatric records.

The Respondent contends that the prosecutor and defense counsel made extensive inquiry into Ferguson's potential status as a government agent in this case and that the inquiry was effectively a <u>Massiah</u> hearing.   (Resp. Memo. at 9-10). Respondent maintains that Ferguson was under oath and that no other relevant information would have been elicited in a formal <u>Massiah</u> hearing to support Petitioner's ineffective assistance claim.   (<u>Id.</u>).   However, according to Petitioner, his counsel's failure was not to recognize the legal significance of these facts and move to suppress under <u>Massiah</u>.   <u>See U.S. v. Matos</u>, 905 F.2d 20, (2d Cir. 1990) (quoting <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 384-85, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986) (stating that "where trial counsel fails to make a motion to suppress because he neglected 'to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary' then ineffective representation is shown.")).   The March 1 Opinion also recognized that, "Ferguson and his testimony, including his work as a 'paid informant for Detective Irving' presents facts that suggest a <u>Massiah</u> issue." <u>Fischer</u>, 2012 WL 695432, at *18.

22

In addition, while the Respondent brings attention to the State court's finding that Petitioner's ineffective assistance of trial counsel claim lacked merit and that the _Massiah_-based claim was procedurally barred, this Court's March 1 Opinion noted, that:

> From the record it is apparent that the State court could have, when faced with Petitioner's first Section 440.10 motion, addressed an ineffective assistance claim on the basis of counsel's failure to make a _Massiah_ motion. As such, it is arguable that Smith "substantially complied" with NYCPL § 440.10(3)(c), particularly given "the realities" of his _pro se_ status and that the judge reviewing his Section 440 motions was not the trial judge and was therefore less familiar with the record.

Accordingly, the claim of ineffective counsel is colorable, not procedurally barred and will be considered.

## VI. Conclusion

The motion of the Petitioner is granted and the claim of ineffective counsel will be reconsidered.

Counsel will confer and submit a schedule for such reconsideration. Failing agreement, appropriate motions will be heard.

23

It is so ordered.

New York, NY
January 24, 2013

_____
ROBERT W. SWEET
U.S.D.J.

EXHIBIT 4: Crim. Proc. Law § 440 motions

II.  Mr. Giampa's overall representation of the defendant
in this matter, denied him the effective assistance of counsel
guaranteed him under both the U.S. and N.Y. State
Constitutions.

## History

As discussed in the Legal Argument/Standard section, supra,
the constitutional right to counsel is, "so fundamental to our
form of justice, is the right to effective assistance of counsel,
meaning the reasonably competent services of an attorney devoted
to the clients best interests." People v. Ortiz, 76 N.Y.2d 652,
655.  See also, People v. Aiken, 45 N.Y.2d 394, 398-99.

> It is elementary, however, that "the right to
> effective representation includes the right to
> assistance by an attorney who has taken the time to
> review and prepare both the law and the facts to the
> defense, and who is familiar with, and able to employ
> at trial, basic principles of criminal law and
> procedure.  Whether counsel has adequately performed
> these functions is necessarily a question of degree, in
> which cumulative errors particularly on basic points
> essential to the defense, are often found to be
> determinative."  Droz, 39 N.Y.2d at 462 (internal
> citations omitted); Futch v. Dugger, 874 F.2d 1483
> (11th Cir. 1989).

As discussed infra, counsel's actions and inactions during
the time of his representation, constituted ineffective
assistance under both the Strickland two-prong test and the
"meaningful representation" standard of the New York Court of
Appeals.  The Strickland two-prong test that is to be utilized in
determining counsel's ineffectiveness, is: First, the defendant
must show that counsel was deficient to the degree that he or she
"was not functioning as the 'counsel' guaranteed by the Sixth

Amendment." Id. at 687. Second, the defendant must show that counsel's deficient performance deprived the defendant of "a fair trial, a trial whose result is reliable." Id. The essence of the Sixth Amendment claim is "that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." Kimmelman v. Morrison, 477 U.S. 365, 374 (1986).

## Case at Bar

This matter is properly before this Court, in that this issue has never been addressed to this Court or preserved in the lower Court (due to counsel's ineffectiveness), and even the Appellate Division and the District Attorney state that the defendant needs to amplify the record of the proceedings by way of a C.P.L. Section 440 motion. (See, page 24 of this motion). Such statements are to be accorded great weight, as it has been held that this is the proper remedy for the issues presented herein.

It should first be pointed out that defendant has attempted to get an affidavit from his attorney, Mr. Giampa, (See, Exhibit "4"), but Mr. Giampa was not willing to provide one pro bono (Exhibit "5"). In People v. Scott, 10 N.Y.2d 380 (1961), the Court stated:

> "If he [defendant] applied to this lawyer and the lawyer had declined to comply with a request for an affidavit, there would be time enough to consider whether to grant a hearing at which the lawyer's attendance might be compelled by compulsory process."

Thus, the defendant has met his burden by attempting to secure an affidavit from Mr. Giampa, and his failure to provide one should not hinder Defendant's motion before this Court, as Mr. Giampa can be subpoenaed if the parties believe his presence is necessary or required.

## Mr. Giampa's Conduct with Justice Snyder, Denied Defendant the Effective Assistance of Counsel

As Justice Snyder's comments and judicial misconduct were a flagrant disregard for her capacity as a Justice of the Court, Mr. Giampa's conduct, as well, rose to the level of incompetence, and severely prejudiced the defendant, in and out of the jury's presence. As discussed _infra_, arguing with the Trial Court can never be a strategic avenue, as it only serves to prejudice the defendant before the judge presiding over the matter, as well as the jury, who is determining the facts of the case. Even Justice Snyder stated that the trial of this matter, at times, had "disintegrated into what I call the lowest point I ever had to reach with any lawyer. It was personally distasteful and disgusting...". (T. 4,054).

As Exhibit "S" so adequately states, it was never Mr. Giampa's contention, nor his strategy, to engage the Court in such contentious colloquy, as that employed throughout the course of this matter. That Mr. Giampa "barked" back at the Judge, however, only served to prejudice the defendant and render the trial manifestly unfair. _Perhaps_ Mr. Giampa was not to blame for

the barrage of misconduct that occurred during this trial, however, because he was engaging in the all out war with the Trial Justice, he is as much to blame as the Trial Judge, as it served no other purpose other than to force the jury to Justice Snyder's "end result"; the conviction of all the defendants--in particular, Rafael Martinez, who was sentenced to 213 years to Life--the longest sentence handed down by Justice Snyder.

First, the Appellate Division, First Department, affirmed defendant's conviction based on an alleged finding (not amplified by way of a C.P.L. Section 440 motion), that 1): Mr. Giampa's aggressive and insolent behavior towards Judge Snyder supposedly had no adverse effect on defendant, and 2): was calculated to be of strategic benefit to defendant's defense--in contradiction of Giampa's letter dated May 3, 1999 (attached as Exhibit "G"). The first aspect of this is suspect in light of the fact that Giampa was suspended from the practice of law for a period of one year, based in part on his behavior at defendant's trial,.which the Appellate Division, Second Department found to be a "serious crime" under the Code of Professional Responsibility. The second aspect is clearly wrong because the First Department's citation to In re Giampa, 147 Misc.2d 397 (Supreme Court, Bronx County 1990), concerns Giampa's conduct in a Bronx prosecution, and not defendant's trial in Manhattan. And to the extent that the First Department found Giampa's improper conduct toward Judge Snyder to be "strategic", then it is wrong headed because attacking on

insulting the Trial Judge can never be a legitimate strategy, as it serves only to alienate the jury to the defendant's detriment, and is clearly forbidden upon pain of contempt. 28

An "[a]ttorney may speak only to the extent that his client's rights allow him to speak." See, Zal v. Steppe, supra, at 931. As stated in Gentile v. State Bar of Nevada, supra, at 2722-23:

> "The 'substantial likelihood of material prejudice' standard is a constitutionally permissible balance between the First Amendment rights of attorneys in pending cases and the State's interest in fair trials. Lawyers in such cases are key participants in the criminal justice system, and the State may demand some adherence to that system's precepts in regulating their speech and conduct... The standard is designed to protect the integrity and fairness of a State's judicial system and imposes only narrow and necessary limitations on lawyer's speech. Those limitations are aimed at comments that are likely to influence a trial's outcome or prejudice the jury... Few interests under the Constitution are more fundamental than the right to a fair trial by impartial jurors, and the State has a substantial interest in preventing officers of the court from imposing costs on the judicial system and litigants arising from measures, ... to ensure a fair trial. The restraint on speech is narrowly tailored to achieve these objectives, since it applies only to speech that is substantially likely to have a materially prejudicial effect...".

---

28   This point is reinforced by the Supreme Court's plurality decision in Gentile v. State Bar of Nevada, 501 U.S. 1030, 111 S.Ct. 2720 (1991), in which it stated: "[i]t is unquestionable that in the courtroom itself, during a judicial proceeding, whatever right to 'free speech' an attorney has is extremely circumscribed. An attorney may not, by speech or other conduct, resist a ruling of the trial court beyond the point necessary to preserve a claim for appeal." See also, Zal v. Steppe, 968 F.2d 924 (9th Cir. 1992), cert. denied, 506 U.S. 1161 (1992).

Due to Mr. Giampa's uncontrolled speech in front of the jury, and out of their presence, the defendant was denied the right to a fair trial free of the "war of words" that permeated the trial of this matter. In In re Sawyer, 360 U.S. 622, (1959), the Court stated that:

> "Of course, a lawyer is a person and he too has a constitutional freedom of utterance and may exercise it to castigate courts and their administration of justice. But a lawyer actively participating in a trial, particularly an emotionally charged criminal prosecution, is not merely a person and not even merely a lawyer.

> "He is an intimate and trusted and essential part of the machinery of justice, an 'officer of the court' in the most compelling sense." Id., at 666, 668 (Frankfurter, J., dissenting, joined by Clark, Harlan, and Whittaker, JJ.).

Mr. Giampa was to employ the most basic and essential duties and responsibilities that defendant had an absolute constitutional right to. In that he didn't, Mr. Giampa severely prejudiced the defendant before a jury that was to establish his innocence or guilt from the evidence adduced from the witness stand. Here, the "evidence" from which the jury concluded that the defendant was guilty of each count of the indictment that was presented to them, stemmed from the "war" that Mr. Giampa engaged in with the Trial Justice. Justice Snyder, not acting alone, denied the defendant his constitutional right to a fair trial; in that Mr. Giampa, instead of making a record for appeal,

jeopardized the defendant's right when he "barked back" at the Trial Justice.

In *In Re Little*, 404 U.S. 553, (1972), the Court stated what is relevant to this proceeding, in that Mr. Giampa's statements to the Trial Judge "[d]irectly tended to interrupt its proceedings and to impair the respect due the ... Court's authority", and the statements "'reflected on the integrity of the Court and tended to subvert and prevent justice'...".

In that regard, there is surmountable amount of case law on recusal, which recognizes that juries have a natural regard for the trial judge who is viewed as an authority figure. Lawyers are taught in law school that, in the eyes of the jury, the advocate is regarded as the client. Hence, if the jury despises the defense lawyer for being disrespectful to the trial judge, the jury will take this out on the defendant; as they have done. Given that Giampa attacked Judge Snyder in a manner condemned by both the First and Second Departments, it is hard to believe that the jury was not alienated as a result.

The First Department, in deciding this issue, skirts the issue by citing to Judge Snyder's supposedly "curative" instructions, which it "presumed" the jury followed. However, once alienated, the jury's sentiments towards the defense cannot be undone by instructions. The prospect of a fair trial has thus been lost.

Likewise, the First Department simply declares that defendant received effective assistance of counsel, without any discussion of the issue—except to state that the issue was not amplified by way of a C.P.L. Section 440 motion. It is hard to square this finding with that of the Second Department that Giampa's conduct was tantamount to a serious crime warranting his suspension from the practice of law for a period of one year. Notably, Giampa's attack on trial judges appears to be his _modus operandi_ rather than a considered strategy utilized for the benefit of particular defendants in particular cases. See, In Re Giampa, 147 Misc.2d 897 (Sup. Ct., Bronx County, 1990).

In People v. Hernandez, 691 N.Y.S.2d 366, (1st Dept. 1999), the only case to cite People v. Gonzalez, [this is also the decision of the defendant] the First Department found that the defense attorney's clashes with the trial judge were not prejudicial because "most of the colloquy was conducted outside the presence of the jury." In contrast, Giampa's clashes with Judge Snyder occurred primarily in the presence of the jury, causing the First Department to comment that "many of the court's remarks in the presence of the jury would have been better left unsaid." However, the court excuses Judge Snyder for her damaging remarks because "Giampa's conduct ... created the situation." Yet, the court never considers this in the context of ineffective assistance of counsel; thus this issue is ripe for redress by this Court.

## Missing Witness/Failure To Bring Up Other Suspects/False Misleading Testimony

Mr. Giampa, by virtue of his failure to call the only witness who knew Jose "Chino" Jiminez's killer, ("Louisa", who named "Franklin" as the shooter; which the D.A. stipulated tr--See, T. 5013-16, 4920-24, 4948-50, provided the defendant with ineffective assistance of counsel. It is essential that a lawyer devote his time and resources in advancing defendant's rights, so as to protect the defendant from an unlawful conviction.

In the case at bar, it was imperative that Mr. Giampa call the only witness who knew "Chino's" killer. (T. 1047, 4917-23, 4948-49, 4982, 4999, 5013-14). For defense counsel not to investigate the materiality of this witness's recollection as to who the killer was. (See, People v. Neal, 248 A.D.2d 406 (2nd Dept. 1998); see also, People v. Reed, 152 A.D.2d 481 (1st Dept. 1989)) severely denied the defendant his right to have an attorney devoted to his client's best interests. Since counsel had a ripe opportunity to prove the defendant's innocence, and he neglected to do so, he provided the defendant with representation that fell far below the standard of providing the defendant with meaningful representation. As Justice Hugo Black wrote in Von Moltke v. Gillies, 332 U.S. 708 (1948):

> "a lawyer is expected to devote [his/her] energy, intelligence, skill and personal commitment to the single goal of furthering the clients' interest as those are ultimately defined by the client."

Not bringing before the jury the only witness who could prove the defendant's innocence of the "Chino" murder, denied the defendant "[t]he right to counsel guaranteed by the Constitution." Id. Thus, defense counsel had a ripe opportunity to correct the false testimony in which the prosecution brought out during the pendency of this case. With no common strategic explanation, defense counsel failed to investigate this witness and bring to the jury's attention the true "Chino" killer; thus providing defendant with meaningless representation. "Where a single, substantial error by counsel. . .seriously compromises a Defendant's right to a fair trial, it will qualify as ineffective representation." People v. Hobot, supra. Also See, Donsey v. Kelly, supra; Kimmelman v. Morrison, supra. In the case at bar, counsel more than provided defendant with ineffective representation, thus mandating that defendant's conviction be reversed.

Further, as the prosecutor owes a fair duty to seek justice, and not merely a conviction, he violated his oath of office in allowing false testimony to be adduced by their witnesses. (i.e, T. 8564-70; cf Exhibit "B"- Affidavit of Edwin Matos). Such actions, in and of themselves, are a total disregard for the integrity and confidence of the judiciary. Such a set of circumstances, created by both the defense counsel and the prosecution, denied the defendant his ability to mount a defense, which would have altered the outcome of the defendant's case. As

such, this mandates that the defendant's convictions be reversed, and remanded for a new trial.

Further, as the Prosecutor owes a duty to seek the truth, he had an opportunity to bring forth Jose "Chino" Jiminez's true killer, as he even stipulated the killer was a man named "Franklin" (whose address they have). In that the Prosecutor did not bring forth this witness, they allowed perjured testimony to go forward, and defendant was convicted of this murder, and sentenced to 25 years to life for this killing. Such a set of circumstances goes against the prosecution's role as an officer of the Court, who is supposed to abide by the law and prevent an illegal conviction to go forward. This alone mandates that defendant's conviction be over turned.

It is axiomatic that a defendant in a criminal proceeding has invaluable rights, especially to Due Process, and is entitled to a fair trial. Further, the prosecutor is to seek justice, not merely a conviction and clearly **must not** use improper means calculated to cause a wrongful verdict. Berger v. United States, 295 U.S. 78 (1934). See also, Code of Professional Responsibility, Section EC 7-13. Moreover, misrepresenting facts to the Court and defense counsel not only violates the Code of Professional Responsibility (ABA, Code of Professional responsibility, DR 7-102(A) (3), (5), (8); DR 7-102(B) (2)), but may be grounds for reversal. See e.g., People v. Rice, 69 N.Y.2d 781 (1987).

As the New York Court of Appeals has held:

"[The prosecutor] owes a duty of fair dealing to the accused and candor to the courts, a duty which he violates when he obtains a conviction based on evidence he knows to be false. Such misconduct may impair a defendant's due process rights and require reversal of the conviction." People v. Pelchat, supra at 106.

Whether or not the prosecutor intentionally brought forward false and misleading evidence/testimony can only be established by a complete record on this issue, and this mandates at least a hearing on this issue. Because the prosecutor utilized false and misleading evidence/testimony, the defendant was denied due process of law. In this case, the knowing use of perjured testimony (See, Exhibits "A", "B" & "C"), whether solicited or not, deprives the defendant of a fair trial when the evidence is material to guilt or punishment. Giglio v. United States, 405 U.S. 150 (1972); Mooney v. Holohan, 294 U.S. 103 (1935); Pyle v. Kansas, 317 U.S. 213 (1942); Napue v. Illinois, 360 U.S. 264 (1959); Alcorta v. Texas, 355 U.S. 28 (1957); and United States v. Tarricone, 11 F.3d 24 (2nd Cir. 1993).

Furthermore, there is equally no question that the prosecutor had knowledge of the perjured testimony in this case, as well as knowledge that the evidence obtained was not material to guilt; thus he had to know the effect that such evidence/testimony would have on the jury. It is interesting that this issue was addressed by the High Court over 60 years ago, which stated:

"[The] prosecutor has a constitutional duty to alert defense counsel when one of his witnesses gives false testimony." Mooney v. Holohan, 294 U.S. 103 (1935)

The High Court further stated that:

"Deliberate deception of the court and the jury by the presentation of testimony known to be false is inconsistent with the rudimentary demand of justice." Id.

See also, Pyle v. Kansas, supra.

Following the Mooney decision, the High Court in Alcorta v. Texas, supra, broadened this principle to include as prosecutorial misconduct not only the prosecutor's active solicitation of false testimony but also his failure to correct false testimony.

In deference to this court and in all fairness, it is noteworthy that the High Court later held that in some cases, the prosecutor can violate due process, even if he does not know the evidence is false. See generally, Giglio v. United States, supra.

The Courts have held that a conviction which is arrived at with false testimony is unreliable and must be reversed. Clearly, the instant case must be reversed. Napue v. Illinois, supra. The "improper methods" condemned by the Berger Court must certainly include the use of false evidence. The defendant was convicted based upon evidence now known to be false and misleading. It is more than fair to say that there is a "reasonable probability" that if not for the false and misleading evidence/testimony, the verdict would have been different. Kyles

v. Whitley 514 U.S. 419 (1995). The verdict in the instant case must not be allowed to stand as a matter of law.

The conduct here "involve[s] prosecutorial misconduct" and a "corruption of the truth-seeking function of the trial process." United States v. Agurs, 427 U.S. 97, 104 (1976). Since "there is a[] reasonable likelihood that the evidence could have affected the outcome of the trial", (Oster v. United States, 577 F.2d 782, 766 [2nd Cir. 1978] (citing Agurs), the defendant is entitled to a new trial. See also, United States v. Vozzela, 124 F.3d 389 (2d Cir. 1997)

In consideration of the facts and evidence presented and the mandates of the law, a full hearing on the facts must be held. The distinct probability that an innocent man languishes in prison is contrary to the roots of our system of justice. The instant motion presents facts and evidence to more than substantiate the issues presented. When there can be no doubt that the verdict is unreliable, it must be vacated when considered in light most favorable to the People. A full hearing, at a minimum, serves the interest and demands of justice. Such mendacious presentation of non-existent occurrences certainly mandates a new trial, if not dismissal of the entire indictment.

Further, due to counsel's failure to object to most of these harmful errors, he provided defendant with ineffective assistance of counsel, which mandates that defendant's conviction be

vacated, or in the alternative, a hearing is to be held to address these violations of the defendant's rights.

## Failure To Call An Expert Witness

In the case at bar, securing the services of an expert would have been a well grounded and reasoned choice. Counsel should have retained or at least consulted with experts to evaluate the defendant's handwriting, to that compared to the note and other "evidence" introduced during the trial by the prosecution. (i.e., the note allegedly signed by defendant and Edwin Matos—cf T. 5687-88, 5650, 5675-76 (People's Trial Exhibit #124) with Exhibits "A" and "B"—attached to this motion.) (Also See, T. 4808-09 [People's Trial Exhibits 125-127, 129, 133-135]). Thus it was imperative for defense counsel to call an expert in handwriting, especially since Edwin Matos has provided an affidavit (Exhibit "B"), contradicting his trial testimony, and stated that defendant was not even present at the time of the criminal activity that Edwin Matos was involved in. Defense counsel had no legitimate trial strategy to not call such an expert, and thus it denied the defendant his constitutional right to the assistance of a lawyer devoted to his client's best interest.

Furthermore, the Prosecution never utilized their own handwriting expert to compare defendant's signature with that of the note, etc., received in evidence by the Court. It was necessary for defense counsel to call his own expert, especially

when he stated that the Prosecution failed to do so because they feared that it would prove that "somebody" was imitating defendant's signature. (See, T. 11,217). Infact, the Judge and prosecutor did not want the defense to alert the jury to the fact that the prosecution failed to offer such an expert. (See, T. 11, 218-222). The defense counsel should have called his own expert to establish the defendant's innocence, and not allowed the jury to draw their own conclusions, as the Judge and Prosecutor demanded that they do.

The Prosecution merely entered into evidence certain material, without any proof against the defendant, and without an expert to adequately determine if the handwriting matched defendant's. It is logical to believe that the Prosecution knew that the "evidence" could not substantiate it's false presentation of the evidence/testimony they adduced during the trial of this matter. The Prosecution merely offered testimony from co-defendants who were "coping a deal", to substantiate their false evidence brought out during this case. Such flagrant misconduct of bringing forth false testimony to substantiate their false evidence, cannot be condoned by this Court. Of course the co-defendants who testified against the defendant were going to say what the prosecution wanted them to; after all, they were getting a "deal"; a "cop-out". Indeed, the co-defendants who testified against the defendant stated they were offered a certain deal to testify against the defendants in this' matter;

out ironically, the deal they testified to was a fabrication, as they all went home, instead of back to prison to serve the "deal"/"cop-out" that they falsely informed the jury they were getting. "By any and all means possible", the Prosecution utilized its power and control, especially over the Judge and jury, to convict the defendant. This type of misconduct cannot be allowed to stand, and this mandates a reversal of the defendant's conviction.

Further, an expert in handwriting analysis is requested in connection with this motion, to establish without a doubt that defendant did not sign any note or any of the information supplied by the prosecution during this case. As such, an expert should now be appointed to conduct such an analysis.

As the A.B.A. Standards note:

"The quality of representation at trial...may be excellent and yet valueless to the defendant if his defense requires the assistance of a psychiatrist or handwriting expert and no such services are available."[29]

In 1956, Judge Jerome Frank eloquently stated in United States v. Johnson, 238 F.2d 565 (2d Cir. 1956) (dissent), vacated, 352 U.S. 565 (1957) that:

---

29    A.B.A. Standards Relating to Providing Defense Services 3-1.4 (2d Ed. 1980).