"The best lawyer in the world cannot competently defend
an accused person if the lawyer cannot obtain existing
evidence crucial to the defense, e.g., if the defendant
cannot pay the fee of an investigator to find a pivotal
missing witness or a necessary document, or that of an
expert. . . .chemist. . . .In such circumstances, if the
government does not supply funds, justice is denied
[to] the poor -- and represents but an upper-bracket
privilege." Id. at 572.

See also, National Advisory Commission on Criminal Justice

Standards and Goals, Courts 280 (1973); Reilly v. Berry, 250 N.Y.

456, 461 (1929) (Cardoza, J.); United States v. Sanchez, 912 F.2d

18, 22 (2d Cir. 1990).

Counsel in this case had the opportunity to seek the advise

of an expert in handwriting analysis, or, if defendant could not

pay for such services, he could have sought permission from the

Court to retain and consult with experts to evaluate the nature

of the handwriting, in which defendant herein claims should have

been evaluated. See, County Law, Section 722-C; Annot. Further,

interpreting the Sixth Amendment, it places an affirmative duty

upon the State to provide expert services to indigent defendants,

should counsel seek such services. (See, Lickey v. State, 827

F.2d 824 [Nev. 1992]).

Several courts have concluded that counsel was ineffective

for failure to consult and obtain the service of expert

witnesses. "The failure of defense counsel to seek such

assistance when the need is apparent, deprives an accused of

adequate representation in violation of his Sixth Amendment right

to counsel." See, United States v. Fessel, 531 F.2d 1275, 1279

(5th Cir. 1976); Proffitt v. United States, 582 F.2d 854, 857 (4th Cir. 1978), cert. denied, 447 U.S. 910 (1980); Accord, Wood v. Zahradnick, 578 F.2d 980, 982 (4th Cir. 1978).

It is axiomatic that expert testimony is admissible where it is helpful to the trier of fact, and "based on facts in the record or personally known to the witness...He cannot reach his conclusion by assuming material facts not supported by evidence." Cassano v. Hagstrom, 5 N.Y.2d 643, 646 (1959).

"[T]he guiding principle is that expert opinion is proper when it would help to clarify an issue calling for professional or technical knowledge, possessed by the expert and beyond the ken of the typical juror." Delong v. County of Erie, 60 N.Y.2d 296, 307 (1983); People v. Jones, 210 A.D.2d 904 (4th Dept. 1994), aff'd, 85 N.Y.2d 988 (1995); See also, People v. Cronin, 60 N.Y.2d 430, 432 (1983); Prince, Richardson on Evidence (11th ed.) Section 7-301. Here, there can be no question that experts in the filed of handwriting analysis would have helped the jury to distinguish between the defendant's handwriting and that of the evidence presented in the Prosecution's false case against the defendant. Such evidence presented and received for the jury's consideration, simply by relying on "interested" co-defendant's testimony, cannot suffice for that of an expert who could have exonerated the defendant.

"In a sense, opinion testimony of an expert witness necessarily enters upon the jury's province, since the expert ---

and not the jury -- draws conclusions from the facts, which the jury is then asked to adopt. Such testimony, however, is admissible where the conclusions to be drawn from the facts 'depend upon professional or scientific knowledge or skill not within the range of ordinary training or intelligence.'" Cronin, 60 N.Y.2d at 432.

Moreover, a claim of ineffective assistance of counsel may be found from defense counsel's failure to utilize, and subsequently call, an expert witness where "counsel's decision not to bring forth [that] witness[] was clearly prejudicial to [defendant] and not the result of well-advised defense strategy." People v. Fogg, 46 N.Y.2d 1021, 1023 (1979); People v. Miller, 144 A.D.2d 867 (3rd Dept. 1988); People v. Wilson, 133 A.D.2d 179 (2d Dept. 1987); accord Deluca v. Long, 858 F.Supp. 1330 (S.D.N.Y. 1994), aff'd, 77 F.3d 578 (2nd Cir. 1996), cert. denied, 117 S.Ct. 85 (1997); People v. Park, 229 A.D.2d 598 (2nd Dept. 1996).

In light of well established case decisions and laws, this Court must at least hold an evidentiary hearing to fully explore this issue. See e.g., U.S. v. Tarricone, 996 F.2d 1414, 1418-1420 (2nd Cir. 1993), wherein case was remanded for district court factual finding on issue of ineffective assistance, where counsel's failure to call a handwriting expert to dispute material linking defendant to the crime severely impaired defendant's case.

In this case, it was clearly "not the result of [counsel's] well-advised strategy" in his failure to call a handwriting expert to dispute the false testimony and evidence adduced by the People; rather, it was his ineffectiveness that "so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." Kimmelman v. Morrison, 477 U.S. 365, 374 (1986). In view of this, it is well settled that the defendant is entitled to a new trial, "a trial whose result is reliable." Strickland v. Washington, supra at 687.

## Conclusion

As a result of the Trial Judge's bias, partiality, prejudice, hostility, etc., she should not have presided over this matter. Her flagrant disregard for the integrity of the judiciary, by virtue of her unstemmed hostility toward defense counsel, comes to light when she attacked Mr. Giampa, and the victor of the "war of words" ended up constituting the trial of this matter. Further, due to the Judge's bias, etc., she held a prosecutorial view of this case, and thus rendered her decisions according to that agenda. Our Constitution requires that such a mendacious disregard for the judiciary not be allowed to permeate and disrupt the flow of trials. In this case, Justice Snyder has over stepped her boundaries, and this requires reversal of the defendant's conviction.

STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------X
                                           :
PEOPLE OF THE STATE OF NEW YORK,           :    SUPPLEMENTAL
                                           :    AFFIDAVIT IN SUPPORT
                                           :
     - against -                           :
                                           :
RAFAEL MARTINEZ                            : Ind. No. 12131/91
                                           :
          Defendant.                       :
                                           :
-------------------------------------------X

STATE OF NEW YORK)
COUNTY OF CLINTON)  ss.:
TOWN OF DANNEMORA)

     RAFAEL MARTINEZ, being duly sworn, deposes and says:

     1.  I am the Defendant in the above-entitled proceeding and make this supplemental affidavit in support of my motion pursuant to C.P.L. Section 440.10 (1) (b), (c), (d), (f), (g), (h), Section 440.20 (1) and the 6th Amendment to the U.S. Constitution to vacate the judgment of conviction, as referenced in my original moving papers dated November 4, 1999.  Further, this motion incorporates C.P.L. Section 440.30 (1), in that the sentence and conviction should both be set aside; thus this is an additional amendment to the C.P.L. Section 440 motion previously submitted.

     2.  This action was commenced in the County Court of New York County.  Commencement of this action began with the filing of a C.P.L. Section 440 motion and memorandum of law with exhibits, as well as poor person papers which requested the

appointment of counsel; as well as with a motion and affidavit in support, to recuse Justice Snyder from presiding over this matter.

3.   Said motions are presently pending, as the District Attorney has yet to respond to Defendant's moving papers.   By motion dated February 10, 2000, Defendant moved to preclude the District Attorney's Office from responding to Defendant's 440 motion as they failed to respond by the return date, and or to request an extension of time to respond.

4.   I am making this Supplemental affidavit in support of the attached Notice of Motion to supplement the 440 motion previously filed in this Court dated November 4, 1999.

5.   In my original moving papers dated November 4, 1999, I specifically moved this Court pursuant to C.P.L. Section 440.20 (1), however, I inadvertently did not raise an issue for this Court to set aside the sentence pursuant to C.P.L. Section 440.20 (1); as such, this Supplemental Affidavit is being made in Support of C.P.L. Section 440.20 (1).

6.   Because the People have yet to respond to my C.P.L. 440 motion, they cannot claim that they will suffer any prejudice by the filing of this supplement; as such, I would ask that this supplement be made part of the original C.P.L. Section 440 motion.   Additionally, the filing of this supplement in no way gives the D.A.'s office the opportunity to respond to the other issues raised in the 440 motion, as they have forfeited that

right as addressed in the preclusion motion dated February 10,
2000; but they are allowed to respond to this present supplement
motion and affidavit, so long as they do so by the return date.

7.   During the sentencing phase of this case, I stood before
Hon. Leslie Crocker Snyder, having been convicted by a jury of
the crimes of: Murder in the Second Degree, Attempted Murder in
the Second Degree, Conspiracy in the Second Degree, Criminal
Possession of a Controlled Substance in the First Degree (2
counts), Criminal Possession of a Controlled Substance in the
Third Degree, Criminal Sale of a Firearm in the Third Degree, and
Criminal Possession of a Weapon in the Third Degree.

8.   For the crimes in which I was convicted of, Justice
Snyder imposed a sentence of 213 Years to Life imprisonment; with
all convictions to be served consecutively.

9.   As thoroughly discussed throughout the pending C.P.L.
Section 440 motion, dated November 4, 1999, Justice Snyder was
not even amicable in presiding over the trial of this matter due
to her hostile feelings and actions towards Defendant's attorney,
Mr. Giampa; as well as the defense's case in totality.  It would
therefore stand to reason, that Justice Snyder was not able to
render a fair sentence, due to her pent up anger and hostility
that emanated throughout the course of these proceedings.

10.   Such an extreme prison term without the chance of
Parole, makes manifest the trial court's abuse of discretion by
venting out its personal pique against the defendant in this

matter.  A clear view of the sentencing minutes establishes that the defendant who hired his own attorney, received the most prison time.  Where as the defendants who had an attorney, appointed by Justice Snyder, received far less time for their involvement in this case.

11.  It is transparent that Justice Snyder's "end result" was to "remove [the defendant] indefinitely from society".  That end result was met when Justice Snyder imposed a harsh and excessive sentence of 213 years to Life, without the possibility of any Parole.

12.  It is a general rule that questions of sentence are committed to the sound discretion of the sentencing court.  See, People v. Frazier, 86 A.D.2d 557 (1st Dept. 1982); People v. Ferrar, 74 A.D.2d 547 (1st Dept. 1980), modified, 52 N.Y.2d 302 (1981); See also, People v. Mendez, 75 A.D.2d 400 (1st Dept. 1980); People v. Junco, 43 A.D.2d 266 (1st Dept.), aff'd, 35 N.Y.2d 419 (1979).

13.  This issue has not been preserved in this Court, as Mr. Giampa failed to object to Justice Snyder's imposition of consecutive sentences; thus this is the proper remedy for this Court to decide on the matter addressed herein; as well as those matters raised in the moving papers of November 4, 1999.

14.  As already discussed in the 440 motion filed in this Court, dated November 4, 1999, the defendant has established severe prejudice on Hon. Snyder's behalf, as well as a lack of

representation by the defense team, due to their hourly enhanced compensation.  Further, even Justice Snyder and the District Attorney, repeatedly stipulated that defendant's attorney, Mr. Giampa, was not fit to practice law.  If the defendant cannot even be represented by an attorney, during the trial of this matter, as a competent attorney, how then can the same attorney effectively advocate his client during the sentencing phase, and before the exact same judge who battled back and forth with this attorney?

15.   Justice Snyder, in addition to her hostile feelings toward the defendant's attorney, sentenced the defendant in accordance to the A.D.A.'s contentions, in that the A.D.A. stated that:

a)   Appellant committed crimes that were callous and brutal;

b)   From 1989 to October 1991, Appellant headed a gang that grossed about $25,000 a day from the sale of cocaine;

c)   On August 29, 1990, Appellant and Isidoro Medina shot Rafael Espinal in retaliation for his participation in a robbery at one of the gang members' apartment;

d)   On October 29, 1990, Appellant and Lorenzo Martinez and Isidoro Medina shot Chino in retaliation for a robbery in which Chino supposedly shot Appellant; and

e)   Appellant rewarded his associates and clients who had been arrested, by providing them with legal representation and posting bail on their behalf.

16.  As stated throughout Point IV of the 440 motion, dated November 4, 1999, the aforementioned A.D.A.'s contentions are

neither enough to justify, nor enough to convince the sentencing judge to sentence the defendant to such an inhumane sentence. Further, the defendant did not pay for any of his co-defendant's legal fees; as they paid for their own. See, Tr. pgs 7,053 and 8,924). Further, the District Attorney's contentions do not prove that the defendant is guilty of the crimes for which he has been convicted. See, Point IV of the C.P.L. Section 440 motion dated November 4, 1999; which proves beyond a reasonable doubt and with extraordinary proof; that the defendant is not guilty of the crimes for which he has been convicted upon. A clear showing of the defendant's lack of guilt has been demonstrated and offered through the C.P.L. 440 motion, and this Court should avail itself of the legal avenues to which the defendant is entitled to relief; as the sentencing judge abused its' discretion when it sentenced this young man to 213 years to life imprisonment without the possibility of any parole.

17. Before, as well as during the trial, Justice Snyder's bias and hostility toward the defendant's attorney, as well as toward the defenses' case, was clearly transparent. (See, Points II and III of the C.P.L. Section 440 motion. Also see, Tr. pg. 8,606). Nevertheless, the defendant kept his emotions under control; hoping and trusting that justice will ultimately prevail.

18. Even after the Prosecution delivered its' harsh accusations during the sentencing phase, the time arrived for the

defendant to address the Court on his behalf.  At that moment, the defendant, calmly and respectfully, addressed the Court and begged her for her consideration and leniency in sentencing him. Nevertheless, the judge put blindfolds over the defendant's plea of leniency, and was totally mindful of the ongoing dispute that permeated the trial of this matter and that was carried over into the sentencing phase of this case.

19.  As the sentencing minutes reveal, Justice Snyder and the defendant's attorney, Mr. Giampa, once again engaged in a verbal war, as Justice Snyder tried to "rush" Mr. Giampa while he was trying to advocate and plead for a lenient sentence for his client.  It is quite obvious that Justice Snyder was totally mindful of Mr. Giampa's behavior and conduct during the course of the trial of this matter, and she therefore rendered a sentence in accordance with Mr. Giampa's behavior and conduct as exhibited throughout the course of this case, and therefore sentenced the defendant to the **maximum** period of incarceration allowed under the law on **each and every count** of the indictment upon which he was convicted.  (It should be noted that the jury found the defendant guilty of every count that was submitted to it for its review.)  By sentencing the defendant, she lashed out against him, in essence punishing him for his lawyer's behavior and conduct, and sentenced him to an inhumane prison term of 213 years to Life.  To Justice Snyder her "end result" was met!!

20.   Such vindictiveness and retaliation by a trial justice cannot be condoned.   Even despite the harsh and excessive sentence bestowed upon the defendant by the trial justice, the defendant remained calm and collective; remaining hopeful that justice will ultimately prevail in this case.

21.   It should be noted that the defendant was offered a plea of probation off the record in exchange for his testimony against his co-defendants; once declined, a plea of 12 1/2 to 25 years imprisonment for the crimes that he was indicted, and subsequently convicted on, just so the case didn't have to go to trial; as well as similar plea offers, but never a plea with life on the end.   The failure of counsel to pass along his wisdom regarding such favorable plea offers was clearly constitutionally ineffective.   See, e.g., Boria v. Keane, 99 F.3d 492 (2nd Cir. 1996).

22.   The defendant, without the benefit of his lawyer's wisdom, refused all plea offers and proceeded to trial as he wanted to prove his innocence.   It has long been held that a defendant should not be punished because he exercises his right to trial. (See e.g., People v. Narvaez, 72 A.D.2d 502 [1st Dept. 1979]; also see, U.S. v. Carter, 804 F.2d 508; U.S. v. Seminole, 882 F.2d 441).   It is obvious that his 213 years to life imprisonment was an abuse of discretion, due to the defendant exercising his right to a jury trial, as well as punishing the

defendant for his lawyer's behavior and conduct during the course of this matter.

23.  Such reciprocity by the trial justice, due to her "end result" is clearly an abuse of discretion. (See e.g., U.S. v. Carter, supra)  If the District Attorney was willing to accept a plea of guilty, without no life sentence at the end of the plea offer, it would stand to reason that any sentence with life on the end would be deemed an abuse of discretion.  Further, a 213 year prison term, is by itself a death sentence.  The defendant was sentenced to such a mendacious prison term, due to the trial justice's bias and outrage over the defendant's attorney's conduct and behavior during the course of this matter, as well as for the fact that defendant proceeded to trial to establish his innocence.  It should be pointed out that this trial lasted over 5 months and cost the county over 2 million dollars to bring this case to justice Snyder's "end result".

24.  Clearly, such factors and such vindictiveness in sentencing the defendant should not have been considered; but it is all too clear from the record that such was done in this case. As such, the defendant's sentence must be vacated; especially in light of the defendant's innocence as established throughout the C.P.L. Section 440 motion.

25.  In People v. Smalls, 115 A.D.2d 783 (2nd Dept. 1985), the dissenting justices stated "Where a defendant is sentenced for the commission of different offenses and an act constituting

one of the offenses is not a material element of the other, courts in their discretion may impose consecutive sentences (People v. Doyle, 119 Misc.2d 1)."

26. When the defendant was indicted on Conspiracy, with 72 overtacts listed therein (and the overtacts were also listed in the indictment as separate counts), the Prosecution locked themselves into the Conspiracy, which was prosecuted to the fullest as bearing an element to prove the remainder of the counts of the indictment (albeit, the overtacts of the conspiracy).

27. When the defendant was found guilty of the Conspiracy count (due to his alleged role in the overtacts in which he was charged), and then found guilty of those overtacts as listed as separate counts in the indictment, the sentence thus imposed should have run concurrently and not consecutively, as the crimes were different offenses; yet one act constituted a material element of the other. As such, the Court erred in sentencing the defendant to consecutive terms of imprisonment, as the law requires the defendant to have been sentenced to concurrent terms of incarceration. Moreover, it has been repeatedly noted that consecutive prison terms, while perhaps otherwise technically permitted, are not warranted in the absence of special circumstances evincing a special depravity. See, e.g., People v. Wimberly, 145 A.D.2d 823 (3d Dept. 1988); People v. Scandell, 143 A.D.2d 423 (2d Dept. 1988); People v. Cheung, 141 A.D.2d 556 (2d

Dept. 1988).  In this case, no such factor exists and this Court has the authority to set aside the sentence and conviction in the interests of justice, as good cause has been shown.

28.  The defendant was not sentenced as a persistent violent offender, and as such, his sentence should be modified to concurrent terms of imprisonment.  See, e.g., People v. Wilkes, 132 A.D.2d 982 (4th Dept. 1987).

29.  The mandates of our Constitution require that the sole aim of our judicial system be for justice to triumph, and for outside pressures and influences, or personal end results, to be avoided at all costs.  For a trial justice to embark on a personal agenda, and then punish a defendant for his lawyer's behavior and conduct, is exactly what our laws forbid, and no man should remain in prison without a verdict and sentence that can be relied upon in upholding the true scales of justice.  In this case, the verdict and the sentence imposed upon the defendant, warrant that the conviction and sentence be set aside, or in the alternative, the sentence drastically modified in accordance with statutory mandates and in measure with the true scales of justice; such convictions being run as concurrent terms of imprisonment.

WHEREFORE, Defendant, Rafael Martinez, respectfully prays that an order of this Court be made granting this instant motion to supplement his C.P.L. Section 440 motion previously filed in this Court and dated November 4, 1999 and for the relief sought throughout this motion and the C.P.L. Section 440 motion to be granted, and for such further relief as this Court deems just, proper and equitable.

Respectfully submitted,

Rafael Martinez
Defendant, Pro Se

Sworn to before me this
29 day of _____, 2000.

NOTARY PUBLIC
WILLIAM B. REFF
Notary Public, State of New York
Registration No. 4969907
Qualified in Clinton County
Commission Expires July 30, ___

Page 12

EXHIBIT 5: Affidavits

## AFFIDAVIT OF EDWIN MATOS

I, EDWIN MATOS, hereby state that the following statements are true, and I so state under the penalty of providing false written statements.

1. I, Edwin Matos, was a co-defendant referenced in indictment number 12131/91, and as such, I am familiar with my testimony elicited in this case, as well as with the circumstances surrounding the convictions and sentences of the defendants involved in this matter.

2. I make these statements, not being coerced or pressured, and without being under the control of any drugs that would inhibit the truth of my statements stated herein.

3. My testimony in this case was is exchange for the promised sentence that I ultimately received by the District Attorney; although my testimony was not based on any factual knowledge.

4. The District Attorney threatened and coerced me into testifying against the five defendants in this matter. I was threatened that if I did not testify according to what the District Attorney stated, then I would receive a maximum sentence of 25 years to Life.

5. My false testimony was based on alleged conversations with the Martinez brothers--which allegedly involved them telling me that they committed criminal activity. This criminal activity allegedly involved the murder of Jose Jiminez, A.K.A. "Chino"; as well as the attempted murder of Rafael Espinal.

6. I was never told by the Martinez brothers, and I never heard any conversations that referred to the above mentioned crimes. The deal offered to me by the District Attorney was to specifically testify falsely to these matters, which I have, nor ever had any knowledge of. As a direct result of my reluctance to testify to these matters, I was threatened by the District Attorney to receive the maximum sentence on the charges I was indicted on; which I subsequently accepted a plea bargain for, in exchange for such testimony.

7. I was also threatened to testify falsely by stating that Rafael Martinez was involved in the criminal activity which I pled guilty to.

8. At no time did I ever witness the Martinez brothers involved in any criminal activity, except Julian and Daniel Martinez, who also pled guilty along with me. Furthermore, there was never any organized gang activity, as that alleged by the District Attorney.

9. Rafael Martinez was not involved in any criminal

conduct, and least of all, he was not a gang leader--to the best of my knowledge.

10.   I have not come forward sooner, as I have repeatedly been intimidated by law enforcement officials and the District Attorney.   It is my obligation to inform the Court of the gross misconduct employed by these agencies who have threatened and coerced me into testifying falsely against the defendants in this matter.   As such, to preserve the integrity of the judicial system, I am submitting this sworn affidavit for its truth.

Submitted,

Edwin Matos

Sworn to me before this
28th day of July , 1999

NOTARY PUBLIC

VETA I. BROME
Notary Public, State of New York
No. 41-4894900
Qualified in Queens County
Comm. Expires Nov. 23, 19 99

# AFFIDAVIT

I, DANIEL N. ARSHACK,  an attorney duly admitted to practice law in this state, do hereby state that the following is true to the best of my information and belief:

1) In 1991, I was retained to represent Mr. Rafael Martinez in indictment No. 12131/91.

2) My representation of Mr. Martinez continued until the beginning of the pre-trial hearings when I was informed by Mr. Martinez that he had retained Mr. Richard Giampa, as  new counsel, to represent him through trial.

3) Prior to being informed that Mr. Giampa was being hired to replace me, I did not know Mr. Giampa and had, in fact, never heard of him.

4) I did not participate in anyway in the selection of Mr. Giampa as Mr. Martinez's new attorney. I was not consulted by Mr. Martinez prior to the selection and was, at the time, completely uninformed concerning Mr. Giampa's abilities and so, could not have offered and did not offer any insight into the appropriateness of Mr. Giampa as trial counsel.

Daniel N. Arshack, Esq.
124 West 109th Street
New York, New York 10025


Ss: Bronx, New York

On this the 27ʰ day of April, 1999, did come Dan Arshack known to me and subscribed his name hereto.

notary

DAVID L. FEIGE
Notary Public State of New York
No. 02FE5088416
Qualified in New York County
Commission Expires 11/17/ᵧₓ

**Daniel N. Arshack, Esq.**
124 W. 109th Street
New York, New York 10025
212-666-2768

April 27, 1999

Rafael Martinez,  #93-A-2773
Clinton Correctional Facility
1074 Cook Street., Box 2001-APPU
Dannemora, New York 12929

Dear Mr. Martinez:

      Thank you for your recent correspondence. As you can see I have prepared the affidavit you requested.

      I am sorry that your trial went as poorly as it did. I recently noted as well that the issues raised on appeal  in your case were not successful. In the clear light of hindsight, the plea bargain I negotiated for you does seem quite attractive.

      I am sure your appellate counsel fully reviewed the issues to be raised with you and made competent decisions about what issues to raise. You will recall that I was involved for only a part of the pre-trial suppression hearings. The only point that I remember, which was not addressed in the appeal, had to do with Judge Snyder's denials of the right to examine certain witnesses  during the hearing. I seem to recall there was an issue of going forward with hearings without you being present as well. So much time has passed my recollection of these issues is a little foggy but I am sure that a review of the transcript from the hearings will bring these issues to light.

Sincerely,

Daniel N. Arshack
Attorney-at-Law

**RICHARD L. GIAMPÁ**
ATTORNEY AT LAW
CONCOURSE PLAZA
220 E. 161st STREET
BRONX, NEW YORK 10451

BRONX
TEL: (718) 538-8600
FAX: (718) 538-0330

WESTCHESTER
TEL: (914) 739-9653
FAX: (914) 739-9634

May 3, 1999

Clinton Correctional Facility
1074 Cook St., Box 2001-APPU
Dannemora, New York 12929

*Attn.:*  *Rafael Martinez*
          *Inmate #: 93-A-2733*

Dear Mr. Martinez:

I am in receipt of your letter dated April 7, 1999.  Because of the extended lapse of time since the trial, it is impossible to answer your questions without protracted reviews of your trial transcripts and case file.

Regretfully, I am unable to provide you with services pro bono.

However, I can state to you that it was never my intention or strategy to engage the court in contentious colloquy.

In my humble opinion, the court initiated, without just cause, every disturbing insulting and incriminating statement of my professional conduct, abilities and character. I can only speculate that it was the result of an attempt to discredit the defense.

I wish you the best of luck in your efforts to reverse the trial verdict.

Very truly yours,

Richard L. Giampa

RLG:lp

AFFIDAVIT

I, JORDAN PRATT, being duly sworn, deposes and states:

1)    I make this affidavit without any outside influences or pressures.   Further, I am not under any medication or taking any drugs, that would impair my ability to comprehend what I am stating herein.

2)   In 1991, I was indicted along with numerous other co-defendants in indictment number 12131/91 and subsequently arrested.

3)    In exchange for my testimony against the 5 defendants who were ultimately tried on said indictment number, I was given a lenient sentence.

4)    Due to my overwhelming guilt in reference to the above indictment number, I felt  that it was in my best liberty interest, to agree with the District Attorney's strategic tactics employed in this case, to convict the 5 defendants who were tried on this indictment number.

5)    Although I testified under oath against the 5 defendants, such testimony was altered and created to support the District Attorneys case against  the defendants in this action.  In other words, I testified falsely in many regards.

6)  In no way did any of the defendants ever influence my decisions to engage in what is alleged in the indictment referenced above.  Furthermore, I am making this affidavit of my own accord, without the influence or pressures of any one.

7)    My testimony was elicited through pressure and threats by the District Attorney and his personnel, as well as various Law enforcement Officials.

8)   I falsely testified at the trial of this matter, by pressure  (as stated above), in the following regards:

A)   I testified falsely that Rafael Martinez, Lorenzo Martinez and Isidoro Medina were in the vicinity of the alleged murder of one Jose Jiminez, a.k.a. "Chino", which allegedly took place in Bronx County.

1)   I testified to this in exchange for my lenient sentence and because it was instrumental in convicting these 3 defendants on that charge.  Also, the District Attorney stated that such testimony had to be convincing to the jury, although such testimony was not

factual.  If I did not testify to this, I was threatened with the maximum sentence allowed under the law.

B)  I testified falsely  that Rafael Martinez was involved, on or about August 1 and 16 1991, in a drug sale and in possession of a 9mm pistol.  I further testified that Rafael Martinez had sold this weapon to an under cover police officer.

1)  This testimony was, again, in exchange for my lenient sentence that I received in this matter.  The incident revolving around the possession and sale of the 9mm pistol and the drug sale, solely involved those who pled guilty to those charges, including Julian and Daniel Martinez.  Rafael Martinez was not involved in these activities.  It is worthy to note that Rafael and his two brothers, Julian and Daniel, resemble one another in appearance; thus it would be easy to confuse one from the other if someone is not familiar with them.

2)  During my numerous visits to the District Attorney's office, I was instructed by the District Attorney, that in order for my plea to be honored, I had to specifically emphasize, through my testimony, that Rafael Martinez was involved in this activities, giving the impression that he was the ring leader in this so-called gang.  However, such testimony was not factual.

C)  It has been alleged by the District Attorney and Law Enforcement Personnel, that the Martinez brothers and the co-defendants referenced in the indictment in this matter, were acting as a criminal organization; commonly referred to as the "Jerry Curl" gang.  I pled guilty to the drug sale and possession and sale of a 9mm pistol, in exchange for my lenient sentence and testimony against the defendants in this matter.  However, such testimony was false and I nor the defendants in this matter ever engaged in a criminal organization, as alleged by the District Attorney and Law Enforcement personnel.  My guilt stemmed from activity involving those who pled guilty, but not as part of a criminal organization.  Rafael Martinez was not a part of this criminal activity which I pled guilty to and testified under oath about.  Further, to the best of my knowledge, Rafael Martinez was not involved in any gang related activity, or evenmoreso, any criminal activity.

9)  These are just some factual issues which need to be brought to light.  At the time of trial, I was threatened to receive a 6 to Life cop-out or the maximum sentence allowed under the law, if I proceeded to trial.  Instead of risking such a sentence, I agreed to testify falsely, as the District Attorney informed me.

10)   In the interest of justice, I feel it is my duty to bring these issues before the Court for its determination.

I state under the penalty of perjury that what is stated herein is factually correct, so help me God.

Respectfully Submitted,

Jordan Pratt

Sworn to Before me This
28 day of July , 1999

NOTARY

YRISNEYDA VARGAS
Notary Public, State of New York
No. 31-4986482
Qualified in New York County
Commission Expires September 16, 19 99

EXHIBIT 6: Reply to People's Opposition

STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------X
                                         :
PEOPLE OF THE STATE OF NEW YORK,         :   AFFIDAVIT IN REPLY
                                         :
                                         :
      - against -                        :
                                         :
RAFAEL MARTINEZ                          :   Ind. No. 12131/91
                                         :
           Defendant.                    :
                                         :
----------------------------------------X

STATE OF NEW YORK)
COUNTY OF CLINTON)   ss.:
TOWN OF DANNEMORA)

      RAFAEL MARTINEZ, being duly sworn, deposes and says:

      1.  I am the Defendant in the above-entitled proceeding and

am fully familiar with the facts and circumstances of my case.

For the sake of convenience, I would respectfully ask this Court

to accept this affidavit as my affidavit in reply and as my legal

arguments in reply to the D.A.'s papers.

      2.  I am submitting this affidavit in reply to the District

Attorney's Opposition motions, dated January 10, 2000 and March

7, 2000.  It should be noted that **both** replies were received by

the defendant on March 9, 2000.  (See, Exhibit "1")

      3.  It should be noted that the District Attorney predated

their Opposition motion of January 10, 2000 and served the

defendant on March 7, 2000.  (See, Exhibit "1")  The D.A. has

done this due to the fact that they never requested an extension

Page 1

of time to respond to defendant's 440 motion, nor have they filed a response within the statutory time frame.

4.   On February 10, 2000, the Defendant filed a preclusion motion, to prevent the D.A. from responding to the defendant's 440 motion.   It is submitted that the D.A.'s office "threw" a response together with respect to their Opposition to defendant's 440 motion, because they knew that the preclusion motion was filed and they would be prevented from filing a response.

5.   The D.A.'s tactic of predating motions (2 months earlier than when they actually filed and served the document on the defendant), cannot be condoned by this Court.   In the event that this Court accepts the D.A.'s misleading tactics, then please accept this response to the D.A.'s Opposition motions.

## RESPONSE TO 440.10 MOTION

6.   In response to the D.A.'s assertion that the "defendant is not entitled to have counsel appointed for the purpose of" his 440 motion, it is submitted that this Court has wide discretion, pursuant to statute, to appoint counsel.   The Court has complete discretion to appoint an attorney for an indigent defendant, see, County Law Section 718, and "County Law Section 722...was enacted to enable the court to more efficiently exercise it's inherent power to assign counsel to indigents, and not as a limitation on that authority [citation omitted]." (People v. Richardson, 159 Misc.2d 167, 171-2 [Supreme Court, Kings County, 1993]).

7.   In People v. Dearstyne, in which defendant's denial of his C.P.L. Section 440 motion is presently under appeal by permission to the Third Department, Rensselaer County Court Justice, Patrick McGrath, appointed counsel to the defendant in that action before a hearing was granted. (See, Ind. # C-8138: 722-C Decision & Order, dated September 18,, 1998)  In fact, County Court never held a hearing, yet Hon. McGrath utilized his discretion and appointed counsel.  It is upon this Court's discretion that this Court appoint the defendant an attorney for the purpose of this action.

8.   The People contend that "there is nothing under New York State case law to indicate that the standard in New York is any different than the Federal Constitution standard...".  (D.A.'s opposition at page 4).  It should be noted, as above, that the D.A.'s contentions are erroneous, as County Law was enacted to specifically authorize this Court to utilize it's discretion when appointing an attorney.

9.    Further, counsel is needed to contact the missing witness in this case, as this missing witness could have identified the killer of "Chino" and exonerated the defendant; as noted in the defendant's 440 motion.  Further, counsel is needed to assist with an expert in handwriting analysis, to once again, exonerate the defendant.

10.   In response to the D.A.'s contention that "Defendant was not denied his right to effective assistance of counsel at

his trial", it should first be noted that throughout the trial of this matter, the D.A. continually stated that the defendant's attorney was not fit to practice law. How can they now change their position? It is absurd and just the type of response that would flow from such a judicial malefactor, so as to uphold their conviction of the defendant in direct contradiction of their position during the trial of this matter.

11. The D.A. claims that the issue of ineffectiveness of counsel was litigated on appeal; however, the appellate court specifically stated that the defendant's claims were not amplified by way of a C.P.L. Section 440 motion; thus this aspect of defendant's 440 motion is properly before this Court, as this issue was not essentially litigated on direct appeal as contended by the District Attorney. In their response brief on direct appeal, the People contended that certain issues were not preserved for review; thus for the People to now state that this motion is not properly before this Court, will be to contradict their assertions in their response brief, as well as to persuade this Court from the real issues at hand. Such actions by this District Attorney, who has predated their response motion of January 10, 2000, goes against the very core of his oath...that he uphold the law while at the same time, abiding by the law.

12. With regard to the D.A.'s argument, it should be noted that the D.A.'s contentions are formulated from a lack of reading the defendant's 440 motion, as well as "throwing" together a

response to give the appearance of timely filing their
opposition, due to the defendant's filing of a preclusion motion
dated February 10, 2000. Their arguments are also construed from
a lack of knowledge of this case, as well as a lack of utilizing
applicable law regarding defendant's meritorious issues.

13. It is quite apparent that the issues in which the
defendant raised in his 440 motion are different from that of his
direct appeal. There are many distinctions between the
defendant's direct appeal and this current motion. Moreover, the
defendant argued in-depth the ineffectiveness of his counsel on
this present motion to vacate the judgment. The issue of
insufficient evidence has never been attacked on direct appeal,
as the Appellate Division denied the defendant the opportunity to
file a supplemental brief in support of his direct appeal. (See,
Exhibit "2)  Further, the defendant has submitted documentary
evidence to support his 440 motion, and the D.A. has offered this
Court no documentary proof to the contrary.

14. The law and statutes are clear that when essential
facts are conceded "or are conclusively substantiated by
unquestionable documentary proof" the Court must grant a C.P.L.
Section 440 motion. In this case, the District Attorney has
failed to respond to many aspects of the defendant's 440 motion,
(note that the issues that the D.A. did respond to, they lied and
distorted and twisted all the facts around) and they further
failed to submit any documentary evidence to contradict the

issues presented in the defendant's motion. While neither outright conceding the truth of the defendant's issues, nor responding to them, the D.A.'s failure to respond is clearly an admission as to their truth. This alone warrants relief on the issues presented and argued. See, People v. Baxley, 84 N.Y.2d 208 (1994); also see, People v. Wright, 86 N.Y.2d 591 (1995); People v. Van Wie, 238 A.D.2d 876 (4th Dept. 1997).

14.    In this instant case, the defendant submitted affidavits and documentary proof; therefore meeting the requirement that the allegations were not made "solely by the defendant". See, Baxley, at 214. Clearly the D.A. has not met the burden enunciated in the statutes governing this proceeding. (C.P.L. Section 440.30).

15.    Since the People have neither directly contested the truth of defendant's allegations, nor have they submitted any documentary proof regarding those issues, the defendant is, at a minimum, entitled to a hearing on those issues pursuant to C.P.L. Section 440.30(5) and considered for relief under C.P.L. Section 440.30(3).

16.    Ineffective assistance of counsel can usually be determined only after an evidentiary exploration under a motion to vacate the conviction, and rarely can such a claim of ineffective assistance be resolved on direct appeal; thus, rejection on direct appeal of a claim of ineffective assistance of counsel, grounded on matters not appearing on the record,

should not prevent consideration on merits of a later motion to vacate on similar grounds, even more when the statutory requirements are satisfied as they are in this instant case. See, C.P.L. Section 440.10, subdivision 1(h), 440.30 subdivision i, 5; U.S.C.A. Const. Amend. 6. Also See, People v. Welch, 108 A.D.2d 1020; People v. Brown, 45 N.Y.2d 852, 853-854; People v. Boans, 93 A.D.2d 1000.

17.   In People v. Williams, 140 A.D.2d 969, after the defendant appealed his conviction and having been denied by the A.D, 4th Department, the Supreme Court Justice held that defendant's proper remedy to address ineffective assistance of counsel was not on direct appeal on insufficient record, but rather a post judgment motion to vacate the judgment pursuant to C.P.L. 440. Also see, People v. Burton, 120 A.D.2d 967.

18.   Nevertheless, the record, unlike as in most "ineffective counsel" cases, demonstrates beyond cavil that defendant was lacking counsel throughout the prosecution against him. Defense counsel failed to protect the interest of his client. Despite the overwhelming evidence presented in this case, albeit not pointing to the defendant, the defendant was denied the right to a fair trial. See People v. Brown, 45 N.Y.2d 852, People v. Bennett, 29 N.Y.2d 462. Generally, the ineffectiveness of counsel is not demonstrated on the main record, but in this case it is. However, it is much better that an appellant's attack on effectiveness of counsel be bottomed on

an evidentiary exploration by post conviction proceeding brought under C.P.L. Section 440.  See, People v. Brown, 28 N.Y.2d 282, 286-87.

19.  It should be noted that defendant's attorney, Mr. Giampa, failed to give meaningful representation to the defendant, as he made no efforts whatsoever to avoid the creation of a circus-like atmosphere that took the front seat of the entire trial proceedings, and he thereby denied the defendant any sembiance of a fair trial guaranteed to every defendant accused under our system of justice.  See, Defendant's 440 motion at page 69-70.  Defense counsel by behaving so, distracted the jury from the real issues of the guilt or innocence of the defendant.

20.  Also, defendant's trial counsel failed to disclose to the defendant that the co-defendants' attorneys were receiving hourly enhanced compensation.  This fact denied the defendant the effective assistance of counsel, as the defendant could have sought to retain alternate counsel or he could have sought for severance.  The joinder effect denied the defendant a fundamentally and constitutionally fair trial because the state court's control over the defense attorneys, hampered any probability for them to become zealous advocated 'for their clients.  Their clear ineffectiveness affected the defendant's defense.

21.  By way of examples, none of the 18-B attorneys made any efforts whatsoever to contact the only witness who knows Jose

Jiminez's killer.  Further, none of the 18-B attorneys objected to the open hostility between the trial justice and the defendant's counsel that emanated the lower court's proceedings. On the other hand, they stood silent and allowed the hostility to persist in order to please the one whom awarded them enhanced compensation.  (See, 440 motion at page 110).  Consequently, trial counsel failed by not seeking severance, vigorously and appropriately.  His lack of demanding severance denied the defendant his right to effective representation.  (See, Point II of 440 motion).

22.  Additionally, defense counsel failed to hold side-bar conferences without the defendant being present.  Also, Justice Snyder violated the defendant's right by virtue of not allowing the defendant to be present at material stages of the proceedings, when the defendant's presence at the side-bar would have been essential and material and his absence affected his ability to defend himself.  See, 440.10 .motion at 105-106.  For instance, in a side-bar conference, Justice Snyder admitted that she was deeply concerned about Mr. Giampa's ability to practice law properly in a court of law.  (T. 3693-94).  Also, the matter about the only witness who knew Jose Jiminez's killer was discussed at a side-bar conference without the defendant being present. (T. 4917-4926)  All of this was not known to the defendant until the preparation of this 440 application.  The defendant's attorney failed to inform the defendant of the sum

and substance of the side-bar conferences, therefore impairing the defense of this matter, as the defendant could have suggested and given his attorney information concerning these things, and he could have sought alternate counsel. His attorney's failure in this regard, and the trial justice's bias of not informing the defendant of her concerns with his attorney's ability to practice law, severely jeopardized the defendant's right to counsel and to a fair trial.

23.  Defense counsel was rendered ineffective when he advise the defendant to not take the stand in his own offense. Further, the co-defendants' attorneys informed their clients that it was not in their best interest to take the stand, regardless of the defendants' desires to do so. (See, 440.10 motion at page 116-119). See, People v. Smith, 237 A.D.2d 388 (2nd Dept. 1997), which held that defense counsel's lack of preparation and his failure to understand the applicable law, communicate with the defendant, investigate the facts of the case, and "prepare the defendant to testify", demonstrated ineffectiveness. Also see, People v. Daley, 172 A.D.2d 619 (2nd Dept. 1991). See, People v. Reed, 152 A.D.2d 481 (1st Dept. 1989) [case remitted for inter alia, failure of defense counsel to investigate five witnesses that would have exonerated defendant].

24.  Also, trial counsel failed to call an expert witness to evaluate the defendant's handwriting, to compare his to that of the note and other evidence introduced by the People during their

direct case. It should be noted that all drug charges against the defendant are based on constructive possession and the alleged defendant's handwriting is the only physical evidence tending to link the defendant to the commission of the crimes charged. See, 440.10 motion at page 167. Also, Mr. Giampa failed to show contradictions with regard to the witnesses' testimonies during the cross-examination of them, as well as during the summation; which the defendant has shown by his submissions, via his 440 exhibits, etc. (See, Points II and IV of 440 motion).

25. Trial counsel also failed to correct the false testimony, in which the prosecution brought out during the pendency of this case. See, 440.10 at 162-170. Also see, People v. Pelchat, 62 N.Y.2d 97; People v. Robertson, 12 N.Y.2d 355; People v. Savvides, 1 N.Y.2d 554; People v. Creasy, 236 N.Y.2d 205; Napue v. Illinois, 360 U.S. 264; and Alcorta v. Texas, 355 U.S. 28.

26. Finally, the prosecutorial misconduct, consisting of failing to correct false testimony and evidence, which effected the verdict of the jury, had an adverse effect on the outcome of the trial verdict. Such failure by the trial counsel to protect his client from such reprisals, as well as such conduct by the D.A., whose duty is not to just seek convictions, but to make sure that justice is done, is exactly what our laws forbid. See, 440.10 motion at 161-175, and Point IV at 218-220.

27.   Justice Snyder, without any reservations, admitted on the record that she was having problems giving the defendant a fair trial. (T. 4345, 440.10 at 142). She also stated that Mr. Giampa was "rude and insolent, as well as ignorant of the rules of evidence and how to conduct (himself) in the courtroom." (T. 3330, 440.10 motion at 104). In fact, several times the trial court, altogether exasperated, accused defense counsel of being "incompetent". At one point, Justice Snyder simply declared: "You don't get it do you, Mr. Giampa? You don't understand the rules of evidence. You don't understand police reports." (T. 1996). Further, Justice Snyder said that the chemist involved in the trial was the most unpleasant and most unprofessional experience that she has ever dealt with in all the years as a judge. (T. 4634-36, also, 440.10 at 126). Additionally, Justice Snyder stated that she has never heard a summation that so distorted the point of view and took such an incredibly distorted and paranoid view of what occurred here during Mr. Giampa's summation. (T. 11,239)

28.   The District Attorney later agreed with Justice Snyder as to Mr. Giampa's legal abilities; stating on one occasion that Mr. Giampa apparently doesn't know how to properly cross-examine witnesses and doesn't even know how to set up the proper foundation, evidentiary foundation for any of the documents that came in to the trial proceedings. (T. 5564, 11241). At another point, the prosecutor even stated that Mr. Giampa was one of the

most unprepared attorneys that he had seen in many, many years, and that he was simply "unprepared". (T. 10,207-28). The D.A. later stated that Mr. Giampa had not done a lick of work on this case and that the defendant would have been better served by another attorney. (T. 11,241)

29.   In an extraordinary exchange, Justice Snyder agreed with the above noted scenarios of the prosecutor. Indeed, Justice Snyder described Mr. Giampa as being lazy and unable to complete his work for trial on time. (T. 10,207-10, 10,722, 11,242). See, 440.10 motion, Point II at 119-121, and Point III.

30.   The failure of defense counsel to prepare adequately for this long and complex trial, was, in and of itself, tantamount to a deprivation of the effective assistance of counsel. When viewed in the light of the patently improper conduct, which so prejudiced the defense of this matter, it cannot now reasonably be said that all of these failures were a strategic tactic and thus the judgment of conviction should not be allowed to stand; especially in light of Justice Snyder's insight into Mr. Giampa's incompetence, as well as his need for psychiatric help (T. 3693-74; also see. T. 11,239), and his disgrace to the legal profession. (T. 9675, and 440.10 - Point II).

31.   The few above-mentioned events are just a brief portrait of the daily scene that took center stage of these proceedings. It cannot be said that such actions, especially by

a trial justice, were the result of any ensuing trial strategy. Further, as Exhibit "G" so adequately states, "...it was never (Mr. Giampa's) intention or strategy to engage the court in contentious colloquy", as that which so permeated the trial of this matter.  Diametrically, Mr. Giampa failed to exercise professional skills and to perform diligently, in acting as a competent counsel would and must under such similar circumstances.  See, Williams v. D.C. Iowa, 528 F.Supp. 62, 665 F.2d 212 (1981).  U.S. v. Winkle, 722 F.2d 605 (1983).  Also See, People v. DeJesus, 42 N.Y.2d 519; People v. Mendez, 3 N.Y.2d 120; People v. Carter, 40 N.Y.2d 933.

32.  Without any doubt, the above facts overwhelmingly demonstrate that defendant was deprived of a fair trial by less than meaningful representation by Mr. Giampa.  In addition, trial counsel provided the defendant with a letter stating that his trial conduct was not the result of any trial strategy, and instead, shifted the blame on Justice Snyder.  See, Exhibit "G". Moreover, there was no overwhelming evidence of guilt against the defendant to overshadow the ineffectiveness of trial counsel. See, People v. Benn, 68 N.Y.2d 941, 942.  Also see, 440.10 motion, Point IV.  Further, the proceeding elements show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. See, Strickland v. Washington, 466 U.S. at 694; People v. Castellano, 203 A.D.2d 116.

33.    There is no precise definition of what constitutes ineffective legal representation, nor is there a particular standard applicable to every case. The constitutional requirement of effective assistance of counsel will be satisfied when the evidence, the law and the circumstances of a particular case, viewed in totality and as of the time of representation, reveal that the attorney provide meaningful representation. U.S.C.A. Amend. 6, Const. Art. 1, 6; Also see, People v. Flores, 615 N.Y.S.2d 662; People v. Hobot, 622 N.Y.S.2d 676. The case at bar overwhelmingly satisfies the necessary requirement to define "ineffective assistance of counsel". See, People v. Baidi, 54 N.Y.2d 137, People v. Droz, 384 N.Y.S.2d 404.

34.    Recently, in People v. Juan Carlos Pichado, (Supreme Court, Criminal Term, Part 56, N.Y.L.J., March 7, 2000, at page 25, col. 2, Hon. Justice Atlas presiding), the prosecution argued that "defense counsel's errors" could be explained by the apparent strategy to focus on the alibi defense. Nevertheless, Justice Atlas found ineffective assistance of counsel. In Pichado, the defendant, via a C.P.L. Section 440 motion, raised complaints based on facts not known to Justice Atlas at the time of trial, and argued that these new matters, coupled with failures previously known, establish that the defendant did not receive adequate representation at the trial. The defendant argued that:

a)  Defense counsel seemed not to have read or made use
at all of impeachment material made available to him by
the prosecution;

b)   Trial counsel failed to confront the only witness
who connected the defendant to the shooting;

c)  Defense counsel failed to impeach the prosecution's
witness with other important inconsistencies between
her testimony and prior statement;

d)   Trial counsel made virtually no effort to use the
information to impeach part of a prosecution's witness
testimony  and  defense  counsel  neither  made  any
investigation nor used the regular 18-B panel's regular
investigator; although counsel knew of the existence of
at least two additional eye-witnesses; and

e)   Defendant also alleged that the People withheld
exculpatory  evidence.   The  hearing  revealed  that
another eye-witness was interviewed at the precinct on
the day of the shooting...but he was not called as a
witness at the trial.  This witness identified someone
other than the defendant as the perpetrator of the
crime.

35.  On the other hand, in opposition to Pichardo's motion,

the People argued that all the defense counsel's claimed errors

could be explained by his apparent strategy of focusing on the

alibi defense, while minimizing any evidence presented by the

People regarding the actual circumstance of the crime.

36.  Justice Atlas held that:

"clearly the testimony of Smalls (the missing witness)
might have served to exculpate the defendant...at the
very least had Smalls testified at this trial his
account  would  have  contradicted  the  prosecutor's
witness  and  proved  material  and  favorable  to  the
defense.  The  failure  to  recognize  or  explore  the
potential of such a witness was the defense counsel's
alone and, to the extent that the defendant was thereby
prejudiced,  it  was  because  of  counsel's
ineffectiveness.   For  the  foregoing  reasons,  the
defendant's  motion  is  granted  and  the  judgment

convicting the defendant of the crime of murder in the second degree is vacated."

37.   The circumstances given in Richardo, supra, is similar and applicable to this instant case.  In view of this case, and in view of the circumstances of this present case, it is incumbent for this Court to come to the same conclusion, as counsel was grossly ineffective.

38.   The People throughout their response have self-servingly attempted to try to answer why defendant's trial counsel acted in the manner that he did.   The prosecution utilizes a "three-tiered strategy" that they believe Mr. Giampa utilized during his representation of the defendant.   (D.A.'s response at page 6 and 7.   However, they ignore the fact that such responses are counsel's and his alone.   In People v. Scott, 10 N.Y.2d 380 (1961), the Court held:

> "If he [defendant] applied to this lawyer and the lawyer declined to comply with a request for an affidavit, there would be time enough to consider whether to grant a hearing at which the lawyer's attendance might be compelled by compulsory process."

39.   Nonetheless, the People ignore that only in a post-judgment motion, via a 440 application, may the attorney whose conduct is called into question, be given an opportunity to explain the basis for his or her trial decisions by testifying, if appropriate, at a hearing designed to determine reliably the facts relating to the claim of ineffectiveness.   See, People v. Rivera, 71 N.Y.2d 705, 709 (1988); People v. Carver, 234 A.D.2d

164 (1st Dept. 1996); <u>People v. Shaw</u>, 221 A.D.2d 265 (1st Dept. 1995).

40.   As such, this Court is obligated to hold a hearing so that Mr. Giampa can articulate reasons for his actions and inactions, as claimed throughout this proceeding.  In view of the letter by Mr. Giampa (Exhibit "G"), this Court must hold a hearing to evaluate Mr. Giampa's acknowledgement that his "conduct" was not a strategy, as alleged by the D.A.

41.   The D.A. states that Mr. Arshack, Esq. advised the defendant with respect to the selection of Mr. Giampa; however, once again, the D.A. ignores the affidavit supplied by Mr. Arshack. (Exhibit "D").  In light of this sworn affidavit, and in view of the D.A.'s false allegations, a hearing must be held.

42.   In that the D.A. alleges (page 6 and 7 of the D.A. response) that the defendant "approved" of Mr. Giampa's "strategy", it has been documented through defendant's affidavit (Exhibit "A"0 and through Exhibit "G", that: 1) Mr. Giampa's conduct was not a strategy employed by Mr. Giampa and 2) the defendant never approved of the conduct employed during the trial proceedings.  In fact, the letter given to the trial Judge (T. pg 2839-40) during the trial proceedings, is consistent with what Mr. Giampa stated throughout Exhibit "G", as well as consistent with what the defendant has raised throughout this 440 motion. Justice Snyder has attributed to Mr. Giampa's conduct, and Mr. Giampa, by engaging in the war with Justice Snyder, violated the

defendant's right to a fair trial.   Furthermore, at the
sentencing phase of this case, Justice Snyder told the defendant
that "You know nothing about the law".   As such, the D.A.'s
allegations that the defendant knew about the law and used that
alleged knowledge in picking Mr. Giampa for his alleged strategy
(his misconduct), is patently false; as such, a hearing, at a
minimum, must be held.

43.   The Appellate Division and the Court of Appeals have
stressed time and time again, that claims of ineffective
assistance of counsel will not be on the basis of supposition or
conjecture, and that such claims should ordinarily be raised in
the context of a post judgment motion pursuant to CPL 440.10.
See, People v. Rivera, supra; People v. Jones, 55 N.Y.2d 771,
773; People v. Shaw, supra; People v. Carver, supra; People v.
Silva, 220 A.D.2d 230 (1st Dept. 1995); People v. Walker, 220
A.D.2d 214 (1st Dept. 1995); People v. Maddox, 213 A.D.2d 159
(1st Dept. 1995).

44.   The prosecutor's arguments do not demonstrate that
defendant's counsel rendered effective assistance.   By studying
the evidence and lack thereof, the D.A.'s arguments fall face
down on criminal justice procedures.   The attached exhibits to
the 440 motion, as well as defendant's memorandum of law,
adamantly prove that the defendant received less than meaningful
representation.   As such, this Court must hold a hearing to
determine the meritorious claims raised in defendant's 440

motion.  The defendant has made a strong offer of proof as to his lack of an effective attorney during the trial phase; while the D.A. has not submitted any documentary proof to the contrary.

### 440.20 Motion

45.   It should be noted that the D.A. totally failed to address the defendant's claim of ineffective assistance of counsel, for counsel's failure to pursue a plea bargain. Advising a defendant whether to enter a plea or proceed to trial is not only part and parcel of representing a criminal client but is "ordinarily the single most important decision in any criminal case."  Boria v. Keane, 99 F.3d 492 (2nd Cir. 1996); U.S. v. Gordon, 156 F.3d 376 (2nd Cir. 1998); U.S. v. Day, 969 F.2d 39 (3rd Cir. 1992).

46.   The Prosecutor would, on one hand, argue during the direct appeal that the issues being litigated are not preserved for Appellate review (which was the reason the Appellate Division denied defendant his appeal), yet on the other hand, now they are arguing that these issues have already been litigated on direct appeal.  Suffice it to say, but the District Attorney cannot have their cake and eat it too!!  Moreover, these issues are ripe for address by this Court, as this Court has never ruled on the ineffectiveness of counsel.

47.   The D.A. has totally failed to submit a proper response, and or any documentary proof to establish that defendant's allegations are false.  Because the D.A. has not even

responded to this aspect of the defendant's motion, this Court must hold defendant's claims to be true.  Clearly, the D.A.'s failure to respond to this issue, is a concession on their part that the facts and legal arguments presented in the 440.10 and 440.20 motions are true, and therefore, relief is warranted. See, People v. Baxley, supra. also see, C.P.L. Sections 440.30(5) and 440.30(3).

48.  The D.A. reply to defendant's 440.20 motions is just a rendition of their earlier claims, and in view of the defendant's legal arguments and documentary evidence, this Court must grant the defendant the relief requested throughout the motions submitted to this Court.

49.  With respect to the sentencing issue, the D.A. failed to respond to the claims of ineffectiveness with regard to trial counsel's failure to:

    a)  object to the imposition of consecutive sentences when the Court erred in sentencing the defendant to consecutive sentences, as the law requires the defendant to have been sentenced to concurrent terms of imprisonment; and

    b)  negotiate and adequately convey a favorable plea offer.

50.  Because the D.A. has not responded, this Court is obligated to, at a minimum, hold a hearing on this issue.  This sentencing issue has never been raised in this Court, nor on direct appeal; thus it is properly before this Court.

51.   With respect to Justice Snyder presiding over this matter, since she played an extremely instrumental role in the proceedings, and because it is her own bias and hostile actions that are being challenged, it would be in the best interests of justice for her to be recused from presiding over hearing this present matter.   (See, Points II and III of 440.10 motion). Therefore, this motion should be heard by a Judge who is to render an objective decision.

WHEREFORE, Defendant, Rafael Martinez, hereby humbly, prayerfully and respectfully requests that this Honorable Court grant his motion made pursuant to C.P.L. Section 440 filed in this Court on November 4, 1999 and those papers filed in support of the motion, so as to allow the ends of justice to be met and for the scales of justice to remain evenly balanced and for such further relief as this Court deems just, proper and equitable.

Respectfully submitted

_Rafael Martinez_
Rafael Martinez
Defendant, Pro Se

Sworn to before me this
29 day of March, 2000.

_Linda O'Connor_
NOTARY PUBLIC

LINDA O'CONNOR
Notary Public, State of New York
No. 01OC5019512
Qualified in Clinton County
Commission Expires 10/25/2001

Page 22

EXHIBIT 7: State Court's Decision

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:                    PART 88

---

THE PEOPLE OF THE STATE OF NEW YORK          *

                                             *

                -against-                        *          IND. NO.
                                                            12131/91

                                             •

Rafael Martinez, Lorenzo Martinez & Cesar Martinez *

---

Pursuant to CPL § 440.10, the defendants have each  moved to vacate the  judgment of

conviction based on violations of the Sixth Amendment right to counsel and other related issues.

The  defendants' motions  are  denied  for  the  reasons  set forth  by  the  People  in  their

response.

So Ordered.

September 15, 2000

DATE   SEP 1 8 2000
I hereby certify that the foregoing
paper is a true copy of the original
thereof, filed in my office.

Honorable Leslie Crocker Snyder
County Clerk, and Clerk of the
Supreme Court, New York County
OFFICIAL USE

EXHIBIT 8: Leave to Appeal Application

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION: FIRST DEPARTMENT
--------------------------------------------------X
PEOPLE OF THE STATE OF NEW YORK,                  :
                                                  :        APPLICATION FOR
         - against -                              :          CERTIFICATE
                                                  :,          GRANTING
                                                  :        LEAVE TO APPEAL
RAFAEL MARTINEZ,                                  :
                  Defendant.                      :        Ind. # 12131/91
                                                  :
--------------------------------------------------X

SIRS:

PLEASE TAKE NOTICE that the defendant hereby makes application to a Justice of the Appellate Division of the Supreme Court of the First Department at his/her chambers in the Appellate Division Courthouse located at 27 Madison Avenue & 25th, New York, New York on the 10th day of October, 2000 for a certificate pursuant to C.P.L. Sections 450.15 and 460.15 seeking and granting leave to appeal to this Court and certifying that the above entitled cause involves questions of law and fact which ought to be reviewed by the Appellate Division, First Department, and allowing an appeal to the said Court from a Decision and Order of the County Court, County of New York, entered on the 15th day of September, 2000, (certified by Court on September 18, 2000) denying a motion by the defendant, made pursuant to Sections 440.10(1)(b), (c), (d), (f), (g), (h), 440.20(1) and 440.30(5) of the Criminal Procedure Law, as well as pursuant to the 6th Amendment to the U.S. Constitution, to vacate a

judgment entered against the above-mentioned defendant on March 23, 1993, and from each and every part of said order, as well as from the motions that were left undecided, which are interrelated to the C.P.L. Section 440 motion. Specifically, the Recusal Motion dated November 4, 1999, the Preclusion motion, dated February 10,2000 and the motion seeking _informa pauperis_ status, dated November 4, 1999.

This application is sought to review the following questions of law and fact: _inter alia_, whether the lower court erred in denying defendant's C.P.L. Section 440 motion absent a decision that rendered conclusions of law and its' findings of fact pursuant to the mandates of C.P.L. Section 440.30(7); whether the lower Court erred in denying Defendant's C.P.L. Section 440 motion on the grounds of, _inter alia_, ineffective assistance of trial counsel and judicial and prosecutorial misconduct; whether the lower Court erred in denying a hearing on defendant's C.P.L. Section 440 motion, in light of the substantial sworn facts and evidence presented for its' review; whether the lower Court erred in denying defendant's C.P.L. Section 440 motion in connection with his conviction rendered on March 23, 1993; and those questions of law and fact more elaborated on in the attached affidavit in support.

It is respectfully requested that a certificate granting leave to appeal be issued, so in order to allow

defendant to present to this Court the full denial of the issues that were denied, as all issues are herein related.

Pursuant to CPLR 2214(b), answering affidavits, if any, are required to be served upon the undersigned at least seven(7) days before the return of this application.

Further, please be advised that pursuant to 22 N.Y.C.R.R. Section 600.3(b)(3), that this motion is submitted on the papers and that personal appearance in opposition to this application is neither required nor permitted.

No prior application for such certificate granting leave to appeal has been made to any other Justice or Court.

Dated:   October _10_, 2000
         Dannemora, New York


                              Yours, etc.,


                              Rafael Martinez
                              Rafael Martinez
                              Defendant, pro se
                              Clinton Corr. Facility
                              1074 Cook St., Box 2001
                              Dannemora, New York 12929
                              (518) 492-2511


To:   Manhattan D.A.'s Office
      Appeals Unit
      One Hogan Place
      New York, New York 10013


                              Page 4

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION: FIRST DEPARTMENT
-----------------------------------------------X
                                               :
PEOPLE OF THE STATE OF NEW YORK,               :  AFFIDAVIT IN
                                               :      SUPPORT
                                               :     OF APPLICATION
                                               :  FOR CERTIFICATE
          - against -                          :     GRANTING
                                               :  LEAVE TO APPEAL
RAFAEL MARTINEZ                                 :
              Defendant.                        :  Ind. # 12131/91
                                               :
-----------------------------------------------X

STATE OF NEW YORK)
TOWN OF DANNEMORA) SS.:
COUNTY OF CLINTON)

     I, RAFAEL MARTINEZ, being duly sworn, deposes and states:

     1.  I am the defendant in the above-captioned matter, and I am proceeding pro se at this time in this leave application, and as such, I would ask for this Court's guidance and cooperation in this matter.

     2.  I submit this affidavit pursuant to C.P.L. Sections 450.15 and 460.15, in support of my application for a certificate granting leave to appeal my motion made pursuant to Sections 440.10(1)(b), (c), (d), (f), (g), (h), 440.20(1) and 440.30(5) of the Criminal Procedure Law, as well as pursuant to the 6th Amendment to the U.S. Constitution, to vacate the judgment of conviction entered on March 23, 1993.

     3.  Further, this application is being made pro se as the defendant has not been appointed counsel in the lower

court on this motion; infact, the poor person application has been left undecided. There are substantial questions of both law and fact that ought to be reviewed by this Court; thus I would request that this Court grant leave to appeal.

4. Because the defendant is not that well versed in the English language, and because he is relying on the assistance of a law clerk within the Department of Corrections, he would respectfully request that counsel be appointed, as enumerated in the attached motion papers.

5. This document contains both sworn facts and legal arguments. To the extent that legal argument is employed, it is respectfully requested that this Court consider these arguments as a memorandum of law.

6. Initially, defendant would like to apologize to this Court for having to bring these issues before this Court due to the lower Court's ineptness to adequately and properly deal with the meritorious issues presented to it. Upon any fair and dispassionate review of the facts and law relevant to this application, there can be no doubt that the lower Court usurped its' judicial authority in rendering a decision, or at a minimum, a hearing, that conformed to the rules and regulations of the C.P.L.. It is thus respectfully requested that this Court review the issues presented herein, and grant this instant application to

allow the defendant the opportunity to have this Court review the grave errors committed by the lower Court.

<u>FACTUAL BACKGROUND</u>

7. On March 23, 1993, defendant was found guilty after trial by jury of <u>inter alia</u>, Conspiracy in the 2nd Degree, Murder in the 2nd Degree. Defendant was thereafter sentenced on those convictions on April 8, 1993 to 213 years to Life imprisonment. It is from these convictions that defendant is seeking leave to appeal; based upon a denial of the <u>pro se</u> C.P.L. Section 440 motion rendered on September 15, 2000 (<u>See</u>, Exhibit "A")

8. A timely Notice of Appeal was filed by assigned Counsel, Mr. Richard L Giampa, Esq., in connection with the direct appeal of defendant's convictions. That appeal has been perfected and a final decision rendered by this Court. <u>See</u>, <u>People v. Martinez</u>, 251 A.D.2d 51 (1st Dept. 1998); <u>lv. denied</u>, 92 N.Y.2d 984 (1998).

9. On November 4, 1999, Defendant moved pursuant to Sections 440.10(1)(b), (c), (d), (f), (g), (h), 440.20(1) and 440.30(5) of the Criminal Procedure Law, as well as pursuant to the 6th Amendment to the U.S. Constitution, to vacate the judgment of conviction. Subsequently the Defendant filed a supplemental Affidavit in Support of his previously filed 440.10 motion (dated February 29, 2000).

10.   The District Attorney cross moved allegedly on January 10, 2000 to the defendant's original 440.10 motion, which was not received by the Defendant until March 9, 2000).   Further, the D.A. cross moved with regard to defendant's supplemental affidavit on March 7, 2000 (also received by defendant on March 9, 2000).  (Both responses are attached as "Exhibits "B" & "C").  Both responses by the D.A. were filed after defendant filed a motion to preclude them from responding to defendant's C.P.L. Section 440 motion due to their failure to comply with the rules governing timely filing an opposition to defendant's C.P.L. Section 440 motion.  (Preclusion motion filed on  February 10, 2000).

11.   On March 29, 2000, defendant replied pro se to the District Attorney's opposition to the 440 motion. Subsequently, the C.P.L. Section 440 motion was denied in a verbose Decision and Order of the County Court, New York County (Leslie Crocker Snyder, J.C.C.) on September 15, 1999.  This leave application has thus ensued.

12.   Further, it is upon two other motions that have been left undecided, (Preclusion motion and Recusal motion) directly in connection with the denial of the defendant's C.P.L. Section 440 motion, that defendant seeks leave to appeal.

13.   It is upon all these motions and decisions which leave to appeal is sought, as substantial questions of law and fact have arisen for this Court's review.  In the event that this Court does not have authority to review the motions that were left undecided,  the defendant would respectfully request that this Court, in reviewing it's authority over the denial of the C.P.L. Section 440 motion, consider the other undecided motions in this Court's interest of justice jurisdiction, and in so considering, grant the defendant a certificate granting leave to appeal. See, C.P.L. Section 470.15(3)(a), (b), and specifically subsection (c), which gives this Court the authority to review the other undeciced motions in its' interest of justice jurisdiction.

14.   It is respectfully requested that a certificate granting leave to appeal be issued, so in order to allow defendant to present to this Court the full denial of the issues that were denied, as all issues are herein related.

15.   An evidentiary hearing is necessary and required under People v. Ausserau, 77 A.D.2d 152 (4th Dept. 1980); People v. Hughes, 181 A.D.2d 912 (2nd Dept. 1992) (the Court held that even if a defendant's chances of ultimate success in meeting his burden of proof with respect to issues raised in a Section 440 application "might be slight", or "even remote", it did not by itself furnish basis to deny the

motion without a hearing); People v. Quaks, 70 N.Y.2d 863 (1987) (The Court of Appeals concluded that the trial court abused its' discretion in denying the defendant's motion without a hearing on claims of prosecutorial misconduct).

16.   For this reason, the Court of Appeals has adhered to the standard of United States v. Agurs, 427 U.S. 97 (1976).   In cases involving a specific discovery request, the Court of Appeals has adopted, "as a matter of State Constitutional law", a standard requiring reversal where there has been a showing that a "reasonable possibility" exists that the defendant would not have been convicted had the exculpatory evidence been available to him at trial. People v. Vilardi, 76 N.Y.2d 67, 77-78 (1990).

17.   What the lower Court failed in doing was holding a hearing to determine the factual claims in which the defendant presented for the Court's review.

## PRECLUSION MOTION

18.   Defendant, by motion dated February 10, 2000, moved to preclude the People from filing any response to the defendant's C.P.L. Section 440 motion, in clear ignorance of the D.A.'s failure to respond to the defendant's C.P.L. Section 440 motion, or to even request an extension of time. Such motion was made due to the D.A.'s failure to comply with the statutory mandates of CPLR Section 2214(b).

19.   To comply with the statutory deadlines of the CPLR, the District Attorney was obligated by law to file a response to the defendant's motion by January 5, 2000, or to request an extension of time to respond.  Their failure to do so, should have been grounds to preclude them from filing any response.

20.   This Motion by the defendant has been left unattended to and undecided.

21.  Such ignorance by the trial justice to decide this motion was in total disregard of the law, and thus this undecided motion should be addressed by this Court, in reviewing this instant application.

<u>RECUSAL MOTION</u>

22.   On November 4, 1999, the Defendant submitted, along with his 440 motion, a motion to have Justice Snyder recused from presiding over the 440 motions.  The People, in their response dated January 10, 2000, delves into the area of the defendant's trial; but never directly responds to the Recusal motion before the Court.  Hon. Snyder left this motion undecided; thus confirming that she was not amicable in providing the defendant with a decision that conformed to the rules of the Court, and to the CPL.  It is paramount to the administration of justice, that a decision be made on all motions; especially this sort of motion, as Justice Snyder's integrity was a major issue raised throughout